**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
HELENA DIVISION**

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

OCT 2 5 2004

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

**PLAINTIFFS:**
**FRIENDS OF THE LAKEVIEW SCHOOL DISTRICT INCORPORATION
NO. 25 OF PHILLIPS COUNTY: HENRIETTA WILSON
HENRIETTA WILSON, individually and in her
capacity as an elected member of the Lakeview
School Board of Directors, a taxpayer, and patron;
HENRIETTA WILSON, as Next of Kin of
Will Henry Kyle Wilson, her son and a Sixth
Grade Student at the Lakeview Elementary School;
LINELL LEWIS, a Lakeview School District taxpayer
and Next of Kin of Linell Lewis, Trinell Lewis and
Shacoria Lewis (Linell Lewis and Trinell Lewis are
students at C.V. White High School, Lakeview School District
No. 25 of Phillips County; Shacoria Lewis is a student
at Lakeview Elementary School);  DWIGHT SWANIGAN,
a taxpayer within the Lakeview School District; CONNIE L.
BURKS-WILKINS, as Next of Kin of Theaurty Griffin,
Raina Burks and Wanya Burks, all students in the
Lakeview School District, Mrs. Gussie Martin, a resident,
taxpayer and patron**

**VS.**          NO.  **2-04-CV-184 GH**

This case assigned to District Judge_____ *Howard*
and to Magistrate Judge_____ *Jones*

**DEFENDANTS:**
**MIKE HUCKABEE in his official capacity,
as Governor of the State of Arkansas; KENNETH
JAMES in his official capacity, as the Director of the Arkansas
Department of Education; ARKANSAS BOARD OF EDUCATION which
includes in its membership DR. CALVIN KING, JONELL CALDWELL,
SHELBY HELLMAN, DIANE TATUM, DR. NACCAMAN WILLIAM,
RANDY LAWSON, DR. JEANNA WESTMORELAND,
SHERRY BURROW, and MARY JANE REBICK,
in their official capacities as members of the board; and
STATE OF ARKANSAS**

1

## PETITION FOR DECLARATORY JUDGMENT,

## INJUNCTIVE RELIEF, REMEDIAL AND MONETARY RELIEF, AND ALL OTHER PROPER DISPOSITIONS

**COMES Plaintiffs through their counsel and state:**

1.       That this is a civil action requesting equitable relief brought for the purpose of requiring the court to grant judgment declaring the rights of the parties as it is indicated and demanded by the facts, allegations, contentions, and requests for relief stated in the totality of the complaint; Permanent Injunctive Relief from the enforcement by the Defendants of all consolidation proceedings affecting the Lakeview School District, Inc. No. 25 of Phillips County in which said Plaintiffs reside; an action for compensation for violations of Plaintiffs constitutional rights upon proof, as alleged; for various other specific and non-specific relief. (A Specific Motion for Temporary Injunctive Relief will be filed in due course).

2.       That said Plaintiffs have capacities, interests, and *"standing"* to sue as taxpayers, parents, guardians, custodians, and patrons of the Lakeview School District No. 25 of Phillips County.

3.       That further Plaintiffs request this court would specifically (1) declare that Act 60 of the Second Extraordinary Session of the Arkansas General Assembly of 2003, amending A.C.A. 6-13-1405 et seq., be determined unconstitutional on its face; (2) A.C.A. 6-18-317; A.C.A. 6-26-1602, et seq. be likewise declared unconstitutional; (3) that Act 59 of the Second Extraordinary Session of the Arkansas General Assembly of 2003 be declared unconstitutional; (4) declare Amendments 40, 59, and 74 of the Arkansas Constitution to be in violation of the

5th and 14th Amendment to the United States Constitution; (5) declare that Act 60

violates Article 2 Section 2, 3, and 18, Article 14 et seq. of the Arkansas

Constitution of 1874; (6) declare that Act 60 violates the statutory requirement of

42 U.S.C. 1981, 42 U.S.C. 1982, 42 U.S.C. 1983 as is appropriate; (7) declare

Act 60 as an element of the State of Arkansas funding system as a "*whole*" to be

an unconstitutional violation of Plaintiffs rights under federal law inclusive of the

14th and 15th Amendments; 42 U.S.C. 1981, 1982 and 1983 as is appropriate; and

(8) unconstitutional as it relates to its compliance with the requirement of the

1964 Civil Rights Act as a whole and Title VI thereof specifically; (9) declare the

State Defendants "*taking*" of the personal, real, and tax revenues of Plaintiffs per

Act 60 of the Second Extraordinary Session of the Arkansas General Assembly of

2003, constitutes a U. S. Constitutional 5th Amendment violation.  (Acts 59 and

60 of the Second Extraordinary Session of the General Assembly of 2003 will

hereinafter be referred to as "Act 59" or "Act 60.")  (See Exhibit 1- copy of Act

59 and Exhibit 2 – copy of Act 60) (Herein after referred to as Act 59 and 60).

## **PARTIES**

4.        That Plaintiffs are all residents of the Lakeview School

District No. 25 of Phillips County, Arkansas and are either: (a)

taxpayers without children or wards actually going to school in

the Lakeview School District; (b) taxpayers with children or wards

attending school in the Lakeview School District; (c) patrons of

the Lakeview School District; (d) parents of children attending the

Lakeview School District No. 25 of Phillips County, Arkansas; (e)

duly elected board member(s) of Lakeview School District No. 25 , Inc. Phillips County.

5.  That Defendant, Governor of the State of Arkansas, Mike Huckabee, is pursuant to the Arkansas Constitution of 1874, the Chief Executive Officer of the State and is responsible for enforcement of all laws within its boundaries.

6.  That Defendant James is charged with the day-to-day enforcement of provisions of Acts 59 and 60 enacted in the Second Extraordinary Session of the Arkansas General Assembly 2003, along with his duties to enforce other statutes and regulations challenged in the instant action, as an officer in the Executive Branch of Government.

7.  That Defendants Dr. Calvin King, Jonell Caldwell, Shelby Hellman, Diane Tatum,  Naccaman Williams, Randy Lawson, Dr. Jeanna Westmorereland, Sherry Burrow and Mary Jane Rebick are members of Arkansas State Board of Education under the authority of Arkansas law to develop educational policies and supervise the enforcement of those policies pursuant to the requirements of the Arkansas Constitution, Article 14, et seq., of 1874; Amendment 40, Amendment 59, and Amendment 74 of the Arkansas Constitution and sustaining statutory and regulatory enactments as an agency of the Executive Branch of Government.

8.  That specifically as applies to the instant action, Defendant members of the Arkansas State Board of Education were also charged with the development of policies that are transmitted to the Director of State Board of Education for the purpose of promulgating, promoting, and enforcing all educational law challenged as unconstitutional within the context of this action by Plaintiffs.

9.       That the State of Arkansas is a suitable entity in its capacity as the sovereign government of the State of Arkansas, and is subject to the authorities of applicable federal constitutional provision and federal statutes.

## VENUE

10.       That the venue of this matter is the United States District Court of Eastern Arkansas, Eastern Division (Helena).  That Plaintiffs are residents of Phillips County, Arkansas.

## JURISDICTION

11.       That the jurisdiction of this court is invoked to 28 U.S.C. 1331; 28 U.S.C. 1343(a)(3); 28 U.S.C. 1357; 28 U.S.C. 2201; and 28 U.S.C. 2202.

## LEGAL ISSUES AND OVERVIEWS

12.       That Plaintiffs alleges that their following causes of actions are cognizable under federal law, based upon the facts, applicable law and the jurisdiction of the court: (a) that Plaintiffs claims that their rights pursuant to the  Equal Protection and Due Process Clauses of the 14th Amendment of the United States Constitution have been violated by the actions of the Defendants through their attempt to destroy the existence of the Lakeview School District; (b) that Plaintiffs have  vital and vested interests in the protection of the Lakeview School District from destruction by the State defendants use of racial motivated, prohibited economically biased, and non-educationally related criterions as provided by the 1st, 5th and 14th Amend. of the U. S. Const.; (c) that Plaintiffs claims causes of actions pursuant to 42 U.S.C. 1981, 42 U.S.C. 1982, 42 U.S.C. 1983, as applicable, all of which are federal statutes that

ostensibly protects Plaintiffs against racially motivated State actions or the disparate impact of State action based upon discriminatory treatment of individuals and identified classes as the conduct of Defendants illustrate as set out herein below; (d) that Plaintiffs claims pursuant to 42 U.S.C. 1973, et seq., contends that Plaintiffs voting rights as authorized by said federal statutes are violated by the actions and proposed actions of Defendants in the enforcement of Act 60; (e) that Plaintiffs claims causes of action pursuant to the 5th and 14th Amendments of the United States, in that Plaintiffs as taxpayers with the Lakeview School District will suffer an unconstitutional taking of their property rights by the authority and conduct of the State in its enforcement of Act 60; (f) that the threatening and actual use of the taxes of Plaintiffs in a manner not contemplated when that issue was placed on the ballot for use of tax funds, i.e. entities other than the Lakeview School District is an illegal exaction; (g) the threatening and actual taking of Plaintiffs real and personal property comprised of physical plants, school equipment, etc., of the Lakeview School District is an unconstitutional taking; (h) that the usurpation of tax funds engendered through passage of local millages of the citizens in the Lakeview School District by State action is unconstitutional taxation without representation utilizing the authority and elements of Act 60 and an unlawful taking pursuant to 5th Amendment of the United States Constitution; (i) that  Plaintiffs causes of actions is further based upon their alleged violation by Defendants of their voting rights as authorized ACA 116-123-107(a)(5), commonly known as the Arkansas Civil Rights Act of 1993 which purportedly protects the voting rights of Plaintiffs against infringement of the nature that permeates the enforcement of Act 60; (j) that Plaintiffs further claim specific

violations of the Illegal Exaction Clause of the Arkansas Constitution, violation of Arkansas Article 2, Section 2, 3, and 18, and violation of the equal protection elements embraced by Article 14, et seq., of the Arkansas Constitution of 1874; (k) that Plaintiffs claims causes of actions for the Declaration of Rights via Acts 59 and 60, in that it is the contention of Plaintiffs that same conflicts with the United States constitutional requirements of due process or equal protection and upon statutory construction will be found to be  constitutionally defective under any *standard of review*; (l) Plaintiffs causes of actions are cognizable by the federal courts because of  the State defendants' violation of due process owed to Plaintiffs as the *prevailing* party in the case of *Lake View v. Huckabee*, 351 Ark. 331 (2002); (m) that Plaintiffs have been unconstitutionally victimized in a retaliatory fashion by the passage of Act 60 with the intent of denying Plaintiffs the fruits of their victory on the basis of race; (See ACA 16-123-108); (n) that Plaintiffs further claims that Act 60, coupled with ACA 6-26-1602, et seq., which was passed in 1995 is a continuation of racial retaliatory and invidiously discriminatory acts taken against the Lakeview School District and the Plaintiffs/citizens therein because of race as a result of their initiation of the original lawsuit for the defense and protection of their Civil/Constitutional Rights contesting the State's financial scheme for funding public schools, commonly known as *Lake View vs. Huckabee,* which ultimately declared the Arkansas system of public school funding as unconstitutional; (o) that Act 60 Plaintiffs contend is unconstitutional because of its interference with the contractual agreement between Lakeview-taxpayers, Lakeview debtors,  and the Lakeview School District Inc.; (p) Plaintiffs contends that the State defendants has constitutionally denied compensation

to the Plaintiffs as citizens and members of the corporate body of the Lakeview School District for past funding insufficiencies based upon racial and economic discrimination from 1938 to present as a matter of law; (q) that the passage and implementation of Act 60 violates Plaintiffs federal voting rights; (r) that the redistricting of the Lakeview School District in voting wards and precincts within the larger Barton School District further violates the federal voting rights act of 1965 as amended; (s) that the presence system of school finance and school consolidation violates Plaintiffs 14th and 15th Amendment Rights guaranteed under the 1964 Civil Rights Act as amended because both are based on unconstitutional racial and economical consideration and has absolutely no *rational* educational basis; and (t) that the State Defendants have no legal, ethnical, morals, or constitutional grounds to contend that the United States Constitution, applicable federal statutes, or the Arkansas State Constitution provides an acceptable legal rationale or an acceptable compelling state interest in the racially desperate impact of the present system of public school finance, consummating in the consolidation of all African-American school districts into white school district without variance and any assertion of sovereign immunity is specious, at best, and a purposeful violation of Federal Rules of Civil Procedure 11, at worse.

## FACTS

### HISTORICAL BACKGROUND AND LEGAL EVOLUTIONS OF LAKEVIEW SCHOOL DISTRICT, INC AND THE COMMUNITY OF LAKEVIEW, ARKANSAS

13.     The Lakeview School District is an overwhelming predominantly African-American school district located in South Phillips County, Arkansas.  That the

Lakeview School District was created in 1938 pursuant to actions of the Federal Governments' Department of Agriculture, Farm Security Act, then President Franklin D Roosevelt attempted to fulfill the "forty acres and mule" promise of the late 1860's as promulgated by the congressional creation of the Freedmen Bureau.

14.     That the community of Lakeview was created in 1938 on the promise of fulfillment of the post civil war promise that freed persons of African descent would secure economical stability by receiving land from the United States government and equipment to clear land for the purpose of commencing cultivation as a result of the victory of the union of the United States against the rebellion enunciated in Arkansas among other states consummating in the War of Rebellion against the United States (40acres and a mule.)

15.     Also, in 1938 and simultaneously with the settlement of the first settlers of Lakeview, Arkansas these pioneers begin the building of a local school without the aid of the State defendants.

16.     That the State of Arkansas did not provide finance for the purchase of land or development of the initial physical plant for what became the Lakeview School, elementary and high school.

17.     That no Section sixteen land was granted by the State of Arkansas to the Lakeview School District; thus, the real property of Lakeview School District is privately owned **by the Lakeview School District, Incorporated**, as established.

18.     That the citizens of Lakeview purchased the land upon which the present physical plant now stands through their own self-taxation, free-will contribution efforts and financial aid from the federal government.  The plaintiff school district,

commonly known as Lakeview School District No. 25, is not subject to the State defendants' exercise of annexation, consolidation or forced merger utilizing State law.

19.     That from 1938 to present the State of Arkansas and the predecessors of the Defendants herein has discriminated against Lakeview on the basis of race and on the basis of its poor financial status.

20.     That from 1938 to present the Lakeview School District and the citizens therein who supported the Lakeview School either: (a) had no finance from the State of Arkansas for the operation of its school system or (b) extreme under-financing was received from the State of Arkansas.

21.     That between 1938 and 1954 the Lakeview School District was operated under the doctrine enunciated in the United States' 1896 decision in *Plessy v Ferguson.*

22.     That during the *Plessy v. Ferguson* era of operating, Lakeview School District received between 1938 and early 1940's based upon best information available no funding from the State of Arkansas.

23.     That between early 1940's and 1954 the Lakeview School District received some finance from the State of Arkansas, which fell below any reasonable or intellectually honest definition of adequate or equitable school *funding.*

24.     That the Lakeview School District state school funding has throughout its existence been based upon racial considerations not its students educational needs.

25.     That the patrons of the Lakeview School District totally funded the school system between 1938 and early 1940's, based upon best evidence, and operated

between early 1940's and 1954 as one of the three *colored* school district in Phillips County.

26.     That the other colored school district in Phillips County were comprised of Tate Elementary and High School in Marvell, Arkansas; Eliza Miller Elementary and High School in Helena, Arkansas.

27.     That in 1954 the Supreme Court enunciated *Brown v Board of Education of Topeka (Brown I)*; in 1955 the United States Supreme Court enunciated the second *Brown* decision *(Brown II)*.  Neither the orders of the United State Supreme Court in *Brown I* or *Brown II* affected the State of Arkansas' relationship with the Lakeview School District from what it had maintained from 1938 to 1954.  Between 1954 and 1971, the State of Arkansas operated in its relationship to Lakeview under the doctrine of *Plessy v Ferguson* totally disregarding *Brown I* or *Brown II*.

28.     That in the 1968-1971 school year, a number of lawsuits in the Arkansas federal court system were consummated by court order or by consent decree in which the State of Arkansas agreed to desegregate the public school systems of eastern Arkansas; but these actions of ordered desegregation had no effect on the Lakeview School District and its relationship with the State of Arkansas except in one crucial area.

29.     That the crucial area of difference between the State of Arkansas and Lakeview School District between 1971 and present was the State authorize the Phillips County School Board (an agency of the State) to redraw the school district boundaries in Phillips County.  That as a result of the redrawing of the school district lines in Phillips County after 1970-71 school years Lakeview lost two-third of the

former area that comprised its district, even though, the Lakeview School District has never sued the State defendants for the purpose of enforcing any desegregation orders of the federal courts.

30.      That the State of Arkansas through the Phillips County School Board reduced the average student population of the Lakeview School District by dissimulating its former district from plus-fifteen hundred per year to 500-plus per year on average attendance in the early 1970's.

31.      That many of the areas of concentrated population which included the city of Elaine, the hamlet of Oneida, the hamlet of Poplar Grove, the hamlet of Lexa, part of the hamlet of Southland, the hamlet of Calico Bottom, the hamlet of Ratio, the hamlet of Mellwood, the hamlet of Snowlake, the hamlet of Lambrook, the hamlet of Poplar Grove, parts of the hamlets of Southland, Rondo or Lexa, and the hamlet of Wabash, Arkansas were all extracted from the Lakeview School District former boundaries by the State of Arkansas through the Phillips County School Board.

32.      That the Lakeview School District prior to the *taking* of vast portions thereof in 1970-71 with the white Marvell School District, the white Barton School District, and the white Helena School District through state action was obligated to supply elementary and secondary educational opportunities for students in a vast portions of Phillips County in which it received no local tax revenue/millage. As a matter of fact, while Lakeview, for instance, educated on average 500+ students from Elaine area all of Elaine's local tax revenue during this period went to the white Elaine School system including the African-American landowners' millages in the Elaine School District while their children were sent to the Lakeview School District.

33.     That after the State of Arkansas through its local agency the Phillips County School Board was forced to desegregate, it unilaterally, arbitrarily and capriciously based upon racial and economic discriminatory considerations reduced both the Lakeview School District population and the potential Lakeview School District local property/tax base.

34.     That during the period between 1938 and 1971, the Lakeview School District was forced by State law to educate African-American students in the vast area above described. However, in that same area lived white students who would not attend the Lakeview School District, whose non-attendance was assistance by State action, nor was this situation changed from 1971 to present.

35.     That after 1971 and the actions of the State in reducing the physical area of the Lakeview School District, all whites left within what remained, with State support, refused to attend the Lakeview School District and attended either Elaine or Marvell School District. Statistically, most **"white flight"** student attends the Barton School District and the remainder go to private, non-church affiliated, segregated academies:   Phillips County has the dubious distinction of having two private "seggie" academies; Monroe County has zero; Lee County has one; St. Francis County has zero; and Arkansas county has zero.

36.     That the reduction of the Lakeview School District took away vast areas where local tax revenues would have benefited the finances of the Lakeview School District and of particular note was the fact that the Arkansas Power and Light Company of Arkansas (AP & L) has a power plant located near Helena, Arkansas which was in the Lakeview School District, it was stripped away, along with large

graineries located in Wabash, Arkansas. Both sites generated local, usable revenues, which would have benefited the Lakeview School District immensely, also sale tax from retail outlets in Oneida, Poplar Grove, Elaine, and Wabash were excluded from the Lakeview School District's tax base, leading eventually to its "fiscal distress".

37.    That because of the actions of the State, the Lakeview School District and the Plaintiffs/citizens therein were:  (a) initially deprived of any State finance for the creation of their local educational institution; (b) financed at such a minimum rate it would not be proper to be termed "school funding" in any intellectual or actual sense; (c) deprived of African-American and Caucasian students that would have improved its revenue base and population as a result of the ultimate forced desegregation of school system in eastern Arkansas by the federal courts; (d) were again after the forced desegregation aforementioned subject to the state defendants unconstitutional under-financing of the Lakeview School District as determined in *Lake View v Huckabee* through a term of years that included 1971 to 2002; (e) made to endure no changes in the constitutional scheme of  public finance between the decision in *Dupree v Alma* (Ark.1983) and the initial *Lakeview* funding decision of 1994; and (f) at the conclusion of all of the above unconstitutional actions and conduct, again victimized by the defendants who now seek the blessing of law through Act 60 to completely obliterate Lakeview School District because it had *prevailed* in what is commonly known as the "Arkansas School Funding Case."

38.    That Plaintiffs claim that all of the conduct mentioned in Paragraph 36 were perpetrated by the State of Arkansas historically and enforced by instant Defendants' predecessors in office and against the instant Plaintiffs and their predecessors in the

Lakeview School District because of racial considerations or non-racial constitutionally prohibited acts of economic discrimination.

39.     That any objective review of the historic legal relationship between the state defendants and persons of African ancestry within the state's boundaries will irrefutably establish a pattern of racial and economical discrimination against persons of color in the area of educational policies and Act 60 is a continuation of those historic patterns.

40.     That in 1994 when the state trial court initially found that the Lakeview School District had *prevailed* in its contentions that the Defendants operated in an unconstitutional finance scheme for public schools, immediately, the Defendants in the first session of the legislature thereafter of the Spring of 1995 passed what is commonly known as the "fiscal distressed" and "academic distressed" statutes. See ACA 6-26-1602, et seq.

41.     That as a result of the passage by State Defendants of its "fiscal distress" and "academic distress" statutes, the Lakeview School District was immediately identified as one of the schools in violation of "academic" and/or "fiscal distress" standards.

42.     That prior to the Lakeview School District filing of its initial lawsuit in 1992 entitled *Lakeview v. Clinton,* Civil/Chancery Case No. 92-5318, there was no State method for evaluating students' performance via "academic distress" methodology or "fiscal distress mechanisms" for measuring certain fiscal accountability indicators of any individual district.

43.     That as a result of Lakeview *prevailing* in its initial lawsuit by the issuance of

the Chancery court order of the Honorable Judge Annabelle Imber, November 9,

1994 ,as amended, December 21, 1994, the State of Arkansas immediately passed in

the regular session of the general assembly in 1995 the aforementioned "fiscal and

academic distressed" statutes. Exhibit 3 (Copy of Order of Chancery Jurist the

Honorable Annabelle Clinton-Imber dated November 9, 1994, as amended December

21, 1994).

44.     That between the initial decision of the Arkansas Chancellor in 1994 in which

the Lakeview School District *prevailed* and the decision of November 21, 2002 in

which the Arkansas Supreme Court finally decided the cause of *Lakeview School*

*District  v. Huckabee, supra,* the State of Arkansas did not follow the dictates of

Judge Imber's1994 order.

45.     That evidence of the failure of the State to correct the unconstitutional system

of school finance found by Judge Imber in her 1994 order as illustrated by the fact

that the Arkansas Supreme Court found in its latest determination in *Lakeview v.*

*Huckabee, supra*, that the system was unconstitutional and had basically not changed

to any constitutional significant from 1994 to 2002. Exhibit 4 (Copy of Supplemental

Opinion of the Arkansas Supreme Court in *Lakeview et. al. v. Huckabee et. al.* 2004,

see dissents.

46.     That during the period of 1994 to 2002 Lakeview School District because of

the statutory enactments of the State of Arkansas General Assembly and enforcement

of them by the defendants, plaintiffs and the Lakeview School District lost ground in

their joint effort to receive equitable and adequate finance from the State of Arkansas.

47.     That from 1938 to present, the African-American employees of the Lakeview School District whether they were administrators, teachers, or non-certified personnel have been paid far less wages on the whole than their white counterpart in any given predominately white school system, civil rights laws notwithstanding.

48.     That the Lakeview School District because of the discriminatory application of both State and Federal law during these same periods of time has received an inequitable amount of federal financing compared to their white counterparts in spite of federal prohibitions against the distribution of these funds based upon racial considerations to the various State school districts.

49.     That the Lakeview School District in violation of the federal equal protection clause, Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. 1981, 42 U.S.C. 1982, and 42 U.S.C. 1983 because of the racial composition of its students and personnel has as a result of State action been denied equality of participation in the distribution of federal funds since the adoption of the Civil Rights Act of 1964, Title VI, by the United States Congress.

50.     That the Lakeview School District and its patrons inclusive of Plaintiffs *prevailed* in the long running lawsuit of *Lakeview v. Huckabee*, and as a response to their *prevailing* the State enacted Act 60 of the Second Extraordinary Session of 2003.

51.     That as a result of the enactment of Act 60, Lakeview School District and all African-American school districts will be closed forever, if enforcement of said Act

60 is not prohibited, thereby placing all of the burden of constitutional compliance upon Plaintiffs as African-Americans and none upon white districts or the state as an entity, as a result of the deliberate conduct of the instant state defendants or their predecessors in office.

52.     That as a result of being the *prevailing* parties in a decade-plus long lawsuit, Lakeview School District and its citizens inclusive of Plaintiffs have been reward for this endurance, longsuffering, and forbearance with a strange token of victory by the state which was aptly reduced to the following: (a) received no increased constitutional funding that improved its financial situation during the period after the initial favorable verdict in the case of 1994 through 2003 or benefited from the creation of a constitutional education system; (b) became the object of the retaliatory effects of the "fiscal distress" and "academic distress" statutes enacted by the State of Arkansas in 1995; (c) bore the brunt of additional retaliatory action taken against them by the Defendants between 1992 and 2002 which includes more on-campus investigations, audits, etc. than any other school district in the history of this State; (d) suffers additional insults and constitutional injuries at the hand of the State Defendants through the passage of Act 60 which attempts to reverse the burden of who should bare responsibility of the unconstitutional violation of Plaintiffs of the Lakeview School District constitutional rights by shifting that burden from the state to the Plaintiffs and the Plaintiffs school district; and (e) lastly but most constitutionally grievous, the State Defendants through Act 60 attempts to punish the Plaintiffs as a result of their *prevailing* status as the initiators of *Lakeview, et. al. v.*

*Huckabee et. al*, with the destruction of the Lakeview School District as their **PRIZE**.

53.     That the citizens of Lakeview School District have never failed to support tax increase measures for the purpose of improve financing of the Lakeview School District.

54.     That at the time that the Lakeview School District filed the original school finance lawsuit entitled *Lakeview v Clinton* in 1992, the Lakeview School District had either the highest or in the top two highest millage rates of any of the other school districts in the State.

55.     That during the course of the existence of the Lakeview School District its citizens have in support of their local school district, not only supported fundraiser and other like revenue generated events, but have, in fact, personally taxed themselves for a period of time over and above the voted millage in order to make sure that the Lakeview School District was able to give their children of color the best education affordable at the time.

56.     That self-taxation measure included among other things, and the most dramatic, the bringing of bales of cotton to the Lakeview campus each Fall of the year by individual farmers within the Lakeview School District for the purpose of donating same to the Lakeview School Board so that the sell of these bales of cotton by them would be used to boost the financial status of the Lakeview School District.

57.     That in the late thirties, forties and fifties the tradition of self-taxation by the Lakeview School District support of patrons was viable.

58.     That throughout the majority of the history of the Lakeview School District the patrons, parents, and guardians of children in the Lakeview School District were forced by the State of Arkansas to purchase all or some of the students' handbooks, musical equipment, sports equipment, vocational art equipment, liberal art equipment, etc.

59.     That the State of Arkansas absolutely provided no books for the student of Lakeview from ninth grade through twelfth grade from 1938 through the 1970s. All of these students handbook was purchased by students' parents or by donations from patrons to the district for the purpose of purchasing said books for those children whose parents could not absolutely afford.

60.     That Lakeview School District during the forties and fifties allowed various classes at different times of the year to actually be released from school so they could either chop cotton for pay or pick cotton for pay; these wages were contributed to the school so that it was able to continue to function as an educational institution.

61.     That Lakeview School District at its genesis was not afforded the means by the State to purchase school buses and only during the late-forties did the State of Arkansas finally allocated some funds for the purchase of second and third-hand buses from other white school districts in Phillips County who had discarded them.

62.     That the buses eventually used by the Lakeview School District had been discarded by other white districts, Lakeview was required to purchase same school buses and other equipment at inflated rates so that in fact the white school districts: Elaine, Marvell, Helena, etc. profiteered off of the taxpayers of Lakeview along with the infamous *County Supervisor of Colored Schools*.

63.      That although ostensibly the Lakeview School District had the ability under federal and Arkansas law to elect members of the Lakeview School Board,  its citizens were not allowed by Arkansas law for a long period to utilize that electoral prerogative.

64.      That the board of the Lakeview School along with the Lakeview School District Superintendent was in fact appointed pursuant to the *de jure* and *de facto* authority of State agencies including the present Defendants' predecessors and the Phillips County School Board.

65.      That although the Lakeview School District from 1938 through approximately the early 70's was one hundred percent African-American it Chief Executive Officer (County Supervisor of Colored Schools) was white.

66.      That during a great extent of the relevant period covered by the facts illustrative in this lawsuit, African-American were prohibited by the State of Arkansas from exercising the right of franchise and were beaten, raped, molested, burned-out, ran-off or lynched for trying to exercise their right to vote without one instance of state prosecution of any white person who involved themselves in the aforementioned violence against persons of African descent.

67.      That African-Americans at Lakeview were franchised in 1965 after the passage of the Federal Voting Right Act of same year, codified as, 42 U.S.C. 1973 et. seq.

68.      That during the history of the Lakeview School District it has been suspiciously burned to the ground on at least two occasions and the citizens of

21

Lakeview mainly through self-help efforts and payments from insurance rebuilt the physical plant of the Lakeview School District.

69.      That the Lakeview School District Board on several occasions since 1965 has personally obligated themselves individually and collectively to local financial institution inclusive of Helena National Bank of Helena, formerly First National Bank of Phillips County and formerly Merchants and Farmers Bank of West Helena, Arkansas for loans in order to continue the functioning of the Lakeview School District during any given school year between 1965 and most recently.

70.      That the cumulative amount of these various loans extended into the hundreds of thousands of dollars.

71.      That after the State of Arkansas passed ACA 6-26-1602 et. seq., Acts of the General Assembly 1995, No. 915 Section 1 which define both "fiscal and academic distress," the State of Arkansas immediately applied that statute to designate Lakeview School District as both academically and fiscally distressed.

72.      That prior to 1994 and the favorable verdict of the Lakeview School District in the *Lakeview v. Clinton/Tucker/Huckabee* litigation,  the State of Arkansas had never required the testing of African-American children within the Lakeview School District for any type of State academic standing or monitoring.

73.      That prior to the favorable ruling of the trial court in 1994 in the *Lakeview v. Clinton/Tucker/Huckabee* lawsuit that the State of Arkansas had no definition for "fiscal distress" or "academic distress".

74.      That the State of Arkansas by its own admission ignored every finding of the 1994 ruling of the Arkansas trial court as issued by the Honorable Judge Annabelle

22

Clinton regarding equity and adequacy, but initiated ACA 6-20-1602, et. seq., and the subsequent enforcement regulations which had absolutely no relationships to the Pulaski County Chancery Court finding of 1994, but did effect the Lakeview School District punitively from the day of their enactment to presently.

75.     That after 1994 the first meeting of the General Assembly of Arkansas in 1995 it passed Acts 915, 916 of 1995 among other educational enactment in response to the 1994 ruling of the court in *Lakeview v. Clinton/Tucker* (at the time of Governor Bill Clinton's resignation to run for the presidency, the Honorable Jim Guy Tucker became Governor and served for a short period of time and thereafter present Governor Mike Huckabee assumed the governorship, thus at one time or another during the course of the Lakeview School finance litigation the Honorable Bill Clinton, the Honorable Jim Guy Tucker, and the Honorable Mike Huckabee were the featured Defendants along with the State of Arkansas as an entity).

76.     That in the 1995 and 1997 regular session of the General Assembly of Arkansas it passed Acts 915, 916 and 1307, 1361 respectively, among others for the purpose of effectuating a constitutional system of public school finance. (Acts 391, 975, 1296, 1318 was passed in 1999 but had no effect on prior 1990's practices of the Defendants' educational policies.)

77.     That in both the General Assembly of 1995 and 1997 the passage of various school finance laws by the Defendant State of Arkansas did not produce a constitutional system of public school finance, further, in the 1999, 2001, 2003, or 2003 special sessions this failure continues; the Plaintiffs/Lakeview School District, Inc. and its citizens continues to suffer from the unconstitutional enactment of the

various statute of aforementioned and the failure of the state in its legislative session between 1995 through 2003 to the extent that it was determined to be in constant "financial distress" *because of the funding system which provided State revenues those years.*

78.     That specifically the State of Arkansas during 1995 through 2003 general sessions and special sessions of the legislature passed laws for the financing of Arkansas public school system and in those various laws it created definitions and categories to determine whether or not a school district would be in "financial distress" after it had received all of the funding available from the State in any given biannual.

79.     That after an analysis of the funding of the Lakeview School District post-1994, Lakeview School District as determine by the State that as a *result* of the insufficiencies of the funds they received in the general Foundation Grant, the Lakeview School District needed some incentive funds which were placed in the budget for those districts which were in present financial distress **because of the laws** passed by the State during the years 1995, 1997, and 1999, and 2001.

80.     That as a *result* of Lakeview's successful litigation of the issue of whether or not the State of Arkansas had a constitutional appropriate public school finance system, the State of Arkansas passed laws which violated the equal protection and due process rights of Lakeview School District in such a way that they were purposeful under- financed by specific state action set-out above.

81.     That the Lakeview School District has been placed on the "academic" and "fiscal distress" list at given times between 1995 and present. *(Lakeview has also been placed on a non-statutory "watch list")*

82.     That during the course of the period of time in which Lakeview was placed on either the "academic distress" list, or "fiscal distress" list (watch list) by the Defendant, State of Arkansas, the Defendant, State of Arkansas was operating an unconstitutional system of public school finance as it related to the Lakeview School District.

83.     That from 1938 to present the State of Arkansas has never operated a constitutionally appropriate system of public school finance in its relationship to the Lakeview School District. (According to the most recent Order of the United States Supreme Court in *Lakeview v. Huckabee* it is still unconstitutional. See Exhibit 4, supra.

84.     **That between 1938 and 1954 under the legally approved *Plessy v. Ferguson* doctrine of "separate" but no "equal." Lakeview School District received a full measure of "separate" no portions of "equal." That between 1995 and 2003 Plaintiffs/Lakeview School District received plenty of assessment (testing), but, sparse assets. That the Plaintiffs contends that the present academic testing system as it affect African-American students is void of any educational value and has been and is further being used by the state defendants for the purpose of tentatively eliminating African-American students from any equal opportunities to educational programs within this state; that this court should declare the academic testing system utilized by the**

**State of Arkansas an unconstitutional violation of equal protection clause of the 14th Amendment to the United States Constitution as it relates to Plaintiffs and Plaintiffs children.**

85.      That between 1954 and 1970-71 school years, the period in which the federal government forced desegregation upon the State of Arkansas schools in eastern Arkansas, the State of Arkansas operated in spite of *Brown v. Board* under the tenets *Plessy v. Ferguson* either *de jure* or *de facto.*

86.      That between 1971 and present the Defendants legal relationship with the Lakeview School District remained *Plessy v. Ferguson* in a *de facto* and *de jure* fashion.

87.      That because of the lack of enforcement of the "equal" element in the "separate but equal" doctrine of *Plessy v. Ferguson* led the Lakeview School District to filing its initial lawsuit entitled *Lakeview v. Clinton* in the Chancery Court of Pulaski County of 1992.

88.      That the Lakeview School District because of the rates of property evaluation within its boundaries is considered a "poor" school district. See Ark. Const. Amends. 40, 59, and 74.

89.      That the Arkansas Supreme Court in *Lakeview v. Huckabee* (2002), supra, determined that "poor school district" made up an *identifiable class* under Arkansas law and a *suspected class* for constitutional scrutiny. Article 2 Section 2, 3, and 18 Arkansas Constitution 1874; Fourteenth and Fifteenth Amendment of the United States Constitution

90.     That Lakeview School District is both African-American in its makeup and as determined by the State's own criteria identified as a "financially poor school district."

91.     That at the time of the Lakeview School District's consolidation hearing on May 17, 2004, the Lakeview School District various State student test scores were comparable to any school district within Phillips County.

92.     That the Lakeview School District was given by defendant State Board of Education ten minutes to present their objections to consolidation, ironically, on May 17, 2004, the 50th Anniversary of *Brown v .Board of Education.*

93.     That Lakeview has a school population of less than three hundred and fifty.

94.     That by order of the Arkansas State School Board), Lakeview School District has been mandated under Act 60 to be destroyed through its consolidation with the Barton School District of Phillips County, Arkansas.  See Exhibit 4A - Copy of Order of May 28, 2004 from the State defendant Arkansas School Board.

95.     That the Lakeview School District has a history of providing an education to its students that in every respect is equal or superior to that which the Barton School District providing to its past and present students.

96.     That the test scores for most African-American students in particular of the Barton School District are inferior in performance to African-American students at the Lakeview School District.

97.     That the graduation rate of African-American students at Lakeview is superior to the graduation rate of African-American rate at Barton and the drop-out rate at Lakeview is non-existent.

98.     That the percentages of African-American students at Lakeview that not only go to college but matriculation from college by Lakeview School District graduates is larger than those graduating from Barton in any given class year, it is especially noticeable if the analysis is reserved for African-American graduates from Barton as compared to students who graduate from the Lakeview School District.

99.     That the Lakeview School District has a faculty and supportive staff that is predominately African-American.

100.    That the faculty of Barton school system is overwhelmingly Caucasian.

101.    That the student population at Lakeview is ninety-eight plus percent African-American that the student population at Barton is 70% majority Caucasian.

102.    That the Barton school system is the magnet "**white flight**" public school system in Phillips County, undisputably (most citizens in Phillips County consider it a quasi private academy). That Caucasian students within the Lakeview School District from 1970 to present have all, with rare exception, attended public schools outside of the Lakeview system or have attended private "seggie academies" schools. Caucasian students from the Elaine School District and Caucasian students from Holly Grove, Monroe County school district and from the Lee County school district have all gravitated to the Barton School District or private "seggie academies" in order to avoid attending schools in those aforementioned districts which has been predominately African-American in their student population make-up. ("seggie academies" is a terms that is prominent used in Phillips County to describe it private schools.-short for segregation academies.)

103.    That the Barton school system is hostile to consolidation as is evidenced by the receipt of letter from individuals and officials within that district attesting to that fact. See Exhibits 5, 6, and 7

104.    That the Barton school system has a history of litigation involving accusation of racial discrimination by African-American teachers, African-American members of the Barton School Board, African-American parents and students.

105.    That the Lakeview School System District had seven African-American board members: an African-American superintendent, an African-American principal.

106.    That the Barton School system has six Caucasian members of its board of directors and one African-American, no African-American in administrative authority within the school system either as principals, counselors, assistant principals, etc., and Barton has a Caucasian Superintendent.

107.    That the Lakeview School System District has/had contractual obligation with independent contractors, administrators, and staff, contractual obligation with bonding companies on outstanding indebtedness on school bonds, contractual obligation with private lending institution and private individuals for the use of certain Lakeview School District agriculture property.

108.    That the Lakeview School District has a *contract* between itself and the Plaintiffs/taxpayers via the passage of certain local millages for the maintenance of an independent and viable public school system within the Lakeview community.

109.    That by the State's own admission there is no educational advantage to the forced consolidation of Lakeview with any school district.

110.    That by the State's own admission there is no quantifiable educational advantage to the students of the Lakeview School District through consolidation with any other school district in the area. That Lakeview School District was prevented by Act 60 from consolidating with white school districts or African-American school district in central or northwest Arkansas where there may have been some quantifiable advantage.

111.    That by the State's own admission there has been no resolution of the definition of *equity* or *adequacy* within the Arkansas public educational structure and the State has adamantly refused to provide funds for the conducting of the necessary studies, requiring only forced consolidation/forced busing as an economic tool of convenience for the State defendants as opposed to the creation of a constitutional state funding system consistent with adequacy and equity principles.

112.    That under Arkansas' education system, there is no information on how much it cost to educate any given type of student from *regular* to *handicap* to *talented* as the system is now unconstitutionally maintained and there is no relationship between forced consolidation and the State obligation to meet the individual constitutional education needs of Plaintiffs children, wards, etc.

113.    That by the State's own admission whether or not consolidation is defined by school population of fifteen hundred, one thousand, seven hundred fifty, five hundred or three hundred fifty has no educational relevancy; the number utilized by the State Defendants to implement consolidation is arbitrary, capricious, unreasonable, invidiously discriminatory, and not based upon any science or educational

reasoning/methodology; it is a number that was utilized because it was political possible to pass legislature utilizing that number. See Exhibit 2, supra

114.    That the overwhelmingly majority of African-American managed school district within the State of Arkansas are/were classified utilizing the athletic conference classification as Class B.

115.    That Class B schools are the smallest athletic conference classification utilized by officials in Arkansas and have/had some of the poorest students in the state. There is also absolutely no savings of educational spending that result from consolidation of these poor students with larger, sometimes equally poor students in larger districts.

116.    That the three hundred fifty student limitation Act 60 envelops the overwhelming majority of all African-American school district including Plaintiffs/ Lakeview School District.

117.    That as a result of the forced desegregation of public schools by the federal government in 1970-71 school year. African-American schools were destroyed or sacrificed on the "sword" of desegregation. That notable schools within this State who had a legacy of providing educational opportunities to poor kids especially poor kids of African decent were destroyed by the State of Arkansas in response to the defendants ultimate and forced submission to the dictates of the United States Constitution requirements of "equality" under the law.

118.    That the State of Arkansas commitment to racial discrimination against African-American is so fervent that in 1957 the State of Arkansas through its then governor precipitated what is now know as the 1957 Little Rock School Crisis.

119.     That because of the State Defendants adamant posit that African-American are of an inferior evolutionary status, this State refused to desegregation at *Little Rock Central High School*, Arkansas except at the point of a bayonet.

120.     That the white people of the State of Arkansas showing their commitment to the same official view of inferiority of African-American people passed Amendment 44 to the Arkansas Constitution during this same period which prohibited African-American and Caucasians from attending school. The intent of Amendment 44 was to stop both African-American and Caucasian students from attending any public school at all, before the people of this State would allow them to attend school together.

121.     That in 1956 -58 Arkansas' governor, state assembly, and congressional delegates joined as partners in the mendacious *Southern Manifesto*, a document issued by leading public officials and public figures in southern states to demonstrate their defiance of the United States Supreme Court ruling in *Brown v. Board of Education*.

122.     That as a direct consequence of the actions identified in paragraphs 112, 113, 114, and 115 which were multiplied throughout other areas of the Southern United States and some parts of the North, the federal government enacted the 1964 Civil Rights Act; as a further consequence of resistance to the application of equality under the law prescribed in the Fourteenth Amendment of the United States Constitution, the federal government was forced to pass the federal Voting Right Act of 1965 in order to guarantee the rights of African-American to vote in Arkansas (including some of the Plaintiffs in this lawsuit).

123.     That in 1958 the State of Arkansas was forced by federal court order to open school doors that they had closed in the State in order to avoid desegregation. That same court order declared Amendment 44 to the Arkansas Constitution as unconstitutional via the U. S. Constitution. (Amendment 44 was part of the State defendants' strategy of *nullification and interposition*).

124.     That it is an undisputable historical fact that the State of Arkansas took the position in the late fifties that it would rather have **no school at all** than to have African-Americans and Caucasian students attending the same school.

125.     That during the period of turmoil described in paragraph 112 through 118, the Lakeview School District operated under the State imposed doctrine of "separate but unequal".

126.     That when the State's Defendants were literally forced to desegregate, it punished African-American communities, African-American school district, African-American teachers, and African-American students by closing those traditional institution of education whose legacies are well known and appreciated in the African-American community.

127.     That the State's Defendant did not close **ONE WHITE SCHOOL** as a result of various federal desegregation orders nor force one white student to attend a formerly African-American school.

128.     That the State of Arkansas placed the **TOTAL BURDEN OF DESEGREGATION** (*Brown v. Board*) on the backs of African-American school districts, communities, administrators, patrons, and taxpayers.

129.      That specifically as a result of forced desegregation a number of African-American schools in this State was forced to close including: (1) Carver High School – Stevens, Arkansas;  (2) Field High School - Gould, Arkansas; (3) J.S. Phelix – Marion, Arkansas; (4) Golden High School – Terrell, Arkansas; (5) Conway County Training School – Menifee, Arkansas; (6) J. C. Cooke High School – South Pulaski County, Arkansas; (7) J. E. Wallace High School -  Fordyce Arkansas ; (8) Field High School – Gould, Arkansas; (9) Carver High School – Luxora, Arkansas; (10) Harrison High School – Blytheville, Arkansas; (11) Booker T. Washington High School – Jonesboro, Arkansas; (12) L. W. Sullivan High School – Malvern, Arkansas; (13) Dunbar High School – Little Rock, Arkansas; (14) East Side High School – Tuckerman, Arkansas; (15) Brown High School – McCrory, Arkansas; (16) West Side High School – Hermitage, Arkansas; (17) Pine Street High School – Conway, Arkansas; (18) Harris High School – McAlmont, Arkansas; (19) Chico County Training School – Dermot, Arkansas; (20) Lincoln High School – Camden, Arkansas; (21) Martin High School – Altheimer, Arkansas; (22) Lincoln High School – Forrest City, Arkansas; (23) Merrell High School – Pine Bluff, Arkansas; (24) Horace Mann High School – Little Rock, Arkansas; (25) Jones High – North Little Rock, Arkansas; (26) Anna Strong-Robert R. Moton High School – Marianna, Arkansas; (27) Marion Anderson High School – Brinkley, Arkansas; (28) Wonder High School – West Memphis, Arkansas; (29) Coleman High School – Pine bluff, Arkansas; (30) Townshend Park High School – Pine Bluff, Arkansas; (21) Lincoln High School – Fort Smith, Arkansas; (32) Peake High School – Arkadelphia, Arkansas; (33) Wilson High School – Malvern, Arkansas; (34) McCrae High School

– Prescott, Arkansas; (35) Yeager High School – Hope, Arkansas; (36) Washington High School – Texarkana, Arkansas; (37) Washington High School – Eldorado, Arkansas; (38) Bell High School – Gurdon, Arkansas; (39) J. W. Carver High School – Clarendon, Arkansas; (40) Woodruff County Training School – Augusta Arkansas; Mildred Jackson High School – Hughes, Arkansas; (41) Holman High School – Stuttgart, Arkansas; (42) Immanuel High School – Almyra, Arkansas; (43) Little River County Training School – Ashdown, Arkansas; (44) Unity High School – Foreman, Arkansas; (45) Central High School – Lake Village, Arkansas; (46) Oak Grove High School – Ralston, Arkansas; (47) T M Daniels High School, Crossett, Arkansas; (48) Holly Grove Negro School District - Holly Grove, Arkansas; (49) Desha County Training School – McGhee, Arkansas; (50) Wolfe Project School District – Desha County, Arkansas, and Phillips County in particular; (51) Dunbar High School - Earle, Arkansas; (52) McNeal High School - Crawfordsville, Arkansas; (53)  Eliza Miller School of Helena, Arkansas; (54) Tate  School of Marvell, Arkansas; (55) Elementary School of Oneida, Arkansas; (55) Doris Perkin Elementary School of Barton, Arkansas; (56) Elaine Industrial School of  Elaine, Arkansas; (57) Industrial School of Snow Lake, Arkansas.  These are not all of the schools that have been closed as a result of the Defendants victimization of African-American schools for the purpose of formulating corrective action via its violation of the United States Constitution but are a representative number. (All of the above mentioned schools should be considered by the court as districts rather than either high schools or elementary schools).

130.     That the very few African-American school districts remaining in Arkansas after their fellow school districts were destroyed by the state defendants as set-out above will now succumb to the same death through the state's exercise punitive actions against the Plaintiffs because they sought to enforce their constitutional rights via *Lakeview v. Huckabee*. See Act 60

131.     That the "weight" of conformity with United States constitutional rights and civil rights provisions in educational matters within this state has been **BORNE TOTALLY BY AFRICAN-AMERICANS, PARENTS, PATRONS, DISTRICT SCHOOL BOARDS, TEACHERS, AND STUDENTS TAXPAYERS, IN THE PAST AS IS AGAIN PROPOSED BY ACT 60.**

132.     That no quantitative benefit has been presented or can be presented or proven by the State's Defendants of educational improvement of African-Americans as a result of the destruction of the above historical educational institution in this State; nor is a educational benefit available to Plaintiffs or Plaintiffs children as a result of the destruction of the Lakeview School District through Act 60.

133.     That in fact the quantitative analysis demonstrates the opposite i.e. that because of the State defendants' past destruction of traditional African-American sites of educational opportunities African-American students educational progress was not only halted but has regressed, overall.

134.     That the combining or consolidation of African-American traditional school districts and sites with predominately white school districts and physical plants as a result of the forced desegregation issued in by court order circa 1970-71 has resulted in an "almost universal abhorrence" to education by African-American students in

this State as compared to the period before they underwent the trauma, travails, racial ugliness, educational disregard, and personal indifference suffered by them and their parents when African-American schools were closed.

135.     That as a result of desegregation orders the State of Arkansas and the various predominately white school district within this State took punitive action against the African-American community in the following form: (a) totally denying African-American teachers in some instance the right to teach; (b) discriminating against those African-American teachers in the area of pay, placement, and promotion; (c) discriminating against African-American students not only in classroom placement but in extracurricular placement; (d) discrimination against African-American students in the granting of fair and impartial grading; (e) discrimination against African-American students in their counseling service available for them in the taking of advance classes or positive counseling services and the planning of their future effort at the college level; (f) a reduction of African-American administrators including former superintendent to a status of menial workman; (g) extreme and disparate disciplinary proceedings against African-American students by white administrators and teachers in the newly desegregated facilities and the list of negative can be compounded without adding one educational positive, many of the victims, both students and staff of this tragic period in Arkansas educational and constitutional history found refuge in the Phillip County area at the Lakeview School District.(while this conduct took place in individual school districts they were undeniable *state actions* taken by state agencies with the assistance as the State of Arkansas as a sovereignty).

136.    That Plaintiffs contend that Act 60 axiomatically will result in the same proven racial discriminatory effect and conduct by the State/agencies of the State that is listed in Paragraphs 122 through 131 if the Lakeview School District is forced to bare the constitutional sins of the State through forced consolidation.

## FIRST CAUSE OF ACTION:

### Act 60 will constitutionally violate the 1964 Civil Right Act, the Fourteenth Amendment United States Constitution equal protection and due process clause

137.    That Plaintiffs incorporate allegations 1-136 by reference.

138.    That Plaintiffs contend based upon the facts enumerated hereinabove that the history both factual and legally of the State's Defendants is one in which racial discrimination against African-Americans has been not only the custom but both *de jure* and *de facto* realities in all facets of public, political, social and economic life, but for the purpose of this lawsuit are limited to discriminatory state action in the area of voting rights, property rights, taxation rights, and educational opportunities.

139.    That Act 60 of the Second Extraordinary Session of the General Assembly of Arkansas 2003 is the latest manifestation of the unequal burden borne by the Plaintiffs and African-American citizens in general in order for the State's Defendants to allege compliance with the requirements of equal protection, due process, equity, adequacy, and efficiency. (See Article 14, Arkansas Constitution 1874, 5th and 14th Amend U. S. Const.).

140.    That Act 60 is racial discriminatory in its application, its intent and one of the features of *facial* racial discrimination of the Act is consummated in the arbitrary selection of three hundred fifty student population per district as the cut-off point for forced consolidation and forced busing.

141.      That the State was acutely aware, that Lakeview as an African-American district would be destroyed by using a 350 cut-off figure for implementation of Act 60 consolidation mechanisms.

142.      That an African-American school district is defined for the purpose of this lawsuit as a district that has: (a) a majority African-American school board; (b) coupled with the presence of the Superintendent/Chief Executive Officer being of African descent; and (c) has a majority African-American student population.

143.      That the state defendants knew that  practically all, if not all, African-Americans school districts would be forced to consolidate and that the three hundred fifty number was selected *arbitrarily* and *capriciously* without any relationship whatsoever to the delivery of the constitutional educational policy under either Arkansas or federal law.

144.      That the State knew and orchestrated through the Defendants' State School Board, the promulgation of policies that required race as the primary consideration in the consolidation process; said racial consideration was used negatively against all African-American districts affected by Act 60.

145.      That no African-American school district subject to consolidation was consolidated with an African-American controlled school district.

146.      That no white district subject to consolidation was required to consolidate with an African-American district

147.      That all of the consolidation order by the State under Act 60 requires African-American districts to be consolidated by absorption of them by predominately white districts.

148.     That white school districts on the other hand that was required to consolidate in many instances was allowed to consolidate with other white school districts making a larger white school district.

149.     That in no instance was an African-American school district allowed by the Defendant's State School Board to consolidate with another African-American school district resulting in a larger African-American controlled school district.

150.     That in no instance were African-Americans school district superintendent allowed under Act 60 to remain the superintendent of any school district consolidated, but in all instances the superintendent of the consolidated school districts will be white, along with a vast majority of teachers, administrators and support staff; without Act 60 if allowed to be promulgated within African-Americans relevant participation in the educational policies of this State and in the educational profession.

151.     That it is contended by the Plaintiffs, the State Defendants purposely and intentionally with racial animus toward Plaintiffs school district and Plaintiffs children enacted statutes which would assure that the Lakeview School District would be destroyed, if they were implemented. Again, race was a paramount and all controlling consideration in the State's passage and implementation of Act 60.

152.     That the Plaintiffs were well aware that the Lakeview School District was classified within the athletic conferences as a Class B school having a student population of under three hundred fifty.

153.     That Lakeview School District was the *prevailing* party in *Lakeview v. Huckabee* and in retaliation for the successful effort in Lakeview School District in

*Lakeview v. Huckabee* it is contended that the State's Defendants enacted Act 60 for the purposeful intent of the destroying it and any future opportunities for the Plaintiffs to challenge the State educational policies in a cohesive fashion. ACA 116-123-107(a)(5)

154.    That the Lakeview School District administrator or legal representatives were excluded from participation in the development of any *remedy* after *prevailing* in *Lakeview v. Huckabee*, in fact, the Lakeview School District and its citizens inclusive of the Plaintiffs, because of race it is contended, were not allowed to appear before any legislative panel, legislative committee, special blue ribbon panel of either the governor or the State Department of Education during the year proceeding the decision in *Lakeview et. al. v Huckabee* 351 Ark. 31, 2002, that decision being rendered on November 21, 2002.

155.    That the public record demonstrates very clearly that not only was Lakeview African-American citizens' representatives excluded by the State's Defendants from participating in the development of a remedy in the *Lakeview v. Huckabee*, there was also a blanket exclusion of African-Americans participation in the development of the remedy to address the court decision in *Lakeview v. Huckabee* of any nature from any source.

156.    That while the Lakeview School District, its citizenry was responsible for bringing *Lakeview v. Huckabee*, persevering and *prevailing* in that cause, Act 60 was passed for the primary purpose of the destruction of Lakeview as an African-American educational entity along with the destruction of the remaining African-American educational institutions within the public school system of the State of

Arkansas as bitter fruits of their victory. That "southern trees still bear strange fruits" in the justice system which are constitutionally unpalatable. (See Circuit Judge Collin Kilgore's final order at the trial level in *Lakeview v Huckabee* in the Pulaski County District Court - Cn 1992-5318).

157.    That Act 60 places the **total burden** for correction of the unconstitutional acts of the State of Arkansas over the course of years described in the above paragraph, upon the victims of racial discriminatory and fiscally unconstitutionally action of the State.

158.    That Act 60 requires no recompense for racially discriminatory actions of the State toward the Plaintiffs school district or the Plaintiffs individually as members of the Lakeview School District, but in fact places that burden on them, while the State is absorbed of any responsibilities for past unconstitutional action and conduct.

159.    That Act 60 is being utilized by the State's Defendants to eliminate the problems of providing an equitable, adequate and non-racially discriminatory educational system to the Plaintiffs by simply destroying the district. (There is not proof available that Plaintiffs or Plaintiffs children will be availed of a constitutional system in Barton since the public school system of Arkansas as of this day has not been determined to be constitutional; therefore, all of the school systems in the State of Arkansas are operating under an unconstitutional system).

160.    That neither the Fourteenth Amendment of the U. S. Constitution or 42 U.S.C. 1893, it is contended, will tolerate the upholding of the constitutionality of Act 60 as it applies to the Lakeview School District and the Plaintiffs herein who bares the brunt of its racially discriminatory fall-out.

# SECOND CAUSE OF ACTION:

## Voting Rights violation

161.    That Plaintiffs incorporate allegations 1-160 by reference.

162.    That Plaintiffs contends based upon the facts enumerated hereinabove that the history both factual and legally of the State's Defendants is one in which racial discrimination against the voting rights of African-Americans is undisputable and has been implemented by the State in both a *de jure* and *de facto* fashion. (United States Constitution, 14th and 15th Amend., 42 U.S.C. 1973 et seq.)

163.    Act 60 indisputably dilutes the voting strength of the Plaintiffs and other African-Americans voters within the Lakeview School boundaries and openly challenges the anti-proportional representational provision of the federal Voting Right Act of 1965, as amended.

164.    That the Lakeview School District has seven members of the school board who are all African-American.

165.    That prior laws of the State of Arkansas allowed for seven person elected board to represent any given school district.

166.    That the African-American citizens of Lakeview following the passage of the State defendants, Department of Education, 1965 Voting Right Acts, as amended, dutiful exercise their right of franchise and elected a predominantly African-American school board.

167.    That because of racial discriminatory practices of the State during a period between 1970 and 1980 the citizens of Lakeview was forced to "elect" as chairman of the Lakeview school board a white member.

168.    That the aforementioned white member of the Lakeview school board did not even live in the Lakeview School District.

169.    That this white member of the Lakeview school board was "elected" because the State Department of Education refused to deal with the African-American members of the school board on a level of equality and respect which would have engender the State Defendants Department of Education transfers of lawfully appropriated funding to the Lakeview School District even though those funds were minimalist.

170.    That the African-American school board members decided that the State Department of Education was so racially based in its attitude toward them, it was necessary to eliminate one African American member of the seven board members and place a white person in his place so that that white person could "**go talk to the other white folks for them.**"   This degradation was endured by the Plaintiffs/Plaintiffs' successors in office, and Plaintiffs school district in order to provide some educational opportunities through state funding to their children.

171.    That after a period of time in the 1970's the Lakeview School District was able because of the development of new leadership to shed itself of the vestige of slavery embodied in the necessity of "electing" a sole white person, who did not live in the school district, and whose children and grandchildren went to private academy within Phillips County to represent them in order to receive niggardly financial support from the State's Defendants.

172.    That based upon the actual wording of Act 60 subsection 2, ACA 6-13-1405 (a)(5), as amended, the State of Arkansas has usurp Plaintiffs franchise right

nullifying a legally conducted election which has constitutionally elected members to the Lakeview School board. *It is contended by Plaintiffs that nullification of an election is a judicial act and not one afforded the executive branch of government.*

173.　　That in fact ACT 60 authorizes the State to declare vacant all seven offices of school director in the Plaintiffs school district and Act 60 further declares that the duly elected members of the Lakeview School Board powers of contract is obliterated and any contract in which they are now obligated is null and void.

174.　　That Act 60 furthers blatantly violates one-man-one-vote principle because it mandates that membership on the school board should be equal to the proportion of students from consolidated school district in proportion to the receiving school district. See Exhibit 8 - Copy of Order of defendant State School Board voiding the election of Lakeview School District Board of Directors.

175.　　That the United States Constitution requirement of one-man-one-vote conflicts with Act 60's requirement of proportionality.

176.　　That Act 60 not only dilutes the voting strengths of the Plaintiffs to elect persons of their choice to represent them in their own school district and handle the educational affairs of their children, it destroys the Plaintiffs representative influence, also, because the Barton School District Board is presently consist of no elected African-American from Plaintiffs community or "former" school district.

177.　　That Act 60 has allowed the state defendants to determine by arbitrary and capricious standards who would be named as the Lakeview person who sit as a board member in the newly consolidated district. The Lakeview School community has no

elected representation on any school board that educates it students as of the September 2004 school board elections and as a result of Act 60.

178.    That even if it could be logically argued that Plaintiffs/Lakeview's citizens would have an opportunity to elect one member of the new consolidated school board it would be a dilution of the present voting strength from seven elected board members to one.

179.    That Act 60 in violation of the Federal Voting Right Act does not set-out any elements, instruction, and directive on the constitutional reapportionment of electoral districts in the "new consolidated district", it's simply and unconstitutional requires proportionality.  That the appointment of a former Lakeview School District, Inc. board member by the defendant state school board is patently unconstitutional, rendering impotent the exercise of the franchise by Plaintiffs.

180.    That the Barton School District is presently operating under Federal Court order in which it was found to have previously reapportioned its school board wards in a racial discriminatory manner and through *state action* has created new voting wards within the consolidated district that do not comport with the requirements of the federal voting rights act or the doctrine of "one man-one vote".  That the new wards are the sole creation of the state through its agent the Barton School District without any input from Plaintiffs or citizens of the Lakeview School District, Inc. corpus.

181.    That Act 60 purposely and intentionally provides for the destruction of African-American citizens of Lakeview and the Plaintiffs input in the government of

the school in which their children will be forced to attend under the remaining subsections of Act 60.

182.     That Act 60 by the dilution of Plaintiffs vote completely erode the ability of the Plaintiffs influence their cultural, academics, social, political, and moral product in which their children will participate by going to Barton School District and completely denies Plaintiffs an opportunity to elect candidates of their choice to the directorship of the consolidated school board.

183.     Act 60, if found to be constitutional, will force all of the will force all of the **"electoral burden"** consolidation on the backs of the Plaintiffs and other like African-American citizens of Lakeview School District in the same manner that desegregation placed that burden after *Brown v. Board* decisions of 1954--1955. (Brown I and Brown II)

184.     That it is contended that the Voting Right Acts is violated when the burdened of consolidation effectively destroys the voting strength of Plaintiffs to elect persons to school board director of their choice while not effecting the voting rights or voting strength of whites citizens in the Barton School District or white citizens in the State of Arkansas, as a whole, to do same.

185.     That the implementation of Act 60 has the effect of not only diluting the Plaintiffs right to participate in the meaningful political process affecting the election of officials to governor the educational of the institution in which children attends –*it has, in fact, destroy that right*.

186.     That because of Act 60, Plaintiffs vote do not have any political effect on who becomes a member of the Barton School Board of Directors and Act 60 has no

mechanism for constitutional reapportionment which would alter this fact. That the present state apportionment plan for the consolidated district of Lakeview/Barton is an unconstitutional violation of the Federal Voting Rights Act of 1965, as amended.

187.    That ACA 16-123-107(a)(5) sub-section of the general Arkansas Civil Right Acts of 1993 provide that the right to vote and *participate fully* in the political process is inviolate.

188.    That Plaintiff would not have an opportunity to participate fully in the political processes of the Barton School District when those processes are "set-in-stone" and there is an organize political philosophy at work to make sure that Plaintiffs as African-American voters do not effect the manner in which their students are educated in the consolidated district. See Exhibit 5, supra.

189.    That the Barton School District is the "***white flight school district***" of Phillips County, and in accords with Ex 5, Plaintiffs desires relating to their children educational opportunities and needs have been totally ignored by the Barton School District Board of Directors as will be more specifically set out below.

190.    That the Barton School District has more Caucasian voters participating in school board elections than any and all of the other four school districts in this County collectively.

191.    That white citizens have not only abandoned the school system of Helena-West Helena in particularly, they have physically moved from Helena and West Helena in order to escape the necessity of attending school in the Helena-West Helena school system where African-American are a majority. (The same could be said also for the Elaine and Marvell School Districts to a lesser degree).

192.    That white students as far away as Monroe County into the community of Holly Grove, Clarendon, and in Lee County in the communities of Rondo, Moro, Marianna, etc. send their children to school as a part of their county or community's *"white flight"* to the Barton School District.

193.    That under the undisputed factual situations of paragraphs of 176 through 190, there is absolutely no possibilities that the Plaintiffs could meaningfully participate in the political processes of the Barton School District.

194.    That as a result of the lack of political input into the Barton School District selection of school board officials, Plaintiffs have no input in the determination of who will be superintendent, administrator, or teacher over their children in the Barton school system nor will they have any said influence if Act 60 is not enjoined permanently.

195.    That the Plaintiffs children will be subject to the hostility of a *"white flight"* school district in which the Superintendent, administrator, staff, and school board has grown in population because of the adoption of a philosophy that at Barton High School white students **will be subject to only minimal contact with African-American teachers and no contact with African-American administrators**.

196.    That there is no present constitutional, educational, emotional, or psychological need for Plaintiffs children to attend school with white children under any situation, and certainly not under a forced situation for them to feel "equal or non-inferior" in order to receive equality of educational opportunities.

197.    **That if the construction of *Brown v. Board* requires all Arkansas African-American schools districts be destroyed and African-Americans as the Plaintiffs**

**herein required to always bare the brunt of enforcement of United States Constitutional rights, then *Brown v. Board* is outdated and its constitutionality under present day circumstances and the circumstances of this lawsuit is challenged.**

198.    That the Plaintiffs under the mandated Amendment 60 would have no input into the school books and other teaching materials made available to their children, nor would they have any input in the vital areas of the creation of students' disciplinary rules, the process for recognizing academic excellence, the determination of needs of special need children within the present Lakeview School District, etc. and African-American cultural will be eliminated from the embraces of African-American students in the educational processes of Arkansas, specifically in the consolidated district structure challenged by this action.

199.    That the dilution of the Plaintiffs votes as per the mandates of Act 60 completely destroys their ability to have any input in the determination of who will be in charge of the public educational development of the minds of their children. Students attending Lakeview School District old campus in the school year 2004 have already been denied summer school classes, needed tutorial programs, physical ed classes, music classes, along with a general cut-back in educational services of all types.

200.    That it is already established that the white citizens and the white students for the most part of Barton School District are there because they escaped or "flighted" from school district in which African-American teachers, administrators, etc. had

input in the development of the very things mentioned in paragraphs 198 and 199, evidencing an educationally hostile environment to Plaintiffs children.

## THIRD CAUSE OF ACTION:

## Act 60 is Unconstitutionally Vague and Overbroad

201.    That Plaintiffs incorporate allegations 1-200 by reference.

202.    That Plaintiffs contend based upon the facts enumerated hereinabove that the history both factual and legally of the State's Defendants is one in which racial discrimination against African-Americans has been not only the custom but both *de jure* and *de facto* realities affecting Plaintiffs constitutional rights aforementioned and Plaintiffs children educational opportunities.

203.    That Act 60 is touted by the State's Defendants as being an answer to adequacy and equity requirement of the Arkansas Supreme Court decision in *Lakeview v. Huckabee, supra.*

204.    That the negative effects of Act 60 on the Plaintiffs as an *identifiable protected class* member requires this court to fully scrutinized and fully examine Act 60 and the entire Arkansas scheme of public finance, determining its constitutionality.

205.    That Act 60 while purporting to address adequacy and equity makes no mention of adequacy and equity within the four corners of the statute except in its preamble. There is nothing in the body of the Act itself addresses equity or adequacy nor does it defines same in any manner.

206.     That the obvious purpose of Act 60 is to destroy Plaintiffs school district and the other African-American school district to the extent that African-American have no control of the education of their children any place in the State of Arkansas.

207.     That Act 60, has an overbroad unconstitutional arch that would: (a) destroy African-Americans interest in pursuing an educational career because of the instant example of the demolition of African-American influence in the state educational apparatus; (b) destroy African-Americans hopes of ever becoming superintendents, principals, deans, head counselors, etc. over school districts within the State of Arkansas; (c) destroy African-Americans ability to effectuate policies that would effect their children education within the State of Arkansas; (d) destroy a cultural legacy of education in the African-American communities in this State that stretches back beyond slavery in the United States into an age when person of African descent taught the world.

208.     That while the preamble to Act 60 purports that the State of Arkansas has the "absolute duty to provide equal educational opportunity", the Act itself is absolutely void of any relationship between those stated goals and implementation.

209.     That Act 60 adversely affects the rights of the Plaintiffs as African-Americans in the Lakeview School District and as members of a protected class not tolerated by the United States Constitution 14th and 15th Amendment.  Act 60 must be constitutionally reviewed under the standard of *strict scrutiny*.

210.     That it is contended by the Plaintiffs that the purpose of Act 60 is racially discriminatory and specifically directed against the Plaintiffs as citizens in the

Lakeview School District and other similar situation African-American citizens especially nearby Holly Grove School District.

211.    That racial discrimination is to be determined not only by the wording and "stated" intent of Act 60 but also by the *results* of its implementation.

212.    That the *result* of Act 60 is the destruction of the Plaintiffs school district which is hereinabove described as an African-American district, along with almost all other African-American School Districts and Plaintiffs federal voting rights.

213.    That in addition to its vagueness on the subject matter it purports to embrace the statute itself is invidious, arbitrary, unreasonable, and repugnant to U.S. Constitutional standards and the standards of the Arkansas Constitution as illustrated in Article 2, Section 2, 3 and 18, stating no *rational basis or compelling State interest.*

214.    That the Arkansas Constitution Article 2, Section 2, 3, and 18 prohibits an inequitable application of the law and legal displays of privileges to particular persons or institutions that operates under Arkansas law.

215.    That there is only one type of school district under Arkansas law i.e. all school districts are created equal.

216.    That Act 60 creates a privileged class of school district whose numbers are above three hundred fifty in population in violation of equal protection clause division of the Arkansas Constitution, Section 14th et seq. of the Arkansas Constitution and the equal protection and due process clause of the United States Constitution.

217.    That no empirical or quantitative proof exist that students are receiving less educational opportunities in school district with less than three hundred fifty students or there is likewise no quantitative or empirical proof that student in school district above three hundred fifty in population receives a better education in the State of Arkansas, especially African-American children. (The line between lesser or more educational opportunities for Arkansas students is indistinguishable, since all received a product that is unconstitutional.

218.    That the absolute proof is that no children in the State of Arkansas in either below three hundred fifty or above three hundred fifty student population is receiving a constitutionally approved education within the State of Arkansas as per the findings of *Lakeview v Huckabee, supra,* from 1992-2004.

219.    That the original expert witnesses called by the State of Arkansas in the development of policies, which led to Act 60, did recommend consolidation and by the State's admission, consolidation is based on political consideration not educational consideration.

220.    That the decision of Judge Annabelle Imber Clinton in her similar 1994 opinion refuted the idea that consolidation was a constitutional remedy to inequity and adequacy within the system. See attached Exhibit 3 at Pg 39, Paragraph 127

221.    That Act 60 afforded the Plaintiffs through their representative in Lakeview ten minutes of *due process review* before the Defendants State Board of Education to *contest* their consolidation, but as a matter of fact there was no *due process* because the regulations created by the Defendants State School Board mandated that there

will be consolidatión after the so-called *due process* hearing regardless of what was presented.

222.    That Act 60 in one broad sweep destroys the equal protection right of the Plaintiffs i.e. (a) the right to not be racially discriminated or have their school district destroyed simply because they brought a lawsuit that caused the State difficulties; (b)that their voting rights under the 1965 federal Voting Right Acts as amended; (c) not suffer the destruction of their due process right as indicative of the *hearing and review process* established by the Defendants State Board of Education; and (d)  in one fail-swoop the destruction of their property, taxation, voting and contractual rights as Plaintiffs, taxpayers and friends of the Lakeview School District as opposed to the protection provided other Arkansas citizens..

## FOURTH CAUSE OF ACTION

### Act 60 Is Violates Constitutional Prohibition Against Illegal Exaction And Taxation Without Representation

223.    That Plaintiffs incorporates allegations 1-222 by reference.

224.    That Article 16 Section 13 of the Arkansas Constitutional prohibited illegal exaction which is disregarded by the State Defendants in its consolidation efforts: (a) Act 60 for the State of Arkansas to usurp the taxes of the Plaintiffs and other citizens of the State of Arkansas; (b) that after having taken control of the Plaintiffs taxes Act 60 transfers those taxes to a *entity* that was not the authority which approved the placement of the tax measurement before the citizens of Lakeview; (c) and then Act 60 allows this *stranger* to the tax process which engendered the revenues of the

Plaintiffs school district to take control and spend those funds in any manner they desired without consent of the Plaintiffs/taxpayers.

225.    That the millages passed by the Plaintiffs as part of the Lakeview School District was approved specifically for the purpose of support of the Lakeview School District as an **independent and viable entity**.

226.    That the taxes passed by the Plaintiffs and paid by the Plaintiffs into the Lakeview School District was for the purpose of satisfying financial and fiscal obligation of the Lakeview School District No. 25, Inc. of Phillips County.

227.    That the taxes, millages, etc. passed by the Plaintiffs in support of the Lakeview School District No. 25, Inc. of Phillips County are exclusively under Arkansas law for that use and that use only.

228.    That any other use of the tax monies engender by millages passed for the Lakeview School District, Inc. other than for the specific purpose for in which they passed said millages is an illegal exaction and is constitutional prohibited Arkansas Constitution 1864, Article 16, Section 13.

229.    That the Plaintiff had excess local tax revenue in their school district coffers as of July 1st 2004 and these funds by authority of Act 60 has been *seized* and *given* to another entity not contemplated which the citizen of the Lakeview School District approved the raising of same funds though approval of millages.

230.    That the usurpation of the tax monies of the people of Lakeview is African-Americans for the purpose of allowing a predominantly white board at Barton to spend same is a violation of the Fourteenth Amendment to the United States Constitution and is therefore prohibited.

231.    That the Plaintiffs under Act 60 would be required to assume and pay tax measures passed by the citizens of Barton School District without the opportunity to vote on approval of same, *automatically under the mandates of Act 60*.

232.    That the citizens of Lakeview would be subject to the assumption of Barton School District's debts without consent or as a result of the "forced consent" implicit in a vote on same with the population of the Lakeview School District juxtaposed against the population of the old Barton School District.

233.    That the citizens and Plaintiffs of Lakeview are now subject to taxation and indebtness (Barton's) without consent under Act 60.

234.    That the Plaintiffs and citizens of Lakeview would be subject to the ultimate duel political and legal insult: "taxation without representation" and "taxation without consent".

235.    That taxation without consent is abhorrent to the United States Constitution Fourteenth Amendment and the whole theory that government in the United States is based upon the consent of the people.

236.    That both Act 60's implementation of taxation and indebtness on the Plaintiffs without their consent and the utilization of taxes Plaintiffs contracted to pay by consent to the Lakeview School District for other purposes is an *unconstitutional taking*. See 5th Amendment U. S. Constitution.

237.    That in order for this Court to uphold constitutionality of Act 60 there will be a constitutional demand that this Court release the Plaintiffs and the taxpayers of Lakeview from any obligations to pay taxes in either the old Lakeview School District or the new consolidated school district.

238.     That Act 60 breaches the *social contract* between the Plaintiffs, and other taxpayers of Lakeview, Arkansas and the Lakeview School District, No. 25, Inc. of Phillips County.

239.     That any use of any portion of taxation from the Lakeview School District's property owners that was available to the Lakeview School District, Inc. prior to July 1, 2004 by any other entity is a violation of the 5th Amendment to the United States Constitution; likewise , the forced subjugation of the Lakeview School District to taxation by the consolidated Barton School District is equally a violation of the 5th Amendment of the United States Constitution, 14th Amendment Equal Protection Clause, the 1964 Civil Rights Acts as amended, 42 U.S.C. 1981, 42 U.S.C. 1982, 42 U.S.C. 1983, and Federal Voting Right of 1965 as amended.  The combined violations of instant aforementioned constitutional and statutory provisions represents unlawful *taking* of Plaintiffs properties and assets.

## FIFTH CAUSE OF ACTION

## Act 60 Deprives Plaintiffs Of Equal Proctection Under Federal Law

240.     That Plaintiffs incorporate allegations 1-239 by reference.

241.     That the Plaintiffs are a *protected class* or *identifiable class* under the United States Constitution, 14th Amend.; that state defendants have a historical and present record of violation of the Plaintiffs rights as an protected and identifiable class through its purpose for disregard for the authority and sovereignty of the United States Constitution.

242.    That because of their race Plaintiffs are recognized under the United States Constitution as an identifiable protected class, also, Plaintiffs are recognized under the ruling of *Lakeview v. Huckabee* as an identifiable unconstitutional protected class of persons living within a "poor school district" under Arkansas Constitutional law.

243.    That the equal protection clause of the Fourteen Amendment United States Constitution protects against violation of deprivation of rights by the State Defendants activated by the passage of Act 60 and State defendants implementation powers through Act 60 which they deem to grant them the power to destroy Plaintiffs school district ability to exist, while approving the continued existence of other school districts in the State with no better educational product and who are not meeting the constitutional educational needs of the students therein.

244.    Plaintiffs contend that **education is a fundamental right** under both the United States and Arkansas Constitution.  This Court must determine under the present societal pressures the accepted educational prerequisites for success within this society, the competitive nature of the global market whether any ruling of the federal court opposite this contention is no longer viable.   That the Plaintiffs are acutely aware of the ruling of the court in *San Antonio v. Rodriguez* and contends that that ruling is outdated by subsequent federal judicial decisions in relating specific to racial discrimination in the utilization of certain federal programs (1964 Civil Rights Act, Title VI) and said ruling is antiquated in this modern age of technology advancement in which education is an **absolute must** in the global market.

245.    That the Arkansas Supreme Court recognizes education as an *absolute right* in *Lakeview v. Huckabee.*

246.     That the Plaintiffs contend that there is no difference between the *absolute right* and the *fundamental right* under the construction of the United States Constitution, U. S. 14th Amend..

247.     Plaintiffs contend that Act 60, Act 59, and all other statutory educational enactment presently operative requires review under the *strict scrutiny* test; the trial court in *Lakeview v. Huckabee* review the statutory enactments between 1994 and 2000 under the *strict scrutiny* analysis. (He found however that review of Arkansas scheme of public school funding failed under any standard of constitutional review).

248.     That the correct and accepted standard of review of the constitutionality of Act 60 will require this court to apply *strict scrutiny*; if *strict scrutiny* in not applied then this court should utilize an *intermediate scrutiny* test.

249.     That absence the court utilizing of *strict scrutiny* or the *intermediate scrutiny test*, Act 60 should be constructed and review constitutionally based upon the *rational basis* test.

250.     That according to the Arkansas Supreme Court in the continuing litigation of *Lakeview v Clinton/Tucker/Huckabee* all of the legislation passed by the State of Arkansas regarding educational financing equal educational opportunities between 1983 and 2002 failed even the *rational basis* test.

**251.     That Act 60 bares no *rational basis* to the State's obligation to provide equity and adequacy and does engage race as the controlling factor in the consolidation processes.**

252.     That, at the least Act 60, within its four corners does not illustrate or illuminate how it has a relationship to providing adequacy and equity in education.

253.     That there is no *rational-basis* between the increase of school population on any given campus and the providing of accelerated educational opportunities; the use of race as the guiding instrumentality is constitutional prohibited because there is no relationship between racial discrimination of the Plaintiffs or Plaintiffs school district and  a *compelling* state interest.

254.     That, in fact, *all* of the literature on the subject of education reform and on the subject or providing for particular needs and interest of individual students champions for a reduction of the size of campus population and the size of classroom population.

255.     That, again,  the State of Arkansas as provided by Act 60, as it has been historically positioned on racial matters, is now running headlong against the lessons of accepted educational research.

256.     That the State of Arkansas in *Lakeview v Huckabee*, supra, created a *protective class* and an *identifiable class* of citizens in the State of Arkansas who were living within "*poor districts*" and Plaintiffs status corresponds to that designation.

257.     That this Federal Court is therefore obligated to recognize Plaintiffs as an *identifiable protective class* of citizens of "poor school districts" and give them United States Constitutional protection. Fourteenth Amendment United States Constitution; 1964 Civil Right Acts as amended

258.     That the Arkansas Supreme Court in *Lakeview v Huckabee* found that the identified "poor school district" had been discriminated against by the State Defendants in receipt of educational finance both equitably and adequately.

259.     That the Plaintiffs contend that adequacy and equity can only be achieved under the mandates of the Arkansas Supreme Court by the elimination of all local taxes or local millages and that the Fourteenth Amendment so requires.  That Amendment 74 constitutionally violates the equal protection clause of the U.S. Constitution facially and as a result of the construction of its violation the Arkansas trial court. (See Cir. Judge Collin Kilgore final order in *Lakeview v. Huckabee, supra.)*

260.     That Act 60 bares no rational relationship to equity of revenue or adequacy of services, equipment, facilities, etc. to the students of Lakeview.

261.     That Lakeview School District physical facility on its campus is comparable to the physical facilities in Barton School District.

262.     That there is absolutely no rational relationship between consolidation of school districts requiring African-American children to be bused over extensive periods of time, over extended highways and rural roads, requiring African-American students at Lakeview to become involve in the racially hostile atmosphere of Barton School District and to suffer the insult that their school was not good enough for white students to attend but Barton School District with its predominantly white population is well and sufficient for African-American students to attend.

263.     That there is no rational relationship between Act 60 and the ruling of *Brown v. Board I* and *Brown v. Board II.*

264.     That Plaintiffs contend *Brown v. Board* does not require the destruction of traditional African-American educational sites or African-American parental input

and voter input into the educational system in which their children are involved in order for equal protection of the Fourteenth Amendment to be satisfied.

265.     That Plaintiffs contend *Brown v. Board* does not require the total destruction of African-American school and the culture of African-American educational involvement and productivity; nor does any portion of the United States Constitution Plaintiffs claims, require the elimination of Plaintiffs traditional African-American school along with its history, emblems, traditions, and status in the community so that the   State of Arkansas can pay for both the United States Constitutional violations pled herein and their own admitted violations of the equal protection and educational clauses of the Arkansas Constitution of 1874.

266.     That the United States Constitution in numerous articles and amendments prohibits the States' Defendants deprivation of Plaintiffs *fundamental right*, and Plaintiffs have been deprived not only of *fundamental right* educationally, but the *fundamental right* of freedom of speech i.e. Plaintiffs have been denied a voice in the legislative development of policies that effect their children. 1 and 14 Amends. U. S. Const.

267.     That the Plaintiffs contend that the citizens of Lakeview have a fundamental right to be heard after *prevailing* in the lawsuit of *Lakeview v Huckabee*  before the passage of any remedial legislation which was to be a remedy to their success in the funding case.  That the Plaintiffs nor any member of the Lakeview school board or any citizens at Lakeview was allowed to make presentation to State defendants in the development of the present educational policy after the Arkansas Supreme Court decision in *Lakeview v. Huckabee, supra*. That Plaintiffs as part of the *corpus* of the

prevailing party through state action were prevented from citizenship involvement or prevailing party involvement in the establishment of a remedy as a consequence of their victory in *Lakeview v. Huckabee* and consequently although Lakeview prevailed in the legal action its prayer for relief which should have been a consequence of its prevailing party status was denied by the actions of the State in its passage and implementation of Act 60.

268.    That the Fourteenth Amendment of the United States Constitution prohibits against discrimination by the State enactments of laws that adversely affect a protected class in a racially discriminatory manner, except under *compelling State interest* principles.

269.    That Act 60 not only adversely affects the citizens of Lakeview's ability to maintain their school district and create the educational product that they desire their children within that district receive, it in fact, destroys that ability completely in a racially discriminatory manner without the presence of any *rational educational basis* or otherwise *compelling state interest*.

270.    That the Barton School District a predominantly white student populated school system has a total white administration and is not affected by Act 60 in the manner in which Plaintiffs as members of the community of Lakeview are so adversely affected.

271.    That the State of Arkansas has provided Plaintiffs/Lakeview historically a *minimalist education finance structure* for the development of educational opportunities over the period of Lakeview School District existence and Plaintiffs contend that it has a constitutional protected right after *prevailing* in *Lakeview v*

*Huckabee* to be equally preserved as any school district in this State that is predominantly white and above three hundred fifty in population.

272.    That it is contended that because Act 60 infringes upon (a) Plaintiffs' rights of having their children treated with constitutional equality of education; (b) rights of Plaintiffs to maintain input in their children educational training; (c) Plaintiffs' right to not have their children bused over long periods and long distances of time to satisfy the whims of the State Defendants; (d) Plaintiffs' right to not suffer retaliatory State action through the enactment of laws that directly effect Lakeview School District in a manner that is leading to its destruction; (e) Plaintiffs' right to not have its tax monies usurp; (f) Plaintiffs' right to not have their tax monies spent in a manner in which it was not originally agreed prior to the approval of the tax measure; and  (g) Plaintiffs' right to not have Lakeview School District certified class of teachers, administrators and students subject to the determination of their rights both contractual and educationally by strangers in another district or by the State defendants or the person that the State defendants has appointed, approved or designated for that purpose all counter to Plaintiffs federally protected rights as set out herein above.

## SIXTH CAUSE OF ACTION:

## Specific Violation of Title VI Civil Right Act of 1964

273.    That Plaintiffs incorporates allegations 1-272 by reference.

274.    That the Title VI of the Civil Rights Act of 1994 prohibits federal fund recipients from discriminating on the basis of race, color, and national origin.

275.    That the State of Arkansas it is contended has discriminated in the distribution of federal funding to the Lakeview School District since 1964 on the basis of race.

276.    That it is further contended that the amount of discriminatory federal funding easily provable from state records in the areas of monies for: special education, gifted and talented, advanced educational class development, funding for students with specific developmental and special education problems and requirements, funding of Lakeview School District with equipment relevant to the needs of special talent student population requirements within said district, etc.

277.    That the Plaintiffs request that this court upon proof order the State of Arkansas from its own treasury reimburse Plaintiffs/Lakeview School District, Inc. in such an amount that would compensate for the defrauding of them by the State Defendants over the terms of these years in violation of Title VI.

## SEVENTH CAUSE OF ACTION

## Plaintiffs Unconstitutionally Denied by Act 59 and Act 60 Prevailing Parties Status

278.    That Plaintiffs incorporates allegations 1-277 by reference.

279.    That Plaintiffs contend based upon the facts enumerated hereinabove that the history both factual and legally of the State's Defendants is one in which racial discrimination against African-Americans has been not only the custom but both *de jure* and *de facto* realities.

280.     That the Plaintiffs as members of the Lakeview School District that *prevail*

against the State of Arkansas in *Lakeview v. Huckabee* and as citizens who supported

the district efforts in their lawsuit are the *prevailing* party.

281.     That Plaintiffs contend it is violation of due process and equal protection of

the United States Constitution for the State of Arkansas to be allowed through Act 60

to retaliate against the Plaintiffs and Lakeview School District generally or passing

Act 60 in order to destroy them after they had *prevail.* 5th and 1 4th Amendments to

the United States Constitution.

282.     That the Plaintiffs contend that in order for *due process* and *equal protection*

of the Fourteenth Amendment to be satisfied that they as part of the *prevailing* party

in *Lakeview v. Huckabee* must receive from the State Defendants a remedy that is *fair*

*and beneficial* to them in accordance with their original State complaint, pray for

relief.

283.     That it is contrary to *due process* for the *prevailing* party to suffer destruction

at the hands of the party over which they have *prevailed* as a remedy.

284.     That the State of Arkansas through the passage of Act 60 determines its own

sanctions of violation of the Plaintiffs rights as citizens of Lakeview in the case of

*Lakeview v Huckabee, supra*; determining that while they are culpable for those

violations it is agreeable with the constitutional doctrine of equal protection and due

process that Lakeview as a *prevailing party* pay the price of remediation rather than

the State of Arkansas.  Plaintiffs disagree with this extraordinary conception of

constitutional law and the doctrine of "where there is a right there is a remedy". The

state defendants conception that it can punish Lakeview by closing as a result of its

winning the aforementioned school funding lawsuit is a concept of fairness that may
be appropriate to places, mentalities, and values that rules or ruled the former USSR,
Communist China, North Korea, Afghanistan, Iraq, and Iran.

285.     That it is the contention of Plaintiffs that the United States Constitutional due
process and equal protection provision prohibited the State of Arkansas from the
passage of Act 60 and further prohibits it from enforcing Act 60 which in effect
destroys the existence of Plaintiffs district/Lakeview School District as a remedy for
their efforts over a fifteen year period of litigation to bring about development of a
system of adequate and equitable educational finance in which they would benefit
and be preserved.

286.     That the purpose of the Plaintiffs bringing the Lakeview School District and
the Lakeview School District board of directors participating in same as filed in 1992
was not to win a victory for the State defendants but to prevail for the Lakeview
School District and its patrons; that the State defendants through its *capricious,*
*unreasonable,* and *arbitrary* use of State power has by the passage of the punitive
acts aforementioned snatched victory from its defeat in the Lakeview School funding
case which Plaintiffs contends is constitutionally prohibited, using the State
methodology above described.

287.     That it is obvious that if Plaintiffs/Lakeview had lost the lawsuit in 1994 then
there would be no consolidation, because there would not be one change in the
manner in which Arkansas was financing the educational of its public school children
as of the 1994 date. The Plaintiffs/Lakeview School District would have stayed in
their predicament of 1992 and the rest of the State of Arkansas school districts would

have remained the same. That many of the school districts in the State of Arkansas who took no role in the Lakeview funding case have benefited and prospered at the expense of Lakeview while Lakeview has received no constitutional remedy for its violation even though it carried the complete burden of the lawsuit against the State of Arkansas and Plaintiffs contends that it should not bare the total burden of this state's required conformity to U. S. and state constitutional law nor should it be the sole responsibility and role of the African-American community effort to see that the State of Arkansas and America conforms to equal protection of the law at home while triumphing this doctrine world-wide.

288.    That it is further obvious that Lakeview School District and the Plaintiffs herein did not endure the abused heaped upon them for filing the *Lakeview v. Clinton/Tucker/Huckabee* lawsuit in order to be victimized by the defeated State Defendants upon *prevailing*.

289.    It is further absolutely abhorrent to fair play and due process for the Lakeview School District to be allowed through Act 60 to be destroyed for being on the *prevailing* party side of the litigation of the school funding case is why the State acting wrongly, illegally, unconstitutionally, and in bad faith between 1994 and 2000 suffers no cost, no adjustment in the manner in which it conduct educational policies within the State of Arkansas, and is allowed to escape any legal, financial, social, or political sanctions for its previous wrong doings.

## EIGHTH CAUSE OF ACTION

## Act 59 is Unconstitutional Per Se and in its Implementation

290.     That Plaintiffs incorporate allegations 1-289 by reference.

291.     That Act 59 ostensively was passed by the Legislative in the Second Extraordinary Session of 2003 for the purpose of funding students in various economic categories.

292.     That Act 59 originally promised as much as fourteen hundred dollars per students who were in schools that were ninety percent or more poverty stricken as defined by those students who were eligible for participation in free lunch programs; consolidation of districts has altered these funding provisions in a constitutional inequitable and legally unacceptable manner.

293.     That because of the consolidation action of the State under Act 59; poverty stricken students are now being integrated in some instances with schools that does not have ninety percent free lunch eligibility and as a consequence the amount of money being made available to the poor students is being reduced. That Act 59 monies are being utilized in the richer districts to enhance their teachers' salaries among other things; while in poor districts there is a severe restriction under the determination of the State Defendants Board of Education as to their uses not comparable to their utilizations in richer districts.

294.     That as a consequence of the implementation of Act 59 it is now contended by the Plaintiff that it is an unconstitutional violation of equal protection and a federal misuse and violation of the use of federal funding for free lunch programs and a Title VI violation of racially discriminatory use of federal funds and federal funding criterions.

# NINTH CAUSE OF ACTION

## Injunctive Relief

295.     That Plaintiffs incorporate allegations 1-294 by reference.

296.     That Act 60 is mandated to effectuate changes in the school system in the State of Arkansas as of July 1, 2004.

297.     That as a result of changes in the pattern of school system the State of Arkansas as per Act 60 on July 1, 2004 Lakeview School District technically ceased to exist functionally and operationally; however, Lakeview School District, Inc. an educational incorporation is still viable under Arkansas law.

298.     That all of Lakeview's School District properties inclusive of all of Lakeview's liquidated assets, inclusive of all Lakeview's real properties, all of Lakeview's personal properties, has been unconstitutional taken from them and given to another by the implementation of Act 60. (5th Amend. U.S. Const.)

299.     That if Act 60 is allowed to continue its effectuation the Plaintiffs/Lakeview School District has/will suffer the usurpation of local tax millages on account in Phillips County bank by the State of Arkansas through Act 60.

300.     That the State of Arkansas has taken the local revenues of the Plaintiffs payment of local millage and utilized them for a purpose not comtemplated or approved at the instant of their passage and continues presently the converging of these monies by third parties representing a  continuously irreparable harm to Plaintiffs constitutional and property rights.  That the destruction of the status quo at this court by injunctive relief must return the Plaintiffs to the status quo they enjoyed prior to July 1, 2004; there is no adequate remedy at law available to the Plaintiffs.

301.    There has been an extreme cut-back on educational services at the Lakeview School District facilities since consolidation that are effectuating irreparable harm to its students.

302.    That summer school has already been totally disrupted by Act 60 proceedings and those children at Lakeview who needed summer school received absolutely no summer school.

303.    That the destruction of franchise rights of the Plaintiffs and other African-Americans within the Lakeview School District area regarding the electoral process is causing and will continue to cause irreparable harm to the voting rights of the Plaintiffs and the ability of Plaintiffs to secure effective elected representation to deal with the educational concerns of their children and themselves as parents.  That the statutory destruction of the electoral process and the *office* of Lakeview School District director constitute a palpable element of the irreparable harm sought to be enjoined.

304.    That the Plaintiffs/Lakeview School District, Inc. and its students have suffered as aforementioned (1) a tremendous reduction in services at the present Lakeview School campus as a result of the implementation of Act 60, (2) the usurpation of the contractual rights of the Lakeview School District, Inc. and the Plaintiffs as patrons therein to exercise their 1st Amendment contractual rights under the United States Constitution and the 14th Amend. to the United States Constitution which applies specifically to persons of African dissent vis-a-vis contractual and property rights; (3) the right to have provided enhanced summer educational programs and enhanced regular school programs such as advanced computer

technology, physical education class, music instructions, off campus travel, and other like educational enhancement service; the attempted abolition of the public offices of the Lakeview School District board of directors; the interference with the corporate right of the Lakeview School District No. 5, Inc. of Phillips County, Arkansas, all of these causing continuous and present irreparable harm requiring injunctive relief.

305.     That the Plaintiffs would pray that the Court grant temporary injunctive relief upon proper application and filing of a separate plea with accompanying brief; and eventually issue an injunction permanently enjoining the enforcement of Act 60.

## TENTH CAUSE OF ACTION

### Plaintiffs Request a Declaration of Rights and Declaratory Relief

306.     That Plaintiffs incorporate allegations 1-305 by reference.

307.     That the Plaintiffs will ask that the court grant declaratory relief by a construction of the rights of the Plaintiffs vis-a-vis all of the alleged violation of those rights herein stated above.

308.     That a request for declaratory judgment is proper to construct and interpret State Constitutional enactment and State statutory provisions in federal court to determine their constitutionality under federal law.

309.     That Plaintiffs contend that Article Fourteen et.seq. of the Arkansas Constitution, Amendment Forty, Amendment Fifty-nine, Amendment Seventy-four are all **unconstitutional** violations of the 1st , 5th, 14th, Amendment to the United States Constitution if: (a) they require that in order for the State of Arkansas to satisfy the requirements of treating the Plaintiffs with equality under the law, these laws require the present closing of the Plaintiffs school district and the eventual closing of

73

every traditional African-American school district in this State thus ending any prominent role of African- American in the educational system of this State; (b) they require Plaintiffs to pay taxes in a district that they do not support; (c) they allow the State to take Plaintiffs local tax monies agreed through a social contract with the Lakeview School District for its support and maintenance and Lakeview's School District support and maintenance only; and (d) they give to Barton School District arbitrary and capricious condemnation rights without due process (Barton has indicated that it will close the Lakeview campus within the next year thus ruining any value of the Lakeview School District properties) and allows Barton or the State Defendant to take through some *quasi eminent domain* process the properties of the citizens of Lakeview commonly known as the Lakeview School District; (e) they allowed the State to suspend the franchise rights of Plaintiffs and muzzle rights to participate in the political discourse which affects the development of state laws and policies applicable to their children; and (f) they provide a means for the State Defendants to interfere with the ability of the citizens of Lakeview to vote for persons of their choice, to sit in governess of the school board in which their children attend, then Act 60 authorities  as set-out above are unconstitutional violation of the First, Fifth, Fourteenth and Fifteenth Amendment of the United States Constitution and should be so declared.

310.     That State statutes are subject to United States Constitution construction or are to be constructed under *strict scrutiny* review when the rights of persons such as the Plaintiffs who are in both an identifiable class utilizing race and poverty are subject to interference by State action.

311.    That the Court would further declare that the State of Arkansas owes the Lakeview School District adequate and equitable, constitutional funding from 1938 to present under the requirements of 14th, 5th Amend U. S. Const. the Civil Rights Act of 1964, specially Title VI thereof and the requirements of Arkansas equal protection article and educational clause.

312.    `That the pray for relief in regards to an award of funding from 1938 to present is based upon the premise that no statue of limitation has ran on these claims.

313.    That the actions of the State of Arkansas has been contentious i.e. that the State of Arkansas has formulated the same policies year after year after year after year on a continuous basis; that each legislative session since late 1930's have had an  unconstitutional effect on the Plaintiffs and the Lakeview School District educational funding.

314.    That in effect the legislative acts regarding the funding of the Lakeview School District from the late 30's to present initiated by Plaintiffs have been lineal and symmetric acts of racial discrimination.

315.    That the State Defendants depends heavily upon local taxation or millage for the financial support of the present State public school system and that Plaintiffs contends to rely on local taxation creates an unconstitutional inequity in the funding of public schools within the State of Arkansas; that the financial resources and therefore affecting the educational opportunities available to any given student in Arkansas, in the past and presently depends upon the happenstance of where a child resides i.e. a poor district or a rich district; that Plaintiffs contends that a system of

public school finance based upon this circumstance or happenstance is unconstitutional per se.

316.    That the amount of local revenues received by individual school district depends upon the valuation of taxable properties within that district; that excess local revenues available to any given school district after state turn backs requirement of Amendment 74 to the state constitution; that in combination Amendment 40, 59, and 74 allows those districts with high local tax property evaluation and excess local revenues to embellish their particular school district as oppose to those funds that are available in poor school districts to an extent of unconstitutional inequity and inadequacy.

317.    That property values are unequal from district to district resulting in financial support to the various local school district that is unequal. That Arkansas Constitution Amendment 40, 69, and 74 was the constitutional vehicles for the maintenance of the unequal finance structure which no longer can be constitutional justified under the Fourteenth Amendment to the United States Constitutional or 42 U.S.C. 1983. Each aforementioned Amendments to the Arkansas Constitution should be declared offensive and volatile of the 5th , 14th Amend of U. S. Const.; 1964 Civil Right Acts, as amended.

318.    That the conduct of the State of Arkansas, named State Defendants, and their predecessors in office at all times relevant to the Plaintiffs causes of action have been willful, wanton, coercive, purposeful, and intimidatory, Plaintiffs prays for appropriate compensation for said conduct. ACA 116-123-107 et. seq; ACA 116-

123-108; Fourteenth Amendment United States Constitution; Fifteenth Amendment United States Constitution; 42 U.S.C. 1983; 42 U.S.C. 1988.

## ELEVENTH CAUSE OF ACTION

### Violation of Separation of Power's Doctrine

319.   That Plaintiffs incorporate allegations 1-318 by reference.

320.   That the Lakeview School District was not only a functional institutional it is in fact a legal recognize corporate body.

321.   That Act 60 unconstitutionally attempted to dissolve a legally established corporate body.

322.   That the hearing held by the defendants State school board, a part of the executive branch for the purpose of providing "due process" to Plaintiffs and Plaintiffs school district was also a judicial function.

323.   That the determination of whether or not a school district should be consolidated, annexed, or merged as it is contended by Plaintiffs a judicial act.

324.   That the actions of the State Defendant school board constitutes a violation of its executive authority by attempting to act as a judicial body and establish a judicial result, i.e. ordering school consolidation, school closing, confiscation of personal properties and the eminent domain *taking* of real property.

325.    That the whole concept of school consolidation which has been previous determined by either the expression of the voters in any given district or by *judicial fiat* is violated by Act 60 and it is contended that Act 60 is unconstitutional on these grounds also.

THEREFORE, the Plaintiffs pray for the following specific relief:

(a)    That the court declare present system of public funding of schools of the State of Arkansas and its methods of evaluations of students competent  are violations of the United States Constitution's First, Fifth, Fourteenth, and Fifteenth Amendments inclusively and the various federal statutes aforementioned;

(b)    That the court order the State of Arkansas to recompense the Plaintiffs/Lakeview School District, Inc. an amount of funding that during those years would have equated to the average funding level of white school districts/white students within the state;

( c)    That the court find that the Lakeview School District, Inc. property is not held in trust for the State of Arkansas and is the private assets of the Lakeview School District, Inc.; not subject to forced consolidation or seizure absent due process;

(d)    That the Court finds that Act 60 in all respects unconstitutionally overbroad, violates the equal protection and due process clause of the 14th Amendment, violates Plaintiffs right of franchise as guaranteed by the 15th Amendment of the United States Constitution, violates 42 U.S.C. 1991, 42 U.S.C. 1992, 42 U.S.C. 1993; violation of Fifth Amendment to the United States Constitution;

violates 1st Amendment right of political right of assembly, and to participate in public policy discourse affecting them; violates the 1st Amendment United States Constitution prohibition against the interference with contractual rights of the Plaintiffs/Lakeview School District, Inc. That Act 60 is also abhorrent to the equal protection clause of the United States of the Arkansas Constitution of 1874, and violates Article 14 et. seq. and violates Article 16 Section 13 thereof;

(e)     That alternatively, that the Court finds that Article 14 of the Arkansas Constitution does not require the Plaintiffs suffer the close of their school in order to satisfy the requirements of the corrective actions that State of Arkansas employed to develop a "constitutional system" of public school finance and constitutional educational policies, but if Article 14 of Arkansas Constitution so prescribed it is a constitutional affront to the Fourteenth Amendment of the United States Constitution Plaintiffs contends;

(f)     That the Court would declare the Arkansas method of financing schools through property tax is inherently unequal and a violation of the Fourteen Amendment to the United States Constitutional;

(g)     That the Court would declare Amendment Seventy-four of the Arkansas Constitution in its operational effect, violates the equal protection rights of the Plaintiffs as guaranteed by the 14th Amend U.S. Const. and is therefore unconstitutional;

(h)     That the Court would declare that the Plaintiffs have a right to educate their children without the necessity of being bused over extended areas and placed

in a hostile environment that would not be favorable to their educational or mental and physical well being;

(i)     That the Court would order a permanent enjoinment of Act 60;

(j)     That the Court would find that Act 59 is inherently unconstitutional in that it allows predominately white district that are property rich to use those funds for the purpose of increase payment for their teachers salaries, while denying poor districts particularly Plaintiffs children teachers increase in salary, thereby, nurturing the unconstitutional inequity of teachers salaries foisted by the state defendants;

(k)     That the Court would find that Act 59 is unconstitutional because it distributes money based upon an inequitable and non-educational related basis and its method of distribution violates the prohibited use of racial discriminatory considerations in the distribution of federal funds pursuant to the 1964 Civil Rights Act, as amended, Title VI;

(l)     That the Court would find ACA 6-26-1602 et.seq. to be an unconstitutional act of retaliation by the State of Arkansas against the Plaintiffs and the school district in which the Plaintiffs live; that the court would further find that ACA 6-26-1602 ét seq as an unconstitutional disparate impact upon predominantly African-American school districts or poor school districts that are not predominantly African-American; that ACA 6-26-1602 et seq was particularly unconstitutional in its *disparate impact* upon Plaintiffs and the Lakeview School District, Inc. from its passage and implementation to present;

(m)   That the Court would find that Act 60 is unconstitutional because it has no rational basis;

(n)   That the Court would find that Plaintiffs as prevailing parties in *Lakeview v. Huckabee* was entitled to a remedy which secured their original prayer for relief and that the State was obligated to fashion a remedy, absence Court order that reflect the prevailing party status; that the State violated the equal protection and due process clause of the United States Constitution by fashioning a remedy that punished the Plaitniffs because of race for filing the original school funding lawsuit and prevailing therein.

(o)   That the Court would find that consolidation/the destruction of the Plaintiffs school district is not a reflection of prevailing party status in *Lakeview v. Huckabee*; that the court would find that the punitive actions of the state illustrated by the closing of the Lakeview School District through passage of Act 60 puts an unconstitutional chill on the Plaintiffs and the Plaintiffs school district accessibility to court and unconstitutional discourages Plaintiffs in other like situated parties from utilizing the court system for the purpose of adjudication of their rights under law;

(p)   That the Court would further find that Act 60 implementation will and does subject the Plaintiffs and their children to racial discriminatory consequences visited upon African-American citizens of this state during the 1950's, 60's, and 70's when court ordered desegregation was in vogue; that the plecthora of federal court cases during this period evidenced the disastrous effect upon African-American students, teachers, parents, taxpayers, administrators, etc.

was the consequence of the destruction of African-Americans institution of learning; Act 60 implementation imposes a continuation of this same sad destructed contention of the state that of race is superiority of white institutions, white personnel, and white students;

(q)    That the Court would find that as a matter-of-fact and of legal precedent that this State has a history of racial discrimination both in the areas of educational opportunities, voting rights, property rights, taxation rights of persons of color and that the State of Arkansas through its implementation of *Lakeview v Huckabee* continues that process;

( r )    That the Court would find that history is prologue;

(s)    That the Court would find that the consolidation process implemented by the Defendant State Board of Education was riffed with unconstitutional racial consideration;

(t)    That the Court would find that there is absolutely no educational rationale for the passage of Act 60;

(u)    That the State has no rational basis, scientifically supported related to improvements in education through the implementation of Act 60; the same has been implemented with racial consideration as the *guiding* and *predominant* feature in violation of the 14th and 15th Amend U. S. Const.;

(v)    That the Court would find that there has been no scientific educational studies that would justify consolidation as a means of reducing excess educational cost; that this Court will find that the State of Arkansas' Constitution requires it to prioritize spending in the State of Arkansas with

education as it primary focus and it has failed to do so, injuring Plaintiffs fundamental right of access to same;

(w)     That the Court would order the State to initiate immediately a study to determine Plaintiffs students ward and custodians financial requirements for meeting of their educational needs, inclusive in said study would be the requirement that state defendants provided the Plaintiffs their children, ward, custodians, etc., a constitutional definition of equity and adequacy within the structure of constitutional requirements;

(x)     That additionally, the court would order the state in said educational study to provide infinitely the cost of educating children in various category inclusive of physically handicapped children, mentally challenged children, children of average intelligence, children with various types of gifts and talents from educational to musical, etc.; determine whether federal funding is being expended by the State in accordance with federal requirement;

(y)     That the Court upon establishing that under both Arkansas and federal law education is a fundamental right which requires federal protection or as an exclusive federal entitlement that education is a fundamental right; that this court would order the funding of the Plaintiffs school district in a manner that maintains its individual integrity and allows it to operate and perform at least once in its existence under a constitutionally sanctioned system of public funding and academic standards;

(z)     That the Court would find that there is absolutely no relationship between consolidation of schools and providing an efficiency, adequate, and free

public education to the Plaintiffs or any other children in the State of Arkansas and the State use of these reasoning are a pretext to mask the racial implications of Act 60;

(aa)   That the Court would order the State to pay, by the establishment of a monetary fund, compensation to Plaintiffs as representatives of the Lakeview School District or the Lakeview School District, Inc. directly, recompensing them for the inequity and inadequacy in State funding between 1992 and 2002 that is owed to the Plaintiffs as prevailing parties, since during that period the State did nothing to correct the constitutional deficiency found in Judge Imber 1994 Order;

(bb)   That the Court finds that the Plaintiffs be recompensed in school funding for the years their school districts suffered under a declared unconstitutional system between 2000 and the termination of the instant lawsuit, fortifying, that the State had willfully and wantonly maintained said system in spite of the finds of the state court in *Lakeview v. Huckabee*;

(cc)   That the Court would find that Plaintiffs have established a history of constitutional violation by the State that is continuous;

(dd)   That the Court would find that there are no statute of limitation prohibition against the Plaintiffs request for compensation for constitutional violation from 1938 through present for themselves as Plaintiffs in the instant lawsuit and as representatives/citizens of the Lakeview School District, Inc.;

(ee)   That the Court would find that the Plaintiffs has standing to request funds as Friends of the Lakeview School District or members of the *corpus* of the

Lakeview School District, Inc. to compensate that district and its citizens for the past and present racial and economical discrimination of the State Defendants;

(ff)    That the Court would find that the State is obligated to pay the Lakeview School District and its citizens compensation for its discriminatory action and conduct against the Plaintiffs, their predecessors, and the Lakeview School District, Inc. from 1938 to present in an amount that would equal to the average funding of white school districts or white students during this extended period of time;

(gg)    That Plaintiffs, on behalf of the Lakeview School District and its students, are entitled to be compensated by the State of Arkansas for the difference between the amount that was paid to them per student and the difference in the amount paid to white school students on average from 1938 to present and the amount paid to Lakeview School District;

(hh)    That the Plaintiffs on behalf of the Lakeview School District, Inc. are entitled to be paid unconstitutional deficit in funding from 1964 to 2002 via the 1964 Civil Right Act, as amended, and that Lakeview School District, Inc. is still a viable corporation.

(ii)    That the Lakeview School District is entitled to interest on the deficient funding award commensurate with the appropriate rate;

(jj)    That the State of Arkansas be order to return to control of the Plaintiffs or Lakeview School District, Inc., all of their properties inclusive of real, personal, and liquidated assets seized by the authority of Act 60; that the State

be ordered to re-license the Lakeview School District to operate at a functional center of educational advancements for the citizens and students within that district; that the State of Arkansas be order to reapportion the land mass and the student body population of Phillips County to conform with its configuration prior to the acts of aforementioned the Phillips County school board in the early 1970's which sliced the Lakeview School District operational and population area by two-thirds.

(kk)    That the Lakeview School District/Plaintiffs is further entitled to an award of attorney fees and cost and all other relief that the Court deems appropriate under the authority of the appropriate Federal and State constitutional and statutory provision.

(ll)    That all Arkansas constitutional amendments supported of the present system of public schools education are unconstitutional either on their face or in their operational effects; declare that the testing of Plaintiffs children and other African-American children under state present assessment policies are unconstitutional, declare that creation of academic and physical distress standards by the state are and were unconstitutional because of the state's defendants simultaneous operated a unconstitutional system for public school education inclusive of public school finance, and declare that the destruction of the Plaintiffs school district and the busing of its students to the Barton School District is unconstitutional, there being no educational advantage, social advantage or constitutional requirement of Plaintiffs.

WHEREFORE, the Plaintiffs pray that the Court will (1) allow an amendment to the present petition where necessary; (2) grant temporary and permanent injunctive relief; (3) expedite a setting of a hearing on Motion for Temporary Injunctive Relief/Permanent Injunctive Relief; (4) stay any further execution of Act 60; (5) stay the State's ability to usurp the Lakeview School District's assets of any kind; (6) grant relief as appropriate for the damages to the corporate structure and integrity of the Lakeview School District, Inc.; (7) expedite discovery process; and (8) a setting of this matter in the Federal District Court of Helena, Arkansas on its merit; and grant other relief as the court deems necessary.

Respectfully submitted,

J. L. WILSON
Attorney for Plaintiffs

J. L. WILSON
521-523 Plaza
West Helena, AR 72390
Phone (870) 572-1533

UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

# Exhibits Attached to Original Document in Courts's Case File