UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
HELENA DIVISION

FRIENDS OF THE LAKEVIEW SCHOOL DISTRICT
INCORPORATION NO. 25 OF PHILLIPS COUNTY, et al.                    PLAINTIFFS

v.                                        No.  2:04CV184 GH

MIKE HUCKABEE in his official capacity, as Governor
Of the State of Arkansas                                          DEFENDANTS

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

The former Lake View School District No. 25 of Phillips County, Arkansas ("Lake View") was the plaintiff in long-running state-court litigation challenging the constitutionality (under state and federal law) of Arkansas' public school system.  *See generally Lake View School District No. 25 of Phillips County, Arkansas v. Huckabee*, 351 Ark. 31, 91 S.W.3d 472 (2002), *rehearing denied* (December 19, 2002), *cert. denied sub nom Wilson v. Huckabee*, 538 U.S. ___ (2003).   During the course of the litigation, Lake View sought, and the trial court granted, a motion certifying the litigation as a class action.  *Id.*, 351 Ark. at 31.   The plaintiff class included "all public school districts in the State of Arkansas;, all students and parents of students in all public school districts in the State of Arkansas; all members of the Board of Directors of all public school districts in the State of Arkansas; and all taxpayers, regardless of residence or domicile, who have paid taxes which were levied for the purpose of supporting public schools in the State of Arkansas."  A copy of the trial court's order certifying the case as a class action is attached hereto as Exhibit A.

In response to the Arkansas Supreme Court's 2002 decision, the 84th Arkansas General Assembly passed a number of education reform measures during its 2003 Regular and Second Extraordinary Sessions.

Among other things, the General Assembly passed Act 60 of 2003 (Second Extra. Sess.). A copy of Act 60 is attached as Exhibit 2 to the Complaint. Act 60 required the Arkansas Department of Education to compile a "consolidation list," of all public school districts in the State that served less than 350 students according to a district's average daily membership in each of the preceding two school years. Act 60, § 3, codified as Ark. Code Ann. § 6-13-1602(a). School districts on the "consolidation list" may voluntarily agree to administratively consolidate with or be annexed to another school district or districts, subject to the approval of the State Board of Education. School districts on the "consolidation list" that do not petition the State Board to voluntarily annex to or consolidate with another school district or districts, or whose petition for such a voluntary consolidation or annexation is not approved by the State Board of Education, "shall be administratively consolidated by the state board with or into one (1) or more school districts by June 1, to be effective the July 1 immediately following the publication" of the "consolidation list." School districts on the "consolidation list" must be administratively consolidated in such a manner as to create a resulting district with an average daily student membership of at least 350.

The Department of Education thereafter published a list of 57 public school districts subject to administrative consolidation or annexation under Act 60. Most, but not all, of the affected school districts submitted petitions to the State Board of Education asking it to approve their voluntary administrative annexation to or consolidation with one or more other school districts. With a few exceptions, the State Board of Education approved the petitions during

April and May of 2004.  Lake View was one of the few school districts that did not submit a petition for voluntary administrative consolidation with or annexation to one of more school districts to the State Board by the April 1, 2004 deadline set forth in Act 60.  Accordingly, pursuant to Act 60, the State Board issued an order on May 28, 2004, which administratively consolidated Lake View with the Barton-Lexa School District to create the new Barton-Lexa School District, effective July 1, 2004.  See Complaint, Exhibit 4A.

Also in response to the Arkansas Supreme Court's 2002 decision in *Lake View*, the General Assembly passed, and the Governor signed, Act 59 of 2003 (Second Extra. Sess.).  A copy of Act 59 is attached as Exhibit 1 to the Complaint.  Among other things, Act 59 established the major portion of the "funding formula" for public school districts for the 2004-2005 fiscal year.  In general, it provides that each school district is guaranteed at least $5400 per child as "foundation aid" to spend on the education of public school children.  In addition, it provides that school districts receive additional "categorical" state aid for certain students whose characteristics make them more difficult to educate, including students in alternative learning environments and secondary vocational area centers, students classified as "English language learners," and students who qualify for free or reduced-price school lunches.

However, because the General Assembly had not completed its work by the January 1, 2004 date referenced in the Supreme Court's 2002 *Lake View* decision, on January 2, 2004 Lake View filed with the Arkansas Supreme Court a "Motion for writ of prohibition, injunctive relief, escrow of public funds, and motion for contempt."  After briefing and argument, the Arkansas Supreme Court entered an order on January 22, 2004, withdrawing its mandate. *See Lake View School Dist. v. Huckabee*, 355 Ark. 617, 142 S.W.3d 643 (Jan. 22, 2004).  On February 3, 2004, the Supreme Court appointed two former Justices as Special Masters and tasked them with

preparing a report concerning the actions taken by the General Assembly and the Executive Branch to comply with the Supreme Court's 2002 opinion.

On April 2, 2004, after receiving evidence and briefing from the parties (including Lake View and the plaintiff class) and conducting hearings, the Special Masters issued their report. Thereafter, the Supreme Court permitted the parties to file objections to the report, permitted the parties to submit additional briefings, and heard oral argument on May 20, 2004.

On June 18, 2004, the Arkansas Supreme Court issued a supplemental opinion finding that the Acts passed by the 84th General Assembly during the 2003 Regular and Second Extraordinary Sessions, including Act 60, adequately addressed the Supreme Court's November, 2002, decision with respect to the constitutionality of the State's system of public education. See *Lake View School District No. 25 of Phillips County, Arkansas v. Huckabee*, ___ S.W.3d ___, 2004 WL 1406270 (June 18, 2004). The Court relinquished its jurisdiction over the case and the mandate issued. No party, including Lake View or any member of the plaintiff class, petitioned the United States Supreme Court for a writ of certiorari.

On October 25, 2004, well after the former Lake View School District ceased to exist, plaintiffs filed the Complaint in this action. The complaint names as defendants the State of Arkansas, the Governor, the Director of the Arkansas Department of Education, and the members of the Arkansas State Board of Education.[1] In the complaint the plaintiffs (a number of individuals who appear to call themselves collectively "Friends of the Lakeview [sic] School District Incorporation No. 25 of Phillips County") purport to state claims under various federal statutes, federal constitutional provisions, and state statutory and constitutional law. While the Complaint is lengthy (and even within various separate "causes of action" there are mixed

---

[1] The Governor, the Director, and the members of the State Board are named defendants in their "official" capacities only.

references to both federal and state law), the gravamen of the complaint appears to be plaintiffs' challenge to Acts 59 and 60 and the State Board's consolidation of the former Lake View school district into the Barton-Lexa school district pursuant to Act 60.  They claim that Acts 59 and 60 violate the Voting Rights Act, 42 U.S.C. § 1973, et seq., the Fifth and Fourteenth Amendments of the United States Constitution (because "Plaintiffs as taxpayers will suffer an unconstitutional taking of their property rights,") the "illegal exaction" provisions (Article 16, Section 13) of the Arkansas Constitution, and the Arkansas Civil Rights Act.  Plaintiffs seek a myriad of relief, including a declaration that "the State of Arkansas owes the Lakeview [sic] School District adequate and equitable, constitutional funding from 1938 to present," a finding that "Plaintiffs as prevailing parties in *Lakeview* [sic] *v. Huckabee* was [sic] entitled to a remedy which secured their original prayer for relief and that the State was obligated to fashion a remedy, absence court order that reflect [sic] the prevailing party status;" and that the Court order the state to pay them "compensation . . . as representatives of the Lakeview School District or the Lakeview School District, Inc., directly, recompensing them for the inequity and inadequacy in State funding between 1992 and 2002 that is owed to the plaintiffs as prevailing parties."  Further, the plaintiffs seek an order "to return to control of the plaintiffs or Lakeview School District, Inc., all of their properties inclusive of real, personal, and liquidated assets seized by the authority of Act 60.

 For the reasons discussed below, plaintiffs' complaint should be dismissed in its entirety.

# ARGUMENT

I.   **Plaintiffs' Claims Based On Alleged Violations Of The Arkansas Constitution, The Arkansas Civil Rights Act, Or Other State Laws Are Barred By Sovereign Immunity**

The Complaint purports to seek relief against the defendants (the State and State officials sued in their "official" capacities only) based upon alleged violations of the Arkansas Constitution, the Arkansas Civil Rights Act, and/or other state laws.  These claims must be dismissed because they are barred by the doctrine of sovereign immunity. [2]

In *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984), the Supreme Court held that the doctrine of pendent jurisdiction (now called "supplemental jurisdiction") does not override or abrogate the states' sovereign immunity and that "[a] federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment."  *Id.* at 121.  The only defendants in this action are the State and State officials sued in their "official" capacities, so in essence the plaintiffs' claims are the equivalent of claims against the State itself.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity . . . is no different that a suit against the State itself."); *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985).  Claims against States (and state officials sued in their "official" capacities) for prospective, nonmonetary relief based on alleged violations of state law are clearly barred by sovereign immunity.  *Pennhurst, supra*, 465 U.S. at 104-10; *see also Dover Elevator Co. v. Arkansas State University*, 64 F.3d 442, 446-47 (8th Cir. 1995) (sovereign immunity bars state-law claims for damages and prospective relief

---

[2]   The doctrine of sovereign immunity, sometimes referred to as "Eleventh Amendment immunity," deprives federal courts of jurisdiction over suits against states and their agencies, boards, commissions and other "alter egos" of the State, unless the state has waived its immunity or Congress has abrogated that immunity pursuant to a valid exercise of Congressional power. *See, e.g., Seminole Tribe of Florida v. Florida*, 116 S.Ct. 1114, 1122-23 (1996).

against state agency and state officials sued in their "official" capacities); *Angela R. v. Clinton*, 999 F.2d 320, 325 (8th Cir. 1993) (sovereign immunity bars federal courts from granting relief against state officials in their "official" capacities for alleged violations of state law). Accordingly, an order dismissing all of the plaintiffs' state-law claims must be entered forthwith.

## II.   Plaintiffs' Section 1983 Claims Against The State Are Barred By Sovereign Immunity

Plaintiffs also purport to sue the State of Arkansas itself pursuant to 42 U.S.C. § 1983. Where, as here, suit is brought against the State itself, the jurisdictional bar of sovereign immunity applies "regardless of the nature of the relief sought." *Pennhurst,* 465 U.S. at 100; *Murphy v. State of Arkansas,* 127 F.3d 750, 754 (8th Cir. 1997). The State of Arkansas has not consented to suit in the federal courts, (*see Burk v. Beene,* 948 F.2d 489, 492-93 (8th Cir. 1991)) and Congress did not abrogate the states' sovereign immunity when it enacted 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police, supra,* 491 U.S. at 66-67. Accordingly, plaintiffs' claims against the State of Arkansas under 42 U.S.C. § 1983 must be dismissed in their entirety.

## III.   Plaintiffs' Section 1983 Claims Against The Governor Are Barred By Sovereign Immunity

Plaintiffs also purport to sue the Governor, in his "official" capacity, under § 1983. As noted earlier, an "official capacity" claim against a state official is the equivalent of a suit against the State itself, the State of Arkansas has not waived its sovereign immunity, and Congress did not abrogate the states' sovereign immunity when it enacted § 1983. Therefore, unless plaintiffs' claims against the Governor fall within some exception to the doctrine of sovereign immunity, the plaintiffs' § 1983 claims against him must be dismissed.

Plaintiffs will undoubtedly argue that sovereign immunity does not bar their claims against the Governor to the extent they have sued the Governor in his official capacity and the

plaintiffs seek only prospective declaratory and injunctive relief.   As is discussed below, however, such an "exception" to the doctrine of sovereign immunity is not applicable to plaintiffs' claims against the Governor.

Under the "fiction" articulated in *Ex parte Young,* 209 U.S. 123 (1908), certain official-capacity actions against state officials for prospective injunctive relief are not treated as actions against the State for sovereign immunity purposes.   However, the *Young* doctrine is not merely a rule of pleading designed to enable one to sidestep the doctrine of sovereign immunity.[3]   To be an appropriate defendant under *Young,* the state official sued must typically be one who has threatened to or is about to commence proceedings to enforce the allegedly unconstitutional statute or who has a "special relation" to the statute or is expressly directed to see to its enforcement:

> The various authorities we have referred to furnish ample justification for the assertion that individuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, *and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act,* violating the Federal Constitution, may be enjoined by a Federal court of equity from such action.

*Young,* at 155-56 (emphasis added).   Under the *Young* fiction, a suit against a state official can only be maintained if the state official sued has a "special relation" to the particular statute alleged to be unconstitutional, above and beyond the official's general duty to see that state laws are administered.   The Court made this clear in *Young.*   Quoting an earlier case, *Fitts v. McGhee,* 172 U.S. 516 (1899), the Court in *Young* stated as follows:

---

[3] *Cf. Idaho v. Coeur d'Alene Tribe of Idaho,* 138 L.Ed.2d 438, 448 (1997) ("To interpret *Young* to permit a federal-court action to proceed in every case where prospective declaratory and injunctive relief is sought against an officer, named in his individual capacity, would be to adhere to an empty formalism and to undermine the principle, reaffirmed just last Term . . . that [sovereign immunity] represents a real limitation on a federal court's federal-question jurisdiction.   The real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleading."). *Id.*

In the present case, as we have said, neither of the state officers named held any special relation to the particular statute alleged to be unconstitutional. They were not expressly directed to see to its enforcement. If, because they were law officers of the state, a case could be made for the purpose of testing the constitutionality of the statute, by an injunction suit brought against them, then the constitutionality of every act passed by the legislature could be tested by a suit against the governor and the attorney general, based upon the theory that the former, as the executive of the state, was, in a general sense, charged with the execution of all its laws, and the latter, as attorney general, might represent the state in litigation involving the enforcement of its statutes. That would be a very convenient way for obtaining a speedy judicial determination of questions of constitutional law which may be raised by individuals, but it is a mode which cannot be applied to the states of the Union consistently with the fundamental principle that they cannot, without their assent, be brought into any court at the suit of private persons.

*Young, supra*, 209 U.S. at 157.

Therefore, to fall within the *Young* exception to sovereign immunity, the plaintiffs must allege either that the Governor has "threaten[ed] and [is] about to commence proceedings . . . to enforce against parties affected an unconstitutional act," or that the Governor holds a "special relation to the particular statute alleged to be unconstitutional" or is "expressly directed to see to its enforcement." *See generally* Circuit Judge Jolley's plurality opinion on the issue of sovereign immunity in *Okpalobi v. Foster*, 244 F.3d 405, 410-416 (5th Cir. 2001) (en banc) (Jolley, Circuit Judge) (discussing history and subsequent application of *Young* fiction); *see also Children's Healthcare is a Legal Duty v. Det*ers, 92 F.3d 1412, 1415-16 (6th Cir. 1996), reh'g denied (Sept. 20, 1996), cert. denied, 519 U.S. 1149 (1997).

The Governor is plainly not a proper defendant under the *Young* fiction. The Governor did not sign Act 60 and, even if he did, he has no role in the consolidation or annexation of school districts under the Act. The enforcement and administration of the requirements of Act 60, and the distribution of funds under Act 59, are plainly entrusted to the Arkansas Department of Education and the State Board of Education, and not the Governor. Under Arkansas law, the Governor is the Chief Executive of the State, but he is not specifically charged with the

9

enforcement or administration of Act 60 or any Rules and Regulations promulgated by the State Board of Education to implement the Act. A Governor's duty to generally see to the administration of state law is insufficient to make the Governor a proper defendant under the *Young* fiction. *See, e.g., Waste Management Holdings, Inc. v. Gilmore*, 252 F.3d 316, 330-31 (4th Cir. 2001) (Governor not appropriate defendant under *Young* where, even though Governor is under general duty to enforce law as chief of executive branch, Governor had no specific, direct duty or role in enforcing challenged statutes); *Yakima Indian Nation v. Locke*, 176 F.3d 467, 469-70 (9th Cir. 1999) (claim for injunctive relief against Governor barred by sovereign immunity; Governor not proper defendant under *Young* when separate state agency, not the Governor, was charged with operating state lottery); *Rode v. Dellarciprete*, 845 F.2d 1195, 1208 (3d Cir. 1988) (Governor's general role in reviewing and approving regulations of all executive agencies insufficient to make him a proper defendant under *Young*); *Los Angeles Branch, NAACP v. Los Angeles Unified School District*, 714 F.2d 946, 953 (9th Cir. 1983), *cert. denied*, 467 U.S. 1209 (1984) (Governor's general duty to see that state laws are executed insufficient to make him an appropriate defendant under *Young*).[4]

---

[4] Plaintiffs may argue that the Governor is an appropriate defendant because he may have a future role in approving or vetoing legislation concerning school district consolidation. Such an argument would prove too much because if a Governor were a proper *Young* defendant merely by virtue of the fact that he approved (or might in the future approve) legislation, a Governor would be a proper defendant in any case challenging any state law. Such a theory is inconsistent with the Supreme Court's instruction that the *Young* doctrine is more than a mere pleading device and should be narrowly construed. Such a theory has also been rejected by the Courts of Appeal. *See, e.g., Rode v. Dellarciprete, supra*, 845 F.2d at 1208 (Governor's and Attorney General's role in reviewing and approving regulations of all executive agencies insufficient to make them proper defendants under *Young*). Moreover, to the extent plaintiffs might rely upon the Governor's role in approving legislation as the basis for their claims, their claims would be barred in any event by the doctrine of absolute legislative immunity. *See, e.g., Warden v. Pataki*, 35 F.Supp.2d 354, 358 (S.D.N.Y. 1999), aff'd sub nom *Chan v. Pataki*, 201 F.3d 430 (2d Cir. 1999) (Absolute legislative immunity bars actions against legislators or governor on the basis of their roles in enacting legislation).

Because the Governor is not a proper defendant under the *Young* fiction, and there is no other exception to sovereign immunity that applies to plaintiffs' claims against him, plaintiffs' section 1983 claims are plainly barred and they must be dismissed.

**IV.    Plaintiffs' Section 1983 Claims Against The Governor Present No Justiciable Case Or Controversy**

Under Article III of the United States Constitution, this Court may only exercise jurisdiction over suits which present a justiciable "case or controversy." Article III "is not an unconditioned authority to determine the constitutionality of legislative or executive acts." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982). Even if plaintiffs' § 1983 claims against the Governor were not barred by sovereign immunity, their claims must nonetheless be dismissed for lack of a justiciable case or controversy. See, e.g., *Okpalobi v. Foster*, supra, 244 F.3d at 425-429(5th Cir. 2001) (en banc) (plaintiffs could not establish the "causation" and "redressability" elements of the "case or controversy" requirement when Governor had no authority to enforce challenged statute); *Shell Oil Co. v. Noel*, 608 F.2d 208, 213 (1st Cir. 1979) (no "actual controversy" between plaintiff and Attorney General when there is no allegation or proof that Attorney General "ha[s] ever taken or threatened to take any action with respect to a state statute"); *Long v. Van de Kamp*, supra, 961 F.2d at 152 (no "case or controversy" between plaintiff and attorney general when there was no threat that attorney general would enforce allegedly unconstitutional statute).

**V.    The Plaintiffs Lack Standing To Assert Alleged Violations of the Voting Rights Act**

Under the prudential standing rules articulated by the Supreme Court, in addition to complying with the standards required by Article III of the Constitution, a litigant's complaint must fall "within the zone of interests protected by the law involved." *Allen v. Wright*, 468 U.S. 737, 751 (1984). In other words, to meet the "zone of interests" test, the Court must examine

whether "the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth v. Seldin*, 422 U.S. 490, 500 (1975).

Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, forbids states and political subdivisions from imposing voting qualifications, prerequisites to voting, or "standard[s], practice[s], or procedures . . . in any manner which results in the denial or abridgement of the right of any citizen of the United States to vote on account of race or color," 42 U.S.C. § 1973(a), or on account of membership in a "language minority group." 42 U.S.C. §§ 1973(a) and 1973b(f)(2). Originally, the Act only provided for enforcement by the Attorney General, but in *Allen v. State Board of Elections*, 393 U.S. 544 (1969), the Supreme Court held that the Act could be enforced by individual voters, and Congress later amended the Act to confer standing upon "aggrieved persons" to enforce the Act. See 42 U.S.C. § 1973a.

The Voting Rights Act was intended to protect racial and language-minority voters from practices that deny them the right to participate in the political process and elect representatives of their choice. The gravamen of the plaintiffs' complaint here, however, is that the consolidation of the former Lake View District with the Barton-Lexa School District will "dilute" their vote and hence leave them individually with less influence over the Board that will govern the newly-formed, larger school district than over the Board of the former, smaller Lake View district, and therefore will give them less control over how the new School District is governed. In essence, the plaintiffs do not allege that anything in Act 60 will result in their not being able to elect candidates of their choice because the plaintiffs are minority voters. Their complaint is that as voters in a larger and more populous school district, they will have less influence than they previously did over budgeting and other decisions made by the local school

board concerning educational policy. However, the general desire to preserve "local control" or to preserve the status quo of a political subdivision or community is not a concern that falls within the "zone of interests" the Voting Rights Act was intended to protect. Indeed, it is well-settled that Section 2 does not require local school boards to be elected *at all*, (*see, e.g., Mixon v. Ohio*, 193 F.3d 389 (6th Cir. 1999) (Voting Rights Act does not prohibit appointed, rather than elected, school board), *Moore v. School Reform Board of the City of Detroit*, 147 F.Supp. 679 (E.D. Mich. 2000), affirmed, 293 F.3d 352 (6th Cir. 2002), rehearing denied (August 9, 2002); see also *Sailors v. Kent Board of Education*, 387 U.S. 105, 110-11 (1967) (no constitutional impediment to appointing, rather than electing, officers of nonlegislative character)), and there is no "fundamental" constitutional or other right to maintain "local control" of school districts or to maintain or preserve the identity of a school district or a community. See *Mirrione v. Anderson*, 717 F.2d 743, 744, 746 (2d Cir. 1983) ("[N]either federal statutes nor the Constitution assures any voter that the portion of the community in which he lives will not be separated from the rest of his community and joined with neighboring areas in the formation of an election district. . . .[W]e have found no case that would make the observance of town lines or boundaries of unofficial communities a mandatory consideration under either the Voting Rights Act or the Constitution."). Indeed, the Supreme Court has long recognized "the extraordinarily wide latitude that States have in creating various types of political subdivisions and conferring authority upon them." *Holt Civic Club v. Tuscaloosa*, 439 U.S. 60, 71 (1978).

The individual plaintiffs do not allege that their alleged injury falls within the "zone of interests" the Voting Rights Act was intended to protect. Accordingly, none of the plaintiffs in this case have standing to assert a claim under the Voting Rights Act, and those claims must therefore be dismissed.

## VI.   The Complaint Fails To State A Claim Upon Which Relief Can Be Granted

In addition to the grounds set forth above, the complaint must be dismissed in its entirety because it fails to state a claim upon which relief can be granted.[5]

It is plain from the Complaint that the plaintiffs herein appear to assert "derivative" claims on behalf of the former Lake View School District, as if they may now "stand in the shoes" of a school district that no longer exists and assert its alleged "rights." This is evident from the numerous requests for relief in the Complaint to the effect that this Court return "property" and political integrity and existence to the former Lake View School District, and the general claim that the "destruction" of the former Lake View School District violates the federal constitution. It is black-letter law, however, that school districts, as political subdivisions of the State, cannot invoke the protection of the Fourteenth Amendment as against the State itself.

In *Delta Special School District No. 5 v. State Board of Education*, 745 F.2d 532 (8th Cir. 1984), a school district appealed from the denial of a preliminary injunction. The school district's underlying claim was that statutes governing student transfers which gave students, but not school districts, the right to appeal certain decisions violated the Due Process and Equal Protection clauses of the Fourteenth Amendment. On appeal, the Eighth Circuit affirmed. The Court held that school districts are political subdivisions of the State, and that, as such, they may not invoke the protection of the Fourteenth Amendment against the State itself. "The district court ruled correctly. A political subdivision of a state cannot invoke the protection of the fourteenth amendment against the state," *Id.* at 533 (citing *City of Trenton v. New Jersey*, 262 U.S. 182 (1923)). Here, because the former Lake View School District enjoyed no protection

---

[5] In this section defendants only discuss plaintiffs' purported § 1983 and Voting Rights Act claims. The supplemental state-law claims are plainly barred by sovereign immunity and need not be discussed here.

under the Fourteenth Amendment as against the State, the plaintiffs, to the extent they do seek to invoke the "rights" of the former school district, have not stated a claim upon which relief can be granted.[6]

## VII.    This Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Claims Under The Rooker-Feldman Doctrine Or, In The Alternative, Their Claims Are Barred By Res Judicata

In addition to the foregoing arguments, the complaint must also be dismissed because plaintiffs' claims are barred by either the Rooker-Feldman doctrine or principles of res judicata and collateral estoppel.  In *Prince v. Arkansas Board of Examiner in Psychology*, No. 03-3524 (Slip. Op.) (8th Cir. 2004), the Eighth Circuit recently summarized the Rooker-Feldman doctrine's jurisdictional bar:

> The *Rooker-Feldman* doctrine stands for the general principle that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction to review state court judicial decisions.  *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482-83 (1983);  *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923).  Such jurisdiction is vested only in the United States Supreme Court.  *Lemonds v. St. Louis County*, 222 F.3d 488, 492 (8th Cir. 2000).  The

_____

[6] Act 60 does not make distinctions based upon any constitutionally-suspect classification.  With respect to consolidations, it applies to all school districts with enrollments below 350, regardless of the racial or ethnic characteristics of the students who attend, the Board Members who govern, or the administrators who run the district.  Similarly, Act 60 makes no distinctions based upon the racial or ethnic characteristics of registered voters within any district.  As such, Act 60 need only be supported by any conceivable rational basis, *i.e.,* that its provisions are rationally related to a legitimate governmental purpose.  Act 60 was enacted as part of the State's response to the *Lake View* decision, and its purpose was to assist in the delivery of an adequate education in an "efficient" manner.  Clearly, it is a legitimate governmental purpose to see that public funds committed to public schools are spent in an "efficient" manner, and it is rational to conclude that school districts (each of which has its own school superintendent, central office, and school board) serving less than 350 children can more efficiently spend scarce public funds if those districts are consolidated into larger administrative units.

Furthermore, though the Court need not look beyond the face of the pleadings to decide this motion, it bears noting here that the vast majority of the 57 school districts affected this year by Act 60 had student populations that were all-white or nearly so.  Thus, any allegation that Act 60 was motivated by a desire to "punish" school districts with large minority populations would plainly be frivolous.

Rooker-Feldman doctrine bars both straightforward and indirect attempts by a plaintiff to "undermine state court decisions." *Id.* at 492. Litigants may not pursue federal claims with allegations that are inextricably intertwined with a state court decision. *See Feldman*, 460 U.S. at 486-87.

\* \* \*

Federal claims are inextricably intertwined with the state court judgment if they 'succeed[] only to the extent that the state court wrongly decided the issue before it.' *Lemonds*, 222 F.3d at 493 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring)). The claim, however, 'is not precluded if it is `separable from and collateral to the merits of the state-court judgment.' *Fielder v. Credit Acceptance Corp., 188 F.3d 1031, 1034 (8th Cir. 1999) (quoting Pennzoil, 481 U.S. at 21 (Brennan*, J., concurring)). The claim will also not be precluded if litigants do not have a "reasonable opportunity to raise their federal claims" before the state court. *Simes*, 354 F.3d at 829.

A claim does not undermine the state court judgment if it merely challenges the constitutionality of a legislative act by a rulemaking body, but if the litigant's interest in having the rule or regulation set aside 'is inseparable from his interest in upsetting a particular state court judgment based on that rule,' the challenge is no longer independent. *Lemonds*, 222 F.3d at 495. The type of relief the litigant seeks may indicate whether or not the claim is in fact a challenge to the rule or to the actual judgment in the party's case. *See Van Harken*, 103 F.3d at 1349. For example, the challenge may remain separable if the party seeks only a declaration that procedures are inadequate, but it will not be separable if the party seeks monetary damages for the application of a rule already challenged in state court.

"[T]he Rooker-Feldman doctrine extends beyond 'straightforward appeals . . . [to] more indirect attempts by federal plaintiffs to undermine state court decisions.' In other words, the state and federal claims need not be identical for the doctrine to apply." *Gisslen v. City of Crystal* 345 F.3d 624, 627 (8th Cir. 2003) (citing *Goetzman v. Agribank, FCB (In re Goetzman)*, 91 F.3d 1173, 1177 (8th Cir. 1996)).

As noted earlier, the former Lake View School District (and the plaintiffs in this case, who clearly were part of the plaintiff class certified in the *Lake View* case) were parties to the state-court litigation culminating in the Arkansas Supreme Court's appointment of Special Masters, the submission of the Special Masters' Report, and the Supreme Court's June 18, 2004

16

decision to relinquish jurisdiction over the case.  See *Lake View School District No. 25 of Phillips County, Arkansas v. Huckabee*, ___ S.W.3d ___, 2004 WL 1406270 (June 18, 2004).  It is plain from the Supreme Court's decision that all of the legislative acts passed after the Supreme Court's 2002 opinion were open for scrutiny and challenge to any party (including Acts 59 and 60), and it is also plain that Lake View (and the rest of the plaintiff class, which included the plaintiffs in this action) had a full and fair opportunity to, and in fact did, attack the validity of Acts 59 and 60 before the Special Masters and, again, before the Supreme Court.  The Court, however, did not grant Lake View or the class any relief with regard to those Acts, and dismissed the case, allowing the mandate to issue.

The present action is clearly "inextricably intertwined" with the issues presented in the *Lake View* litigation and is an indirect attempt to undermine the Arkansas Supreme Court's decision.  This much is made clear by the various requests in the Complaint for a declaration that the plaintiffs were deprived of a "proper" remedy as "prevailing parties" in the *Lake View* litigation, for orders declaring that Act 59 does not provide for an equitable or adequate educational system, and for monetary relief to compensate for years of alleged underfunding of the Lake View School District by the State.  Though plaintiffs might argue that their suit is independent of the issues raised and decided in the *Lake View* litigation, such argument is without merit.  Their challenge to Acts 59 and 60 is "inseparable from their interest in upsetting" the Supreme Court's decision in *Lake View,* particularly when the Court examines the relief they seek here.  Therefore, this Court lacks subject matter jurisdiction over plaintiffs' claims.

Even if the Rooker-Feldman doctrine did not deprive this Court of subject matter jurisdiction over plaintiffs' claims, their claims are nonetheless barred by res judicata.  "Principles of res judicata embodied in the Full Faith and Credit Act, 28 U.S.C. § 1738 (1982),

see also U.S. Const. art. 4, § 1, require federal courts to give preclusive effect to the judgments of state courts whenever the state court from which the judgment emerged would give such an effect." *Harmon Industries v. Browner*, 191 F.3d 894, 902 (8th Cir. 1999) (citing *Hickman v. Electronic Keyboarding, Inc.*, 741 F.3d 230, 232 (8th Cir. 1984)).

> Arkansas state courts recognize two types of preclusion:  claim preclusion and issue preclusion.  Claim preclusion, which is also known by the specific term res judicata, bars relitigation of a subsequent suit when '(1) the first suit resulted in a judgment on the merits; (2) the first suit was based upon proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action which was litigated or could have been litigated but was not; and (5) both suits involve the same parties or their privies.' *American Standard, Inc. v. Miller Eng'g, Inc.*, 299 Ark. 347, 772 S.W.2d 344, 346 (1989); *Bailey v. Harris Brake Fire Protection Dist.*, 287 Ark. 268, 697 S.W.2d 916, 917 (1985); *see also Toran v. Provident Life & Accident Ins. Co.*, 297 Ark. 415, 764 S.W.2d 40, 42 (1989).  Issue preclusion, also known as collateral estoppel, bars the relitigation of those matters directly and necessarily litigated in the previous action.  *Bailey*, 697 S.W.2d at 917; *Smith v. Roane*, 284 Ark. 568, 683 S.W.2d 935, 936 (1985); *see also Lovell v. Mixon*, 719 F.2d 1373, 1376 (8th Cir. 1983).

*Butler v. City of North Little Rock*, 980 F.2d 501 (8th Cir. 1992).  Here, as members of the plaintiff class in the *Lake View* case, the plaintiffs' current challenges to Acts 59 and 60 are barred.  Both *Lake View* and this action involve the same parties or their privies; *Lake View* recently terminated with a judgment on the merits; the Arkansas Supreme Court plainly had jurisdiction; the *Lake View* case was fully contested as between the plaintiffs and the State Defendants; and all of the federal issues presented in this Complaint either were raised (or, could have been raised) by *Lake View* and the plaintiff class when the Special Masters and, ultimately, the Arkansas Supreme Court ruled on the validity of the measures taken by the State to comply with the Supreme Court's 2002 decision, including the adoption of Acts 59 and 60.  This is particularly true with respect to those aspects of the Complaint in this action that blatantly ask this Court to enforce a "remedy" against the State that the state courts, and the Arkansas Supreme Court, refused to grant in the *Lake View* case.

For the foregoing reasons, defendants respectfully request that the Court dismiss the complaint in its entirety, that the Court award defendants their costs of suit and attorneys' fees, and that the Court grant defendants all such other and further relief to which defendants may be entitled.

Respectfully submitted,

MIKE BEEBE
Attorney General

By: _____

TIMOTHY G. GAUGER #95019
Senior Assistant Attorney General
323 Center Street, Suite 200
Little Rock, Arkansas 72201
(501) 682-2007

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I, Timothy G. Gauger, certify that on December 15, 2004, a copy of the foregoing document was served by first-class U.S. mail, postage-prepaid, on the following person(s):

J.L.Wilson
521-523 Plaza
West Helena, AR 72390

_____
Timothy G. Gauger

DIVISION: 6
BOOK: 64
PAGE: 595

FILED
WITH SUMMONS

IN THE CHANCERY COURT OF PULASKI COUNTY, ARKANSAS
SIXTH DIVISION 96 AUG 28 PH 2: 19

CAROLYN STALEY
CHANCERY CLERK
PULASKI COUNTY, ARKANSAS

LAKEVIEW SCHOOL DISTRICT NO. 25
OF PHILLIPS COUNTY, ARKANSAS, ET AL.

                                                **PLAINTIFFS**

VS.                             NO. 92-5318

MIKE HUCKABEE, GOVERNOR
OF THE STATE OF ARKANSAS, ET AL.

                                       **DEFENDANTS**

## <u>ORDER</u>

1.    Plaintiffs' motion to certify a class action is hereby granted and the Court makes the following findings:

(a)    The named plaintiffs are members of the class of school districts and persons affected by the actions and conduct of the defendants, as more particularly alleged in the Fourth Amended Complaint filed herein;

(b)    The class is defined as follows:  all public school districts in the State of Arkansas; all students and parents of students in all public school districts in the State of Arkansas; all members of the Board of Directors of all public school districts in the State of Arkansas; and all taxpayers, regardless of residence or domicile, who have paid taxes which were levied for the purpose of supporting the public schools in the State of Arkansas;

2.    Rule 23 of the Arkansas Rules of Civil Procedure establishes four basic requirements which the representative party must prove in order to sue or be sued on behalf of all classes.  Those requirements are numerosity, commonality, typicality, and fair and adequate representation.  Ark. R. Civ. P. 23(a).

3.    There are three hundred, more or less, school districts in the State of

**27**


EXHIBIT
A

Arkansas, which encompass tens of thousands of taxpayers who support same through local

millage and general tax revenues; there are tens of thousands of students, parents and patrons; and

joinder of all members will be impracticable.  Therefore, the numerosity requirements of Ark. R.

Civ. P. 23(a)(1) is satisfied.  <u>International Union Elec., Radio & Mach. Workers v. Hudson</u>, 295

Ark. 107, 118, 747 S.W.2d 81, 87 (1988).

      4.     Ark. R. Civ. P. 23(a)(2) requires that there be questions of law and fact

common to the class.  This is commonly referred to as the commonality requirement.  The Court

finds that the commonality requirement is satisfied in this cause by the circumstance that the

proposed class members have been affected by the method of financing the public school system

previously in effect, which system was declared by this Court to be unconstitutional in its order of

November 9, 1994; that the named plaintiffs claim that the same circumstances exist presently,

and therefore, all class members have in common the circumstances that evolve from the alleged

present unconstitutional system and will be affected by the consequences thereof if not remedied

or benefitted from the remediation of same; there is a community of interest by the proposed class

in the adjudication of the defendants' basic liabilities for any alleged wrongful or unconstitutional

acts surrounding public finance of the Arkansas school system.  Therefore, the Court finds that

the commonality requirement has been satisfied by the plaintiffs.

      5.     The Court finds that the requirement of Ark. R. Civ. P. 23(a)(3) that the

claims or defenses of the representative parties be typical of the claims or defenses of the class has

been satisfied.  In determining the test of typicality, the Court finds that typicality is determined by

whether a sufficient relationship exists between the injury to the named plaintiff and the conduct

affecting the class, so that the court may properly attribute a collective nature to the challenged

conduct; that a plaintiff's claim is typical if it arises from the same event or practice or

28

course of conduct that gives rise to the claim of the other class members; and if his or her claim is based on the same legal theory; that the constitutionality of the present financial structure of the public school system in the State of Arkansas is being challenged in the lawsuit herein, which satisfies the requirement of typicality, and the Court so finds.

6.    Ark. R. Civ. P. 23(a)(4) requires that the representative party fairly and adequately protects the interest of the proposed class.  The Court herein determines that the representative party has a sufficient interest and nexus with the class to ensure vigorous prosecution of this action.

7.    The Court finds that the questions of law and fact common to members of the proposed class predominate over any questions affecting only individual members.  Further, the Court finds that a class action is superior to other available methods for the fair and efficient adjudication of the controversy, in that a class action will prevent piecemeal litigation of the questions of law and fact common to the class.

8.    The Court further finds that the present plaintiffs and their attorneys have satisfied the following requirements:

(i)    Representative counsels are qualified and experienced and generally able to conduct the litigation;

(ii)    There is no evidence of collusion or conflicting interest between the representative party and the class;

(iii)    The representative class displays the necessary level of interest in the action, is familiar with the practice challenged, and has the ability to assist in decision-making as to the conduct of the litigation.

The history of the named plaintiffs in the case and their past participation along with their present

DIVISION: 6    PAGE: 598
BOOK: 64

counsels further satisfies the above requirements, and the Court so finds.

9.    Plaintiffs seek declaratory and injunctive relief.  They ask the Court to find that the current school funding formula is unconstitutional, to prohibit Defendant state officials from further implementing the formula, and to order a new funding formula into effect.  Any ruling by this Court will have class-wide effect.  Notice and the opportunity to be excluded from the class is not required in such cases pursuant to Rule 23(c).  Hamilton v. Villines, 323 Ark. 492 (1996).  However, for the protection of the members of the class and in furtherance of the fair conduct of this action, the class should have notice of the opportunity to intervene.

10.    The best notice practicable for the school districts will be to send written notice by certified mail, return receipt, to the superintendent for each school district in the State of Arkansas, commencing no later than August 30, 1996.  The best notice practicable to all other class members will be an advertisement of approximately one-quarter of a page in size notifying class members of this action.  The notice shall run on August 30, 1996 in the Arkansas Democrat-Gazette.  A copy of the approved Notice is attached hereto as Exhibit A.

ACCORDINGLY, under the provisions of Rule 23 of the Arkansas Rules of Civil Procedure, the Court FINDS AND CONCLUDES that the instant action shall be maintained and prosecuted as a class action by the above-named plaintiffs on behalf of themselves and all other persons similarly situated, and that notice be given as provided herein.

IT IS SO ORDERED.


_Annabelle Imber_
ANNABELLE CLINTON IMBER, CHANCELLOR

DATE: _8/28/96_

DIVISION: 6    PAGE: 599
BOOK: 64

APPROVED AS TO FORM:

_____
Tim Humphries, Counsel for Defendants

_____
Jimmie L. Wilson, Counsel for Plaintiffs

_____
Don Trimble, Counsel for Plaintiffs

_____
Roy C. Lewellen, Counsel for Plaintiffs

**31**

IN THE CHANCERY COURT OF PULASKI COUNTY, ARKANSAS

LAKEVIEW SCHOOL DISTRICT NO. 25
OF PHILLIPS COUNTY, ARKANSAS; MEMBERS
OF THE BOARD OF EDUCATION, J.L. WILSON,
PRESIDENT; ODELL DAVIS, JR., VICE PRESIDENT;
SIDNEY FITZHUGH, SR., MEMBER; IRMA
MOREHOUSE, SECRETARY; WILLIAM WARD,
MEMBER; VELMA LARKIN, MEMBER; GENORA
FRAZIER, MEMBER; AND LEON PHILLIPS, JR.,
SUPERINTENDENT                                              PLAINTIFFS

VS.                                    NO. 92-5318

MIKE HUCKABEE, GOVERNOR OF THE STATE OF
ARKANSAS; JIMMIE LOU FISHER LUMPKIN,
TREASURER OF THE STATE OF ARKANSAS;
REP. BOBBY HOGUE, SPEAKER OF THE ARKANSAS
HOUSE OF REPRESENTATIVES; STANLEY RUSS,
PRESIDENT PRO TEMPORE OF THE ARKANSAS
SENATE; ARKANSAS DEPARTMENT OF EDUCATION;
GENE WILHOIT, DIRECTOR OF THE ARKANSAS
DEPARTMENT OF EDUCATION; STATE BOARD OF
EDUCATION; JAMES McCLARTY, CHAIRMAN;
EDWIN B. ALDERSON, JR., MEMBER; CARL E.
BAGGETT, MEMBER; GARY BEASLEY, MEMBER;
MARTHA DIXON, MEMBER; WILLIAM B. FISHER,
MEMBER; JAMES WHITMORE, MEMBER; LUKE
GORDY, MEMBER; BETTY PICKETT, MEMBER;
ELAINE SCOTT, MEMBER; RICHARD SMITH,                        DEFENDANTS
MEMBER; SHERRY WALKER, MEMBER

---

## NOTICE

---

This Notice is given pursuant to Rule 23 of the Arkansas Rules of Civil Procedure and

pursuant to an Order of the Chancery Court of Pulaski County, Arkansas.  A lawsuit entitled,

Lakeview School District No. 25 of Phillips County, Arkansas; Members of the Board of

Education, J. L. Wilson, President; Odell Davis, Jr., Vice President; Sidney Fitzhugh, Sr.,

32

Member; Irma Morehouse, Secretary; William Ward, Member; Velma Larkin, Member; Genora Frazier, Member; and Leon Phillips, Jr., Superintendent vs. Mike Huckabee, Governor, of the State of Arkansas; Jimmie Lou Fisher Lumpkin, Treasurer of the State of Arkansas; Rep. Bobby Hogue, Speaker of the Arkansas House of Representatives; Stanley Russ, President Pro Tempore of the Arkansas Senate; Arkansas Department of Education; Gene Wilhoit, Director of the Arkansas Department of Education; State Board of Education; James McClarty, Chairman; Edwin B. Alderson, Jr., Member; Carl E. Baggett, Member; Gary Beasley, Member; Martha Dixon, Member; William B. Fisher, Member; James Whitmore, Member; Luke Gordy, Member; Betty Pickett, Member; Elaine Scott, Member; Richard Smith, Member;  Sherry Walker, Member is now pending in the Chancery Court of Pulaski County, Arkansas, Case No. 92-5318.

Plaintiffs allege that the public school funding system, as embodied by Act 917 of 1995, and other laws, violates the Arkansas Constitution.  Plaintiffs seek to permanently enjoin the Defendants from enforcing Act 916 and 917 and otherwise implementing the current public school funding system.

On August 28, 1996, the Chancery Court of Pulaski County, Arkansas directed and certified that this case proceed as a class action under the provisions of Rule 23 of the Arkansas Rules of Civil Procedure.  The class is defined as follows: all public school districts in the State of Arkansas; all students and parents of students of all public school districts in the State of Arkansas; all members of the Boards of Directors of all public school districts in the State of Arkansas; and all taxpayers, regardless of residence or domicile, who have paid taxes levied for the purpose of supporting the public schools in the State of Arkansas.

Notice is hereby given pursuant to the provisions of Rule 23(d) of the Arkansas Rules of Civil Procedure that:

1.      You may have the right to intervene to present claims in this action pursuant to Rule 24 of the Arkansas Rules of Civil Procedure. If you wish to intervene, you must file in writing a Motion to Intervene by 4:30 p.m. on September 30, 1996, with Mr. Steve Sipes, Pulaski County Chancery Clerk, Suite 110, Pulaski County Courthouse, 401 W. Markham, Little Rock, Arkansas 72201. A hearing will be held on all Motions to Intervene on September 30, 1996, at 4:30 p.m. in the Courtroom of the Honorable Annabelle Clinton Imber, Chancery and Probate Judge, Sixth Judicial District, Pulaski County Courthouse, 401 W. Markham, Suite 360, Little Rock, Arkansas 72201. All parties to this case must exchange the names of expert witnesses and information pursuant to Rule 26(b)(4)(A)(i) by October 1, 1996.

The discovery and dispositive motion deadline is October 18, 1996. A pre-trial hearing will be held on November 4, 1996 at 8:30 a.m. in Judge Imber's courtroom, and the parties shall exchange witness and exhibit lists on or before this date and provide a copy to the Court. The trial will be held November 12, 13, 14, 18, 19, 20 and 21 beginning at 8:30 a.m. each day.

2.      The final judgment entered in this case will include, and will be binding upon, all members of the class, whether or not the judgment is favorable to the Plaintiffs.

3.      The Plaintiffs are represented by Jimmie L. Wilson, Wilson and Associates, 801 Perry Street, Helena, Arkansas 72342; Roy C. Lewellen, Attorney at Law, P. O. Box 287, Marianna, Arkansas 72360; and Don Trimble, 1124 Martin Luther King Drive, Little Rock, Arkansas 72202. If you do not request intervention, the above-named attorneys for the Plaintiffs will represent your interests in this case.