UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
HELENA DIVISION

U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 3 1 2005

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

FRIENDS OF THE LAKEVIEW SCHOOL DISTRICT
INCORPORATION NO. 25 OF PHILLIPS COUNTY, et al.                    **PLAINTIFFS**

v.                                No.  2:04CV184 GH

MIKE HUCKABEE in his official capacity, as Governor
Of the State of Arkansas, et al.                                   **DEFENDANTS**

### DEFENDANTS' REPLY TO PLAINTIFFS'
### RESPONSE TO MOTION TO DISMISS

Plaintiffs' Complaint seeks to re-establish the now consolidated Lake View school district; they also complain that historically Lake View never received adequate state funding, that Lake View was a victim of historical racial discrimination, and that Act 60 of 2003 (Second Extr. Sess.) was enacted for the express purpose of eliminating all "historically African-American" schools.    The Complaint in this case seeks compensation for wrongs allegedly visited upon the former Lake View school district beginning with the date of its creation.  These are all claims that could have been litigated in the long-running Lake View school funding litigation in Arkansas state courts and for the most part these same claims were, in fact, litigated by the Lake View district in state court proceedings.  In addition, based on the facts alleged in the Complaint, the Defendants are immune from liability for the claims raised by the Plaintiffs. Furthermore, the Plaintiffs have failed to allege facts that would give them standing to bring these claims.

I.      **Plaintiffs' Claims Based On Alleged Violations Of The Arkansas Constitution, The Arkansas Civil Rights Act, Or Other State Laws Are Barred By Sovereign Immunity**

The Plaintiffs' claims that are based upon alleged violations of Arkansas State law are barred by sovereign immunity. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984). Despite the well-established parameters of sovereign immunity, Plaintiffs nonetheless assert that this Court may hear their state law claims for declaratory and injunctive relief on the theory that the holding in *Pennhurst* does not apply to claims for declaratory and injunctive relief. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984). This very argument, however, was considered and expressly rejected by the Court in *Pennhurst*. *Id.*, 465 U.S. at 106. The Plaintiffs also contend that they may bring their state law claims notwithstanding sovereign immunity under the doctrine of *Ex Parte Young*. But, as the courts have repeatedly held, *Ex Parte Young* permits prospective injunctive relief only in very limited circumstances arising from violations of the U.S. Constitution. *Ex Parte Young*, 209 U.S. 123 (1908). ("state officials may be sued in their official capacities for prospective injunctive relief when the plaintiff alleges that the officials are acting in violation of the Constitution or federal law."); *Missouri Child Care Association v. Cross*, 294 F.3d 1034, 1037 (8th Cir. 2002); see also *Green v. Mansour*, 474 U.S. 64, 68 (1985). As the Supreme Court made clear in *Pennhurst* and as the Eighth Circuit has repeatedly recognized, the fiction of *Ex Parte Young*, which permits in limited circumstances a suit against a State official in his official capacity despite the Eleventh Amendment immunity of the State itself, does not apply to state law claims against states or state officials. *Entergy, Arkansas v. State of Nebraska*, 210 F.3d 887 (8th Cir. 2000) ("violations of state law cannot be enjoined by a federal court under *Ex Parte Young*, see *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 106 (1984)). The case of *Almond Hill School v. U.S. Department of*

2

*Agriculture*, 768 F.2d 1030 (9th Cir. 1985), cited by the Plaintiffs as purported support for federal court jurisdiction under *Ex Parte Young* over state law claims, actually involved only *federal* claims against state officials and no state law claims.

Plaintiffs also claim that this Court may exercise jurisdiction over their state law claims under principles of pendent jurisdiction. Again, this very argument has been specifically rejected by the Supreme Court. *Pennhurst*, 465 U.S. at 120.

Four additional cases are cited by the Plaintiffs for the proposition that this Court may award monetary relief against State Defendants on state law claims. In fact, none of the cited cases supports that proposition at all. *Hutto v. Finney*, 436 U.S. 678 (1978), for example, holds only that in an instance of bad faith may attorneys' fees be awarded in an action for injunctive relief based on federal law. Similarly, *Larson v. Shelby County*, 211 F.3d 331 (6th Cir. 2000), also involved an award of attorneys' fees and declaratory relief in a suit based on federal law. The Court in *Clark v. Bernard*, 108 U.S. 436 (1883), simply found a waiver of immunity by the state on the facts of that case. Finally, the case of *Thiokol Corp. v. Department of Treasury*, 987 F.2d 376 (6th Cir. 1993), confirmed that the district court did not have jurisdiction to determine a tax refund claim against a state based on the application and interpretation of federal law.

It appears that the Plaintiffs also claim the Defendants have waived their Eleventh Amendment immunity to suit in U.S. District Court. The Complaint, however, pleads no facts demonstrating that any Defendant has waived this immunity, and there are none. As the Court observed in *Pennhurst*, a state's waiver of Eleventh Amendment immunity must be "unequivocally expressed." *Pennhurst*, 465 U.S. at 99. Obviously, these Defendants' involuntary participation in state court proceedings maintained by the Lake View district in no way expressed intent to relinquish their immunity to suit in U.S. District Court.

## II. Plaintiffs' Section 1983 Claims Against The State Are Barred By Sovereign Immunity

It is black letter law that a state is not a "person" within the meaning of 42 U.S.C. § 1983, and that a suit against a state official in his or her official capacity is the equivalent of a suit against the state. *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989). The Plaintiffs do not dispute this.

The Plaintiffs claim instead that they are entitled to assert § 1983 claims against the State so long as they seek only prospective injunctive relief. No authority is cited for this proposition, and the Defendants are aware of none. It is clear from the authority previously cited by the Defendants that the Eleventh Amendment bars *all* such claims against the State. The Defendants agree, of course, that under certain specific circumstances the Court may have jurisdiction to issue prospective injunctive relief against state officials in their official capacities – but not against the State.

The Complaint itself belies Plaintiffs' argument that they request only declaratory or prospective injunctive relief against the State. Of the 13 subparagraphs of the *ad damnum* clause seeking a specific remedy, seven ask for monetary damages against the State, and two seek retrospective relief, such as the reformation of the Lake View district and return of "its" assets. The overarching purpose of the Complaint is to reach back in time to restore the Lake View district and to obtain monetary judgments against the State. These are remedies that are unavailable as a matter of law, and for which the State is entitled to immunity under the Eleventh Amendment.

Referring to Title VI of the Civil Rights Act, the Plaintiffs argue that the State has waived all Eleventh Amendment immunities by virtue of participation in federal programs. Waiver of immunity is not an issue in Title VI cases, however, because Congress specifically provided a

right of action against state actors. That cause of action, however, does not apply to other actions brought under § 1983. 42 U.S.C. § 2000d-7. There is no authority for extending the Title VI abrogation of immunity to any causes of action other than those specifically described in Section 2000d-7. Moreover, the private cause of action alleged under Title VI does not help the Plaintiffs because, as will be addressed later in this Reply, the individual Plaintiffs have not alleged facts that demonstrate standing to assert claims under Title VI.

### III.  Plaintiffs' Section 1983 Claims Against The Governor Are Barred By Sovereign Immunity

The Plaintiffs do not dispute that a public official must have a "special relation" to a law or its enforcement before he is a proper party under *Ex Parte Young.* Instead, they claim that Governor Huckabee is properly a party because he "executed these acts and has the ability to enforce same by use of both executive and judicial action." The Plaintiffs have not alleged any acts on the part of the Governor in "executing these acts," and concede, as they must, that he did not even sign Act 60.

The Governor of the State of Arkansas has no direct authority over the execution or enforcement of school laws. In fact, Arkansas' Constitution provides in Article 14, Section 4, that "the supervision of public schools and the execution of the laws regulating the same shall be vested in and confided to such officers as may be provided for by the General Assembly." These duties have been vested by the General Assembly in the State Board of Education. *See* Ark. Code Ann. § 6-11-105. Act 60 contains no provision for enforcement by the Governor, and assigns no duty or obligation to the Governor. Governor Huckabee simply does not have the "special relation" to Act 60 required under *Ex Parte Young* to support an action against the Governor.

**IV.    Plaintiffs' Section 1983 Claims Against The Governor Present No Justiciable Case Or Controversy**

The Plaintiffs' Response does not dispute that there must be an actual controversy with the Governor to support their official capacity claim against him. They assert only that there is an actual case or controversy because the Governor is the State's Chief Executive Officer. As noted earlier, the Complaint does not allege that the Governor has taken or threatened to take any part in the enforcement or administration of Acts 59 or 60. These are duties assigned to the State Board of Education, and carried out by that Board. For these reasons, there is no justiciable issue as to the Plaintiffs' claim against the Governor.

**V.    The Plaintiffs Lack Standing To Assert Alleged Violations of the Voting Rights Act**

Again, the parties apparently agree on the underlying legal principle; that to have standing under the Voting Rights Act an individual must be within the "zone of interests" protected by the Act. The Plaintiffs do not allege that they have been denied the right to vote, or that voting districts have been drawn in such a way as to deny meaning to the vote of African-Americans.[1] They claim only that they are within the zone of protected interests because the consolidation of the Lake View district has caused them to have, as a group, less influence over the education of the children of their community.

The Plaintiffs cite *Federal Election Commission v. Akins* for the proposition that the alleged dilution caused by a loss of board positions gives rise to a cause of action under the Voting Rights Act.[2] The *Akins* case, however, holds only that by statute any aggrieved person may have standing under the Federal Election Campaign Act to challenge action of the Federal Election Commission. *Akins* has no relevance to determining the existence of a cause of action under the Voting Rights Act.

---

[1] Although implied, the Complaint never affirmatively alleges the race of the Plaintiffs.
[2] *Federal Election Commission v. Akins*, 524 U.S. 11 (1998).

6

The Plaintiffs suggest that a "retrogression" analysis is appropriate to judge their relative voting power before and after the Lake View – Barton consolidation. As the Plaintiffs have aptly noted, their Voting Rights Act claim is based on Section 2 of the Voting Rights Act. Retrogression is not the proper inquiry in determining dilution claims in a Section 2 case. *Holder v. Hall*, 512 U.S. 874 (1994).

This Court has recognized recently that an allegation of diminished influence in local school board matters as a result of a consolidation is not sufficient to place a party in the zone of protected interests. See order entered October 28, 2004, in the case of *Dale Ray Ball, et al. v. State of Arkansas*, Case No. 4:04CV00547GH, a copy of which is attached hereto as Exhibit 1. As in the *Ball* case, the Plaintiffs in this case claim only diminished influence over the affairs of the school board. While they assert that the consolidation was racially motivated, the Plaintiffs have not alleged that anything in the actual voting process or in the establishment of district lines was racially motivated. They do not claim that they have been denied the right to vote, or that any act of the Defendants has diminished the value of their individual votes as compared to other voters in the consolidated district.

The Plaintiffs argue that an Attorney General's letter dated May 13, 2004, demonstrates that race was "the only concern" in school consolidations under Act 60. Even a cursory reading of the letter will show that race was considered only in connection with the State's affirmative legal obligation to avoid unconstitutional segregation. The opinion does not in any way demonstrate that the purpose or effect of Act 60 is racially discriminatory. *See* Plaintiff's Exhibit 2.

The Plaintiffs do not dispute the principal discussed in *Mirrione v. Anderson*, 717 F.2d 743 (2d Cir. 1983), that members of a community have no federal statutory or constitutional

7

right to remain intact as a single unit for voting purposes.  The Plaintiffs try to distinguish *Mirrione* by virtue of allegations of racial discrimination made in this case.  Fundamentally, however, the Plaintiffs complain that the citizens of the areas included in the former Lake View district *as a group* will have less voting influence in local education than they previously had.  The same can be said, of course, for the voters of the Barton school district, with which Lake View was merged.  The dilution alleged will be shared by all consolidated districts regardless of racial composition.

Arkansas law specifically provides for protection of the rights of voters in consolidated school districts.  The boards of consolidated school districts are to be elected from "single member zones of substantially equal population based on the most recent census information and from which racial minorities may be represented on the board in proportions reflected in the district as a whole."  Ark. Code Ann. § 6-13-1406(b)(3).  School board elections in general must be conducted pursuant to a plan "which will cause the selection procedures to be in compliance with the federal Voting Rights Act of 1965."  *See* Ark. Code Ann. § 6-13-630.  Lake View was assured one seat on the interim board of the consolidated district and, when Lake View failed to designate a member for the interim board, pending September 2004 school board elections, the State Board of Education appointed Plaintiff Henrietta Wilson to the interim board.

The Complaint does not allege that the actual school board elections or the voting wards or precincts established violate the Voting Rights Act. [3]  No claim could be stated against these Defendants even if the Plaintiffs did claim some irregularity in the voting district lines, because the local school boards, not the State, establish voting district boundaries for school elections.  *See* Ark. Code Ann. § 6-13-630.

---

[3] School board elections for the consolidated district occurred in September 2004.

## VI.    The Complaint Fails To State A Claim Upon Which Relief Can Be Granted

Most of the Plaintiffs' complaints arise from alleged injuries to the rights of the former Lake View district or its school board.  For example, Counts I and III of the Complaint seek remedies based on the "destruction" of the Lake View district.  Count IV alleges an unlawful taking of revenues of the Lake View district.  Count VI asserts discrimination in the distribution of funds to the Lake View District, and Count VII alleges a deprivation of the Lake View district's "prevailing party status."  Count VIII challenges the constitutionality of Act 59, which provides for certain state funding to local school districts.

The Complaint does not allege any legal or factual basis for the Plaintiffs to litigate the rights of the Lake View district. [4]  Even if the Plaintiffs were entitled to assert derivative claims, they have not established their right to pursue derivative claims as required by Rule 23.1 of the Federal Rules of Civil Procedure.  The Plaintiffs have therefore failed to state a claim for any injury to the rights of the former Lake View district.

In their response the Plaintiffs argue that the Defendants are not entitled to qualified immunity.  The Defendants' Motion to Dismiss does not assert qualified immunity as a basis for dismissal.  The principal at issue -- that political subdivisions of states have no Fourteenth Amendment rights against their states -- is not a matter of immunity subject to waiver.  Rather, it is the total absence of a substantive right.  These political subdivisions have no rights, and so no immunity need be invoked as to such claims.

The Plaintiffs cite *Stanley v. Darlington County School District*, 879 F. Supp. 1341 (D.S.C. 1995), for the proposition that a state may waive immunity to a school district's claim.  However, that decision was reversed on appeal, wherein the Fourth Circuit Court of Appeals

---

[4] As discussed in the Defendants' earlier brief, the Lake View district had no rights against the Defendants under federal law.

recognized that political subdivisions of states have no Fourteenth Amendment rights to assert against states. *Stanley v. Darlington County School District*, 84 F.3d 707 (4th Cir. 1996). The Plaintiffs also cite *Sandoval v. Hagan*, 197 F.3d 484 (11th Cir. 1999) for the same proposition. *Sandoval*, however, concerned only a state's immunity under Title VI, and, in any event, the Court of Appeals decision was reversed by the Supreme Court. *Alexander v. Sandoval*, 530 U.S. 1305 (2000).

The Plaintiffs argue that the Defendants have not attempted to respond to the allegations of Title VI violations in this case. The Complaint, however, alleges past discrimination in the funding of the Lake View district, which no longer exists. It does not claim any legal or factual basis for these Plaintiffs to maintain a Title VI action on behalf of the former Lake View school district. · In fact, the Lake View district itself would have had no right to bring suit against the State under Title VI. *United States v. State of Alabama*, 791 F.2d 1450 (11th Cir. 1986).

To maintain a Title VI action a private litigant must show that he or she has personally suffered the loss to be redressed. It is not enough to allege attributes, such as race, that may be held in common with those who have suffered illegal discrimination. *Urban Contractors Alliance v. Bi-State Development Agency*, 531 F.2d 877 (8th Cir. 1976). The Complaint does not allege that the Plaintiffs have individually suffered any deprivation of rights under Title VI and for this additional reason fails to state a claim under Title VI upon which relief can be granted.

## VII.   This Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Claims Under The Rooker-Feldman Doctrine Or, In The Alternative, Their Claims Are Barred By Res Judicata

Plaintiff's Brief in Support of their Response to the Defendants' Motion to Dismiss provides ample evidence that in this case Plaintiffs seek to undo the results of matters already extensively litigated in Arkansas state courts. In the section titled "Factual Background,"

beginning at page 2 of their brief, the Plaintiffs assert a collateral challenge to the validity of the Arkansas Supreme Court's supplemental opinion issued in the case of *Lake View School District No. 25 of Phillips County, Arkansas v. Huckabee*, __ Ark. ___, 2004 WL 1406270 (June 18, 2004). They assert that the dissenting opinion in that decision was more nearly correct than the majority, and that the hearings conducted by the Arkansas Supreme Court were carried out without proper authority. The Plaintiffs further challenge the adequacy of the administrative hearing on the Lake View-Barton district consolidation. The Complaint and the Plaintiffs' brief continue to make claims and seek remedies related to the adequacy of funding provided by the State to the Lake View district, although these claims have already been fully litigated. Plaintiffs reassert claims regarding the adequate funding of education, despite the fact that these claims, too, were tried to the Pulaski County Chancery Court. See Exhibit 3 to the Complaint, page 45, paragraphs 1 and 2.

The Plaintiffs now claim that the validity of Act 60 was never at issue in the proceedings before the Masters or the Arkansas Supreme Court. This is simply incorrect. Attached as Exhibit 2 is a copy of the Objection to Masters Report filed on behalf of the class of citizens and taxpayers of the Lake View district, of which the Plaintiffs in this case were members. The objection expressly asked that the Supreme Court retain jurisdiction and order the Arkansas Legislature to repeal Act 60 as "unconstitutional and a violation of equal protection and voting rights." Noting the Lake View parties' objection and the presentation of the issue at oral argument, the Supreme Court nevertheless declined to retain jurisdiction to issue such orders and instead reissued its mandate. *Lake View School District No. 25 of Phillips County, Arkansas v. Huckabee*, __ Ark. ___, 2004 WL 1406270 (June 18, 2004). The Supreme Court did reach and reject the Plaintiffs' federal claims based upon Act 60.

Substantially all of the Plaintiffs' allegations in this case relate to historical events that were in fact litigated in the long running Lake View case. The Plaintiffs now ask this Court to declare that the Arkansas Courts were incorrect and that Lake View should have something more or different as a result of its efforts. These claims about previously litigated past wrongs, the validity of state court proceedings and the correctness of the rulings of the Arkansas Supreme Court cannot be separated from the rest of the Plaintiffs' claims.

When a federal suit arises from the same nucleus of operative fact and simply states new or additional legal theories in an attempt to alter the result obtained in state court, the *Rooker-Feldman* doctrine bars the U.S. District Court from exercising jurisdiction. *LeMonds v. St. Louis County*, 222 F.3d 488 (8th Cir. 2000).

Plaintiffs apparently do not dispute the application of *res judicata* to this case, except to deny that they were afforded a full and fair opportunity to litigate their claims. The Plaintiffs, as members of the Plaintiff class in the Lake View case, were afforded multiple opportunities to litigate their claims and, in fact, did so. Any claims that were or could have been litigated are therefore barred by *res judicata*.

## Conclusion

It is claimed by the Plaintiffs that motions to dismiss are particularly disfavored in cases alleging civil rights violations. The cases cited by the Plaintiffs do not so hold. The Defendants are not aware of any special or different standard applicable to cases brought under the U.S. civil rights statutes. The basic rule still applies: the complaint must contain facts sufficient to state a claim as a matter of law and must not be merely conclusory in its allegations. *Springdale Education Association v. Springdale School District*, 133 F.3d 649 (8th Cir. 1998). When viewed

in this light, the Complaint fails to state facts upon which the Plaintiffs may be granted any remedy against the Defendants.

For all of the reasons set forth herein, and in their Motion to Dismiss and Brief in Support thereof, the Defendants respectfully request that this Court dismiss the Complaint in its entirety, and that the Court grant the Defendants such other and further relief to which they may be entitled.

Respectfully submitted,

MIKE BEEBE
Attorney General

By: _COLETTE D. HONORABLE #96016_
COLETTE D. HONORABLE #96016
Assistant Attorney General
TIMOTHY G. GAUGER #95019
Senior Assistant Attorney General
323 Center Street, Suite 200
Little Rock, Arkansas 72201
(501) 682-2007

Attorneys for Defendants

13

## CERTIFICATE OF SERVICE

I, Colette D. Honorable, certify that on March 31, 2005, a copy of the foregoing document was served by first-class U.S. mail, postage-prepaid, on the following person(s):

J.L.Wilson
521-523 Plaza
West Helena, AR 72390

Colette D. Honorable

PRESS

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

IN THE UNITED STATES DISTRICT COURT     OCT 2 8 2004
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION            JAMES W. McCORMACK, CLERK
By:_____ DEP CLERK

DALE RAY BALL, ET AL .                                    PLAINTIFFS

vs.                              CASE NO. 4:04CV00547GH

STATE OF ARKANSAS, ET AL.                                DEFENDANTS

## <u>ORDER</u>

On June 3, 2004, plaintiffs filed this action alleging that Act 60 of 2003, providing for consolidation of certain Arkansas school districts, was unconstitutional. They allege denial of equal protection and due process rights under the Fourteenth Amendment to the United States Constitution, denial of rights under the Fifteenth Amendment to the United States Constitution, violation of Section 2 of the Voting Rights Act of 1965, as amended, and violation of the Arkansas Constitution and Arkansas Civil Rights Act.

Defendants have filed a motion to dismiss. Plaintiffs have not responded. For the reasons stated below, the complaint is hereby dismissed.

Plaintiffs claim that they are registered voters[1] in the State of Arkansas who have exercised and wish to continue exercising their right to vote for their preferred candidates for school boards of school districts that are subject to administrative annexation or consolidation under Act 60. They assert that "[b]y virtue of the mandated consolidation, plaintiffs will have their ability to elect members of their school boards impermissibly diluted and adversely affected. Because of such voting

_____

[1]The plaintiff schools, parent-teacher organizations, cities, towns, communities and schools districts are obviously not "voters."

-1-



infringement, plaintiffs will have little or no control over the election of their school boards, over budgeting matters affecting such districts, including operation and expenditure of tax monies, as well as the educational programs selected by the school boards for their children." (para. 14 of Complaint). Plaintiffs seek a declaratory judgment that Act 60 of 2003 and its enforcement violates plaintiffs' rights and a permanent injunction prohibiting defendants from conducting elections using the consolidated districting.

Defendants raise a number of immunity defenses. It is clear that plaintiffs' § 1983 claim against the State is barred by sovereign immunity. Furthermore, the constitutional claims under 42 U.S.C. §1983 against the Speak of the House of Representatives of the Arkansas General Assembly and the President Pro Tempore of the Senate of the Arkansas General Assembly are barred by legislative immunity. *See Supreme Court of Virginia v. Consumers Union of the United States*, 446 U.S. 719 (1980). Additionally, the legislators are entitled to legislative immunity for the statutory claim under the Voting Rights Act. *See Latino Political Action Committee, Inc. v. City of Boston*, 580 F. Supp. 478, 484 (D. Mass. 1984).

More importantly, however, the complaint must be dismissed because the plaintiffs do not have standing to assert their federal claims and because plaintiffs have failed to state a claim. With regard to standing, "[a] federal court must ask 'whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief.'" *Roberts v. Wamser*, 883 F.2d 617, 620 (8th Cir. 1989)(citation omitted).

A violation of the Voting Rights Act occurs "where a certain electorate law, practice or structure, interacts with social and historical conditions to cause an inequality in opportunities enjoyed by black and white voters to elect their preferred representatives." *McGruder v. Phillips County Election Com'n*, 850 F.2d 406, 411 (8th Cir. 1988) (citation omitted). Aggrieved voters "seek[ing] judicial enforcement of the

-2-

prohibition against the infringement of the right to vote on account of race" have standing to bring a claim under the Voting Rights Act. *Roberts*, 883 F. 2d at 621.

· Plaintiffs in this case are 48 individuals, a number of schools, several parent teacher organizations, a school district, and local government entities. There is no indication anywhere that all of the individual plaintiffs are African-American voters, or that the plaintiff entities are predominantly African-American.

As defendants assert, without response by plaintiffs, a number of the plaintiffs are not "voters." *See Conway School Dist. v. Wilhoit*, 854 F. Supp. 1430, 1433 (E.D.Ark.1994)(school district lacked standing under Voting Rights Act because not an "aggrieved person"). With regard to the individual plaintiffs, plaintiffs have failed to allege that they are members of a racial minority or a member of a "language minority group." Nowhere do they allege that their right to vote has been or will be infringed because of their race.

Furthermore, as defendants assert, plaintiffs have failed to allege that their complaint falls "within the zone of interests protected by the law involved." *Allen v. Wright*, 468 U.S. 737, 751 (1984). That is, plaintiffs have failed to allege that they are being denied the right to vote because they are minority voters. They merely allege that they will have less influence on local school board matters because of the consolidation. This is not a matter that the Voting Rights Act was intended to protect and there is no constitutional right to maintain local control of school districts or to preserve the identity of a school district. *See Mirrione v. Anderson*, 717 F. 2d 743, 744, 746 (2d Cir. 1983) (court dismissed action seeking to invalidate New York state legislative reapportionment as it applied to a county on the grounds that it impermissibly impaired the collective voting power of voters in a community. "[W]e have found no case that would make the observance of town lines or boundaries of unofficial communities a mandatory consideration under either the Voting Rights Act or the Constitution.")

-3-

With regard to plaintiffs' claims under § 1983, the Court notes that plaintiffs have failed to allege a claim. To state a claim under the Equal Protection Clause, plaintiffs must allege intentional discrimination on account of race. Nowhere does plaintiff allege that Act 60 was adopted with a discriminatory purpose or that Act 60 has any discriminatory purpose. *See Rogers v. Lodge*, 453 U.S. 613, 617 (1982) (for a violation of the Equal Protection Clause the invidious quality of a law claimed to be racially discriminatory must ultimately be traced to a racially discriminatory purpose). As discussed above, plaintiffs have not identified a fundamental or constitutional right to maintain existing school districts or to elect board members for such districts.

Because of plaintiffs' failure to assert racial discrimination, Act 60 need only be supported by a rational basis. Plaintiffs note in the complaint that Act 60 was enacted as part of the State's response to an Arkansas Supreme Court decision finding the State Education Funding System was unconstitutional and failed to provide a system of suitable and adequate education as required by the Arkansas Constitution. Plaintiffs cannot establish that Act 60 does not serve a legitimate governmental purpose to ensure that public funds are spent in an efficient manner. As the Arkansas General Assembly stated in the Emergency Clause of Act 60:

> It is found and determined by the General Assembly of the State of Arkansas that the Arkansas Supreme Court in *Lake View School District No. 25 v. Huckabee*, 351 Ark 31 (2002) declared the now existing system of education to be unconstitutional because it is both inequitable and inadequate; and the Arkansas Supreme Court set forth the test for a constitutional system to be one in which the State has an "absolute duty" to provide an "equal opportunity to an adequate education"; and the Arkansas Supreme Court instructed the General Assembly to define and provide what is necessary to provide an adequate and equitable education for the children of Arkansas. "

As stated above, plaintiffs have failed to respond to defendants' motion to dismiss and to counter the substantial legal authority defendants present in support of their position. It is clear that the complaint should be dismissed.

Accordingly, the motion to dismiss is granted. The federal claims are dismissed

-4-

with prejudice; the state claims are dismissed without prejudice.

IT IS SO ORDERED this *27* day of October, 2004.

*George Howard Jr.*
UNITED STATES DISTRICT JUDGE

THIS DOCUMENT ENTERED ON
DOCKET SHEET IN COMPLIANCE
WITH RULE 58 AND/OR 79(a) FRCP
ON_____BY_____

RECEIVED
CLERK OF APPEAL

IWI APR 22  P 2: 26
...E W. STEEN, CLERK

# SUPREME COURT OF ARKANSAS

**LAKE VIEW SCHOOL DISTRICT NO. 25**
**OF PHILLIPS COUNTY, ARKANSAS, et al,**                                    **APPELLANTS,**

**VS.**                                    **NO. 01-836**

**GOVERNOR MIKE HUCKABEE, et al,**                                    **APPELLEES.**

---

## OBJECTION TO MASTERS REPORT, RECOMMENDATIONS, MOTION FOR SANCTIONS, ATTORNEYS FEES AND COSTS

Comes now the Appellant class of citizens, taxpayers and school districts, and for its

Objections, Recommendations, Request for Sanctions, Attorney Fees and Costs states as

follows, pursuant to Ark. R. Civ. P. 6(c) and 53(e)(2) (2003):

### I. OBJECTION

1. The Appellants object to the Special Masters Report for their failure to inform the Court of

the unconstitutionality of Act 60 and their failure to recommend the immediate repeal of Act 60

because consolidation does nothing to further the *Lake View III* mandate.

Their report recognized that consolidation was not mandated, or even mentioned in the

*Lake View III* decision. The report did mention that it is possible that consolidation would save

money by enabling larger classes which could result in more money for teacher salaries; their

report states that to consolidate 19% of our 308 school districts to be "dramatic." (MR 9) But,

the report gives short shrift to the human cost of consolidation, displaced students and teachers,

distant classes and other activities, teacher dismissal issues, contracts required to be paid without

classes to monitor, vacant and decaying school buildings, lost of identity of the areas, but most

importantly that Act 60 violates voting rights laws and cases by diluting representation. Act 60



violates equal protection because it fails to provide for the orderly transfer or retention of personnel. Only two or three percentage points of the overall student population are affected by consolidation in Arkansas under Act 60, while causing some small communities to "wither on the vine" as a result. (MR 8) The report points out that nothing in Act 60 requires the closing of any school meanwhile 57 School Districts are certainly going in that direction. Consolidation will not realize any savings for the state as anticipated and in fact will likely increase the overall cost of education in Arkansas.

## II. RECOMMENDATIONS

1. That the Arkansas Legislature should be Ordered to reconvene in special session within 45 days and repeal Act 60 as unconstitutional and a violation of equal protection and voting rights.

2. That the Arkansas Legislature should be Ordered to appropriate funds to fully implement the Adequacy Study and fund it immediately, terminating or ceasing to fund all non-constitutionally mandated expenditures until sufficient funds are escrowed to implement and fully fund the Adequacy Study.

3. That the Court should retain jurisdiction over this cause of action until full implementation of the *Lake View III* decision has been realized.

4. That the Court should put in place a monitoring apparatus to insure compliance with its Orders and insure that all unfunded mandates are funded and that none of these mandates, once funded are then repealed later. That which has been given by the General Assembly may be taken away by the General Assembly. (MR 12)

5. That the state be required to fully cooperate within the monitoring apparatus and that the state should be Ordered to pay for same in all its components.

6. That early childhood education should be declared a fundamental right under the Arkansas Constitution.

7. That the competitive-grant system of distributing some types of school funding in Arkansas should be abolished as unequitable.

8. That a uniform overall teacher salary system, not merely minimum starting salary, be instituted in such a way that two (2) comparably educated teachers in the same field of instruction, with equal seniority, in any two school districts in the state, are paid on the same scale. This will curb teacher migration between districts, and between states and regions and ultimately proceed toward adequacy and equity.

9. That the facilities assessment must also be monitored to insure compliance in a timely manner. Facilities assessment should specifically include school buildings, as well as all other teacher and student equipment, as well as computers, labs and instructional materials. The facilities assessment list is not as inclusive in its scope. (MR Question 5, 1-4)

## III. SANCTIONS

1. That the state was in contempt of this Court's decision on January 1, 2004. If it had not been for the Motion for Contempt by Appellants this case likely would have been over, since this Court had already stated as much. The system could not be completely reformed, even if more had been done in that direction, prior to the deadline of January 1, 2004, because the important changes will take time to implement and more time to assess after they have been implemented. (MR 11-12) The state should receive appropriate sanctions for these failures.

2. That the state did not comply with the recommendations of the Joint Committee on Adequacy, in several respects, i.e., the Study recommended $100 million for early childhood education, but the legislature appropriated $40 million.

## IV. ATTORNEYS' FEES AND LITIGATION COSTS

That the Lake View Appellants continue to have prevailing party status in this cause of action. This status is the law of the case. *Lake View III*. In addition, because of the consensus that the Appellees failed to comply by January 1, 2004, the Appellant class has again prevailed on the merits in several areas, including on the question of whether the state Appellees had put in place an adequate and equitable school finance system therefore augmenting its prevailing party status. *Little Rock School District and Pulaski County Special School District v. State of Arkansas*, 127 F.3d 693 (1997)

This Court, in its *Lake View III* decision, put forth a directive for the State to comply with. One of the recommendations herein was that the Court Order a monitoring apparatus be put in place by the state appellees, but that is why we are here now. The monitoring of the state's attempts at addressing the decision, or lack thereof, was the very basis for the January 2, 2004 Motion for Contempt. And, as stated in *Little Rock School District and Pulaski County Special School District v. State of Arkansas*, supra,

> "Monitoring implementation of the remedy is a
> crucial part of the Plaintiffs' function in these
> cases."

The touchstone of a prevailing party inquiry is whether actual relief on the merits materially alter the parties legal relationship by modifying a defendants behavior in a way that directly benefits a plaintiff. *Little Rock School District v. Pulaski County Special School*

*District,* 17 F.3d 260 (1994)

WHEREFORE, the Appellants request that the Court find that the state has failed to comply with the *Lake View III* decision, Order the immediate repeal of Act 60, Order that the Adequacy Study be fully funded, Order that sufficient funds be escrowed, to the detriment of other agencies of the state, if necessary, to fully fund the Adequacy Study, Order that a monitoring apparatus be put in place, Order the state to pay cost and attorney fees and for all other relief to which the Appellants may be entitled.

Respectfully submitted,

Roy C. "Bill" Lewellen
17 Poplar St.
Marianna, AR 72360
(870) 295-2764
FAX  (870) 295-6836

Don Trimble
1124 Dr. Martin Luther King Jr. Drive
Little Rock, AR 72202
(501) 376-8024
FAX  (501) 376-8824

E. Dion Wilson
423 Rightor Street
Helena, AR 72342
(870) 338-6487
FAX   (870) 338-8030

By _____
Don Trimble

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the foregoing pleading has been placed in the U.S. Postal Service, with postage sufficient to effectuate delivery thereof, and addressed to the following:

WILLIAM & ANDERSON, PLC
ATTN: Phillip Anderson
111 Center Street, 22nd Floor
Little Rock, AR 72201

LAVEY and BURNETT
ATTN: John Burnett
P.O. Box 2567
Little Rock, AR 72203-2567

KAPLAN, BREWER, MAXEY,
   & HARALSON, P.A.
ATTN: Regina Haralson
415 Main Street
Little Rock, AR 72201

FRIDAY, ELDREDGE & CLARK
ATTN: Christopher Heller
400 West Capitol, Suite 2000
Little Rock, AR 72201

Clayton R. Blackstock
P.O. Box 1510
Little Rock, AR 72203-1510

Honorable Collins Kilgore
Pulaski County Circuit, 13th Div.
401 W. Markham Street, Room 330
Little Rock, AR 72201

AR ATTORNEY GENERAL
ATTN: Timothy Gauger, Senior Asst.
323 Center Street, Suite 1100
Little Rock, AR 72201

DUDLEY & COMPTON
ATTN: Cathleen V. Compton
114 South Pulaski Street
Little Rock, AR 72201

MATTHEWS, CAMPBELL, RHOADS,
McCLURE, THOMPSON & FRYAUF
ATTN: David Matthews
119 South Second Street
Rogers, AR 72756

BARRETT & DEACON
ATTN: D. P. Marshall
P.O. Box 1700
Jonesboro, AR 72403

James Leon Holmes
111 Center Street, Suite 1850
Little Rock, AR 72201

Thompson & Llewellyn
ATTN: James M. Llewellyn
Post Office Box 818
Fort Smith, AR 72902

on this 22nd day of April, 2004.

_____
Don Trimble