**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
HELENA DIVISION**

**FRIENDS OF LAKE VIEW SCHOOL DISTRICT
INCORPORATION NO. 25 OF PHILLIPS COUNTY, et al.**                    **PLAINTIFFS**

**VS.**                                          **2:04CV00184 GH**

**MIKE HUCKABEE in his official capacity, as Governor
Of the State of Arkansas**                                          **DEFENDANTS**

## BRIEF IN SUPPORT OF MOTION AND NOTICE
## FOR PRELIMINARY INJUNCTION

### Facts

The present cause of action was filed before this court on 25th day of October,

2004. A final Trial Scheduling Order has been issued in this cause setting this matter

down for trial on the merits, September 19, 2005 in the Federal Building, Helena,

Arkansas. The defendants have filed a Motion to Dismiss; the plaintiffs have responded;

the defendants have filed a Reply to Response. By joint agreement the parties have

requested the court to delay Discovery in this cause pending the determination of the

various issues presented in the defendants' Motion to Dismiss.

The Complaint in this cause alleges specific to the instant Motion that Act 60 of

the Second Extraordinary Session of the Arkansas General Assembly of 2003 (hereinafter

referred to as Act 60) is a violation of the plaintiffs constitutional rights via First, Fifth,

Fourteenth, Fifteenth, 42 U.S.C. 1981, 42 U.S.C. 1982, 42 U.S.C. 1983, and various

Arkansas state constitutional provisions and statutes. The state defendants pursuant to

Act 60 have instituted a procedure to close the plaintiffs' home school district of

Lakeview, School District No. 25 of Phillips County, Arkansas. The defendants

instituted a process for enforcement of Act 60 which granted unilateral and unfettered

powers to the state defendants' Board of Education to consolidate or annex any school district in the State of Arkansas that has 350 Average Daily Membership (ADM) per school year and according to that standard fifty-seven school districts within the State of Arkansas were summarily closed. That the plaintiffs objected to the closing of the Lakeview School District at a hearing conducted May 17, 2004 (50th Anniversary of *Brown v. Board*) on the basis that it was racially discriminatory; that the closing of Lakeview School was also arbitrary; capricious and unreasonable; that the closing of the Lakeview School District was punishment for the plaintiffs and other participating in the series of *Lakeview v. Huckabee* who school finance cases in the State Court; that the state defendants had an obligation under law to provide alternatives to the closing of the Lakeview School District through consolidation or annexation; and that the hearing provided on May 17, 2004 was of such brevity (30 minutes) and of an extremely restricted nature that due process was not available .

Through Act 60 the state defendants had consolidated the Lakeview School District No. 25 with Barton-Lexa School District of Phillips County. The Lakeview School at the extreme Northern perimeter is fifteen miles plus more or less from the Barton school campus. The Barton-Lexa School District has a long history of racial discrimination against African-American students; African-American parents; African-American teachers; and African-American voters. There have been numerous lawsuits over the period of 1970 to present, in which the African-American parents, students, teachers, voters, etc. have filed successful lawsuits against the Barton-Lexa School District in the area. See *Marshall v. Kirkland*, 602 F.2d 1282 (8th Cir. 1979) as an example. When the Barton-Lexa School District was integrated by Order of the Federal

Court in the early 1970's, because it got half of the African-American students who were previously educated in the Lake View School District. The Barton-Lexa School District, in spite of, acquiring half of the African-American students from Lake View remained almost absolutely white from the prospective of staffing and its administration through the 70s, 80s, and 90s to present. It is ironic that the Lake View School District lost students because of the state defendants grudging compliance with *Brown v. Board* to a district that was hostile to African-American students; Lake View School District lost population from approximately fifteen to seventeen hundred students to a reduction of approximately six hundred students in the early 70s; it had lost students because dwindling population in Eastern Arkansas but it would have more than 350 students if the State of Arkansas in the 70s would have integrated Barton-Lexa with Lake View.

Lake View had three times more students going to its school than Barton-Lexa had at the time of desegregation. This court must ask why wasn't Barton-Lexa desegregated with Lake View. Why is the state now penalizing Lake View for having less than 350 students when the reason it has less than 350 students is because of previous state action transferring Lake View student population to Barton-Lexa in the early 70s. Will this court again require allow Lake View to bare the total burden of desegregation, i.e. Barton-Lexa via Lake View in the early 70s for the purpose of complying with the requirements of the Fourteen Amendment equality and now suffer Lake View to be destroyed in order for the state once again to comply with a constitutional standard it has statutorily but unconstitutionally, traditionally violated-not the plaintiff and not their school district of Lake View. Lake View School District did not have a segregated system of school. The Lake View School District did not have a segregated system of

school. It was Barton-Lexa. The Lake View School District would have more than 350 students if it had not carried the complete burden of correcting the state defendants many years of constitutional violations.

There has been a transition in the racial composition of the student population of the Barton-Lexa School District during this same period. Because of a reduction in the number of African-American people who lived in the district with children at the time of desegregation and the mass migration of white parents with school age kids from the Helena and Marvell School District areas to live in the Barton-Lexa School District and finally the open-door policy of Barton-Lexa School District through the aid of state law which allowed white students from the Elaine School District, Holly Grove School District, Lee County School District, Helena School District and the Lakeview School District to attend school at Barton-Lexa without restriction; the population has reversed. A majority African-American students in the 70s is now overwhelmingly majority white. The Barton-Lexa School District is for all legal purposes Caucasian in its staffing and its administration, almost completely.

There are no African-American related courses in the Barton-Lexa School District curriculum and the emphasis in the school district is totally Eurocentric. African-American students and parents have reduced to the educational, political and social margin within the school district with the exception of the few persons allowed to play in team sports and the extremely gifted. It is undisputable that African-American students who transited to the Barton-Lexa School District from Lakeview instead of attending the Lakeview campus during the 2004-05 school year suffered repeated acts of intellectual, educational, social and disciplinary abuse. The Barton-Lexa School District has a seven

4

school board membership with only one African-American and with the state carving out for redistricting purposes the permanent maintenance of a five member white majority of those seven members under Act 60 authority. The reapportioned district for the Barton-Lexa School District is based upon alleged proportional ratio via racial composition of the new district.

No African-American from the Lakeview School District which had a seven member board now sits on the Barton-Lexa School District through the processes of the exercise of the franchise.

### Legal Standard

Under the legal standard determining whether to grant a Preliminary Injunction utilized by this court consideration must be given to (1) the threat of *irreparable* harm to the movant; (2) the state of balance between the harm and the injuries that granting the injunction will inflict on other parties litigants; (3) the probability that the movant would proceed on the merits; and (4) the public interest. *Dataphase System, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). In determining whether a plan involving school closure violates constitutional and statutory safeguards closures, courts consider six factors: (a) existence of violent non-racial educational means for closing school facilities located in predominantly black areas; (b) conditions and adequacies of facilities at school being closed; (c) whether facilities to which minorities students are being transferred are adequate and whether transfer would cause those facilities to be over taxed; (d) whether primary or sole reason for school board action was feared that less constitutionally suspect solutions... would lead to "white flight"...; (e) whether entire or primary burden... is placed on black students and teachers; and (f) whether alternatives

were considered which did not require closure of predominant black schools for making a final decision. *Fitzpatrick v. Board of Education City of Enid Public Schools, et al.,* 578 F.2d 858 (10th Cir. 1978);   *Lee v. Macon County Board of Education et al.,* 448 F.2d 746 (5th. Cir. 1975).  Although the *Fitzpatrick* and *Lee* cases dealt with the closing of African-American school districts for the purpose of satisfying desegregation plans, plaintiffs contend that the principles adopted by the court in those cases has applicability in the present cause.

<u>Argument</u>

The plaintiffs in this cause are patrons of the Lake View School District which has been consolidated by the state defendants pursuant to the authority of Act 60 with the Barton-Lexa School District of Phillips County.  The Barton-Lexa School District has now pursuant to Act 60 acting as agent of the state defendants mandated the closing of the Lake View School campus forever.  It is the contention of the plaintiffs that the closing of the school will do *irreparable* harm to their constitutional rights as set-out in the Complaint-in-Chief and reiterated in the instant Motion for Preliminary Injunctive Relief.  The rights violation contended by the plaintiffs are numerous, but for the purpose of this supportive Brief will be limited to the areas of those allegations that the plaintiffs believe  of a certain provable at the Trial-in-Chief and which will be supportive of satisfying the elements of *Dataphase.*

There can be no argument that the closing of the Lake View School District will do *irreparable* harm to the plaintiffs, plaintiffs' children/wards because it will eliminate from their control and direction the educational guidance available to them through the maintenance of the Lake View School District.  It is a fact, the closing of the Lake View

6

School District will do *irreparable* harm to the contention by the plaintiff that they have a right to maintain their district and under the various constitutional and statutory authorities referenced in the Complaint-in-Chief.  However, more than the *irreparable* harm done to legal rights will be the destruction of their children self-esteem, ethnic pride, psychological balance, and their children ability to receive an education in a wholesome, friendly, receptive and understanding educational environment.

   *Irreparable* injury for the purpose of determining whether a Temporary Injunction Order is warranted to protect against *irreparable* injury to a party, is an injury to which the injured party cannot be adequately compensated, or one from which the damages cannot be measured by any certain pecuniary standard; obviously, financial harm is not *irreparable* as it can be adequate compensated by money damages.  <u>Three Sisters Petroleum, Inc. v. Langley</u>, 72 S.W.3d 95 (Ark. 2002).  *Irreparable* harm element must be shown to be eminent, not remote or speculation, an alleged injury must be one incapable of being fully remedied by monetary damages is a universally accepted principle of law.  See *Dataphase*, supra.  The closing of the Lake View School District unarguably would do *irreparable* harm to the plaintiffs' claim that under the constitutional premises on which their Complaint is based they are entitled to uninterrupted maintenance of that facility.  The closure of the Lake View School District for even a short period of time would destroy the continuity of the faculty, staff, and staff that are in place and cause displacement of the established teaching patterns and educational goals created by the community and the plaintiffs over a long period of time.  The damage to the physical structure of the school district is a pecuniary damage that cannot be quantified, also.

Under *Dataphase*, the plaintiffs have an obligation to carry the burden of showing that they have a *likelihood of success* on the merits. *Dataphase* does not require that the plaintiffs show fifty percent plus *likelihood of success*. The court in *Dataphase* specifically addresses this issue as follows:

> "The major difficulty with application of the tradition test has arisen from the phrase "probability of success on the merits." Some has read this element of the test to require in any case that the party seeking preliminary relief must prove a greater than fifty percent likelihood that he will prevail on the merits. Under this view, even if the balance of the other three factors strongly favored the moving party, preliminary relief would be denied if the movant could not prove a mathematical probability of success at trial. Although this construction of the "probability of success" requirement is technically possible, we reject it."

The plaintiffs have demonstrated conclusively it is contended through the allegations of its Motions and the attached exhibits that there is undoubtedly a very high *likelihood of success* on several of the issues in controversy in this cause. Plaintiffs will not belabor the court with repeating all of those high probability issues but will incorporate by reference the Motion and its assertion into the context of the Brief as set-out word-for-word. However, it is necessary to point out to the court that on the issue of unequity of the taxes paid by Lake View as opposed to Barton-Lexa School District there

can be no argument this imbalance is unconstitutional. J. Exhibit 1, Fourteenth Amendment U. S. Constitution.

Nor can there be any serious contentions by the state that the voting rights of the African-American citizens of the Lake View School District have been seriously diluted by the actions of the state pursuant to the authority of Act 60. Lake View School District had seven African-American school board members prior to Act 60 forced consolidation, now they have zero or the best argument of the state would be that that district is not represented by one. Even those of us who went to school at Lake View know the difference between seven members on the board and one. The same population at Lake View that elected seven board members now has suffered a voter delusion to the extent that it could only possibly elect one. *Jenkins v. Red Clay Consolidated School District Board of Education*, 4 F.3d 1103 (3rd Cir. 1993), clearly establishes that under the principles approved by the court in *Thornburg v. Gingles*, 478 U.S. 30 (1986) that because of Barton-Lexa school board election pattern of white block voting, there is a high probability if not a certainty of a voter's right violation under Sec. 2, 42 U.S.C. §1973(a). In *Cannon v. Durham County Board of Election*, 959 F.supp 285 (E.D.N.C. 1997), the court again outline the proof requirement of a successful voting right act claim under Sec. 2 as follows:

> "To proceed on a claim under Sec. 2 the plaintiffs must satisfy the
> proof scheme promulgated in *Thornburg v. Gingles*, 478 U.S. 30...
> *Gingles* lays out the following out three pre-conditions to establish
> *prima facie* Sec. 2 claim: (1) that the minority population is

sufficiently large in geographic compact to constituting majority in a

singleness member district; (2) that the minority group is politically

cohesive and; (3) that the black majority votes sufficiently has a block

to enable it to defeat the majorities preferred candidates."

In the present case not only has there been a dilution of the African-American

board under Sec. 2, there has been a complete destruction of it.  The African-American

school district of Lake View has been destroyed as a viable electoral present.   The

creation of the new district represents an absolute dilution of the African-American

voting strength as compared to the plaintiffs' former district.  *Cano v. Davis*, 211 F.Supp

2d 1208, affirmed 123 S. Ct. 851(C.D. Cal. 2002).  J. Exhibit 10 .

The *likelihood of success* relative to the illegal acquisition or taking of the

African-American citizens' property inclusive of real estate and its millage funds is also

undisputably provable as a violation of their constitutional rights under Amendment 5

and 14 of the U.S. Constitution.  There was a lack of due process in the manner in which

the properties of the citizens of Lake View represented by the Lake View School District

as a physical entity was confiscated by the state defendants.   It is the claim of the

plaintiffs that the State of Arkansas because of the official racial discrimination policies,

customs and statutes never purchased or helped purchase the plaintiffs' school district as

represented by the Lake View School District beginning in 1938.   The procedure for

annexation or consolidation is evidenced by J. Exhibit 7 demonstrates clearly that the

plaintiffs or their representatives from the Lake View School District was given a mere

thirty minutes in which to present a case in opposite to the state determination that their

properties should be seized.  Section 1983 relief is predicated on the denial of a right or

interest protected by the constitution.  Analysis of a procedural or substantive *due process* claim must begin with an examination of the interest allegedly violated... protected property interest is created by state law but the federal constitution determines whether the interest created by state law arises to the level of a protected property interest.  See *Carolan v. Kansas City Missouri*, 814 F.2d 178, 181 (8th Cir. 1981); *Board of Regents of State Colleges v. Roth*, 408 U.S. 1972; *Memphis Light, Gas, and Water Div. v. Craft*, 436 U.S. 1 (1978).

The issue is simple: is there a constitutional protected right of the plaintiffs to maintain an educational system for the academic training of their children as previously established by their efforts to create the Lake View School District No. 25 of Phillips County?  Plaintiffs contend that there is absolutely a constitutional right on its face, because the plaintiffs' predecessors brought the property on which the Lake View School District physical plant is located without aid from the state, but through their own private efforts and they are entitled to maintain same with constitutionally mandated state aid based on principles of constitutionally mandated equity and adequacy in funding. The plaintiffs' school district has never been given an opportunity to operate under such conditions.

Secondly, under Arkansas law there are as stated in the Complaint only one type of school system and they are created equally.  See A.C.A. 6-13-101. Thirdly it is the contention of the plaintiffs that they should not suffer a violation of their rights to maintain a school system at the sufferance of the right of the state to maintain a Barton-Lexa School District because of racial considerations.  There is no credible argument that

11

the premise for consolidation of the plaintiffs' school district was not based and grounded in unconstitutional racial concerns.   J. Exhibit 8 and 9.

The small school districts that are unequally affected and are the concerns of the memo to Governor Huckabee in J. Exhibit 9 is simply created vocabulary to avoid stating clearly that it will be statistically *all* of the African-American school districts that will be affected adversely and disparatively by implementation of Act 60.   While laws on their face may seem to be fair and non-discriminatory, the administration of them may violate the equal protection clause of the U. S. Constitution. *Yick Wo v. Hopkins*, 118 U.S. 356 (1886); *Loving v. Common Wealth of Virginia*, 338 U.S. 1 (1967).   The plaintiffs rebut any assertion by the state that Act 60 is fair and non-discriminatory.   The result of Act 60 implementation has affected dramatically and tragically the remaining African-American school districts in this state and particularly for the purpose of the determination of the present motions the plaintiffs' school district.   Again, there could be no serious argument that race was not the paramount concern of the state as evidenced by its interoffice memo to the Governor previously cited and the Attorney General Opinion illustrated by J. Exhibit 8.

The plaintiffs contend that the overwhelming racial emphasis of Act 60 allowed the state defendants to create a remedy that was unconstitutionally *tailored* to address the unconstitutionality of the state educational system found in the *Lake View v. Huckabee* cases. J. Exhibit 10.   There is *no state interest* in the discrimination through Act 60 of African-American citizens of this state to the extent that they lose participation in a dominant role in any communities' determination of what is the standard of education that they will require within a school system affecting their children within the entirety of

12

the state defendants public school system. It is to be noted that the Lake View School District is the last African-American school district created in this state through the efforts of African-Americans still in existence at the time of the passage of Act 60 which the plaintiffs are aware. Act 60 distinguishes between persons who are entitled to live in communities with a school district under their local control based upon whether or not the predominantly racial group in the area is African-American or Caucasian. The state defendants have promulgated rules and regulations that insure that there will be no predominance of African-Americans in school districts that are subjected to consolidation. This legislation is racial-based and should be viewed with extreme suspicion by this court. See *Wyant v. Jackson Board of Education*, 476 U.S. 267, 277 - 278 (1986); *Shaw v. Reno*, 509 U.S. 630, 643 (1993). *Strict Scrutiny* must be applied to the review of this race based legislation.

The administrative procedure instituted by the state defendants to determine the closing/consolidation/construction of the plaintiffs' school district was as mentioned above a thirty minute scheduled review. However, much like the casinos in Western Mississippi which borders the Lake View School District - separated by the Mississippi River, the deck was stacked against Lake View. The Lake View School District's representatives one of which is a named plaintiff in this lawsuit i.e. Henrietta Wilson was invited to come to a hearing on consolidation in which the law mandated no matter what the representatives of Lake View School District presented they would still be bound by the racially based procedure and the racial based authority given to the state school board pursuant to Act 60. The state defendants were determined to administer Act 60 in a way that absolutely no African-American school systems would be maintained that would

13

absorb white school districts with less than 350 students.  All of the school districts that were destroyed through consolidation in Eastern Arkansas were African-American school districts absorbed into a predominantly white school district rather than vice versa.  All of the teachers who lost their jobs, administrators who lost positions, non-certified staff who lost employment were in African-American school districts while the white school districts like Barton-Lexa maintained their predominantly Caucasian staff.  These classification based on race carry a dangerous stigma,…that may in fact promote notions of racial inferiority and lead to a politic of racial hostility.  _U. of Cal. Regents v. Vake_, 438 U.S., 265, 298 (1978); See also _Richmond v. J.A. Crosan, Co._, 488 U.S., 469 (1989).  Surely, the concept that is being forced down the throats of the plaintiffs and the plaintiffs children/wards is that their school i.e. Lake View School District because it is predominantly African-American is in inferior to the Barton-Lexa School District because it is white.  The number game utilized in Act 60 is contended by plaintiff is simply a pretext.  See also _Kelley v. Alhemizer_, 358 F.2d 483 (8th Cir. 1967).

In _Kelley_, the court emphasized that the closing of African-American schools would be constitutionally suspect, at the least and probably prohibited when there has been provided no _alternative_ to closure.  The Lake View School District was given no alternative to closure even though the state has in place Chartered Schools as state primary and secondary educational institutions which have less than 350 students.  J. Exhibit 3.  As previously indicated in this Brief, the closure of the plaintiffs' school district pursuant to Act 60 is no different than the principle of law that would apply to desegregation of school systems plan.  Alternatives must be available constitutionally to the Lake View School District as provided by Act 60 the state other than the absolute

14

closure of the school especially when an alternative is a fixture state law. It is a violation of equal protection for the State of Arkansas to say with one hand that it believes that it is educationally unfeasible, economically overtaxing to have public school systems of 350 students or less and then finance public school systems under the title classification of chartered school and allow just the opposite to take place. See A.C.A. 6-23-206, A.C.A. 6-23-309, A.C.A. 6-23-507; A.C.A. 6-21-101 thru 507; A.C.A. 6-11-105; 6-23-206; Act 1311 of 2001. See J. Exhibit 3, supra.

As previously stated, under *Dataphase* there is no percentage requirements for establishing *likelihood of success*, but undoubtedly the plaintiffs have standings to make the aforementioned assertions as it relates to the conditions created by the enforcement of Act 60 by the state defendants that affect them as millage payers within the Lake View School District, parents/guardians of students affected by Act 60 destruction of their home school, voters who will have their voting rights diminished or destroyed as it relates to full participation in the development of policies and educational standards affecting their children. The Voting Rights Act of 1965, as amended, has supremacy over the voting mechanisms set-out in Act 60 as stated in the Complaint-in-Chief the scheme for voting or establishing apportionment under Act 60 is unconstitutional on its face. The Supremacy Clause of the United States Constitution is enforceable under 42 U.S.C. 1983. *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103 (1989). A *prima facie* case of white block voting evidenced likelihood of such on this issue. J. Exhibit 11.

The plaintiffs would be remiss if it did not present the argument on the remaining elements of *Dataphase*-of *public interest* and *balancing of the equities*. Under the

arguments aforementioned exclusive of the instant Motion and the allegations of the Complaint there is no *public interest* that the state can foster enforcing state laws on a totally racial discriminatory basis. It is in the *state interest* that the state as an entity obeys the dictates of the United States Constitution. There is further a *state interest* in African-American students given the same treatment under law as white students inclusive of the right to not be relegated by the state to inferior positions in the educational system of any given state. Under Act 60, the state has boldly and loudly stated that under no circumstances, in particularly, because of the fear of "white flight" should white school districts be forced to be consolidated/integrate with predominantly African-American districts. This is absolutely unconstitutionally prohibited. See *Kelley*, supra.

As it relates to the *balancing of the equities* the plaintiffs will be equally brief in its arguments. There are no equities in favor of the state which would allow them to discriminate on a racially based manner against the plaintiffs. There are no equities to balance in their favor which would allow them to close plaintiffs' school district and take plaintiffs' property without *due process*. There are no equities that would allow the white citizens and elected officials in Barton-Lexa School District to maintain dominance over the voters in the Lake View School District. There are no equities that would allow the promulgation and continuation of a tax system which requires the people of the Lake View School District to pay more taxes within the consolidated Barton-Lexa School District. There are no equities to balance that would allow the state to require the Lake View School students to travel long distance while the Barton-Lexa School students allow in their same tradition travel zone. There is no equities that would allow the

destruction of the African-American staff at Lake View and the transfer of students from Lake View to Barton to a basically foreign teaching staff. See *Dataphase*.

On the contrary, the equities are with Lake View to maintain the present school system, its present staffing and its present efforts to improve the educational product generated by that system. This court should take into serious consideration the absolute irrefutable fact that the Lake View School District was never properly financed and when it prevailed in the *Lake View v. Huckabee* lawsuit which would have brought it to some financial equity and adequacy, the state closed it rather than to give it an opportunity to exist in a new financial system and era that Lake View as a district created. What greater violation of *due process* than to punish a person or an entity for lawfully attempting and succeeding in enforcing a constitutional right as was established in the final finding of *Lake View III*. This is exactly what has happened in the instant case and it is the most egregious and irreparable harm suffered by the actual passage of Act 60 which will be multiplied ten-fold if this court does not grant injunction as is the instant pray. The State of Arkansas which has a history of official racism as recognized by the court in *L.R.S.D. v. P.C.S.P. School*, 56 F.3d 904, 911 (8th Cir. 1995) seeks to continue that legacy through the use of Act 60 under the guise that it is attempting to bring about integration or avoid increasing segregation in the already "segregated" public school systems of Phillips County.

The communication between the Attorney General's office and the state school board defendants would appear on a surface to be an effort by the state to avoid discrimination when, in effect, it is the vehicle by which it has engineered the present discrimination against the plaintiffs, the plaintiffs' former school district and all other

17

African-American school districts affected by the consolidation activities of the state since *Lake View III*. Rather than integrate the monies of the state treasury so that Lake View may be maintained at least once in its existence on an equal financial footing with other school districts, the state has unconstitutionally mandated now to integrate Lake View with Barton-Lexa and to do the same to other African-American school districts in this state so that there will be an elimination of predominance of African-Americans in any given school district and rearranged continuation of dominance of whites in most of those affected by Act 60.   There is no constitutional mandate to integrate.   *North Carolina State Board of Education v. Swann,* 422 U.S. 43, 46 (1971).  Integration is not a constitutional command and one race schools which are not the result of past segregation most not be destroyed because of the state's responsibility to equitably finance is one of the messages of *Swann.*

In the instant cause the legislation did not tailor the remedy to cure the under-financing of Lake View School District and plaintiffs' children to the violations that were found in *Lake View v. Huckabee I, II, or III.*  The requirements in the Lake View cases that equity and adequacy must be afforded to the plaintiffs at Lake View has been used as a tool to deal a death blow to the plaintiffs' school district in violation of *Swann.*  The Lake View School District has never been determined by court order to be a creation of segregationists' laws.  Lake View was not involved in any of the cases in which the federal court in the 60s and 70s in Eastern Arkansas ordered desegregation.  Lake View was necessary from the beginning because it was a population center and while whites were in the general area of the Lake View School District, state law afforded them an opportunity to discrimination in their selection of schools based on race and that racially

discriminatory selection was permitted by combination of state law, racial ignorance and prejudice. If there are equities available in the law, certainly the plaintiffs in this case have made an overwhelming case that they be provided to them.

Therefore, at request of the Court would issue *sua sponte* a Preliminary Injunctive Relief requiring: (a) that the State of Arkansas would fully finance the Lake View School system for the year of 2005-06 school year at the level of funding appropriate to constitutional standards; (b) that it immediately rescind the non renewal of staff contracts; (c) that it would allow the Lake View School District to operate independent of the Barton-Lexa School District during the interim of the lawsuit presently before the court; (d) that it would reinstate the authority of the elected Lake View School District which was in place prior to the insertion of Act 60; (e) that it would stay the application of any and all other laws that may apply to render Lake View incapable of operating on the same basis as any of the other active school districts within the state. Plaintiffs ask for attorney fees, costs and all other relief that the court deems appropriate.

Respectfully submitted,

J. L. WILSON
Attorney for Plaintiffs

J.L. WILSON, Bar No.73-128
521-523 Plaza
West Helena, AR  72390
Phone (870) 572-1533
Fax (870) 572-4392

## CERTIFICATE OF SERVICE

I, J.L. Wilson, do hereby certify that I have served a copy of the above and foregoing pleading upon the attorney(s) of record and the court by placing a copy of same in the U.S. Mail, or hand delivery.

19

Colette D. Honorable
Assistant Attorney General
323 Center Street, Suite 1100
Little Rock, AR  72201

On this 7th day of June 2005.

J. L. WILSON

UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

# *Exhibits Attached to Original Document in Courts's Case File*