UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
HELENA DIVISION

FRIENDS OF THE LAKEVIEW SCHOOL DISTRICT
INCORPORATION NO. 25 OF PHILLIPS COUNTY, et al.                    PLAINTIFFS

v.                                  No. 2:04CV184 GH

MIKE HUCKABEE in his official capacity, as Governor
Of the State of Arkansas                                            DEFENDANTS

### DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Defendants submit this response to plaintiffs' pending motion for a preliminary injunction.

In mid-2004, acting pursuant to Arkansas Act 60 of the 84th General Assembly (Second Extra. Session), the State Board of Education ordered that the former Lake View School District No. 25 of Phillips County ("Lake View") be administratively consolidated with the Barton-Lexa School District. The order, issued May 28, 2004, created the new Barton-Lexa School District, effective July 1, 2004. See Complaint, Exhibit 4A. Shortly thereafter, and also pursuant to Act 60, the State Board of Education appointed an interim school board for the new district that resulted from the consolidation and appointed the interim board members. See Exhibit 2 to Motion for Preliminary Injunction. While during the 2004-2005 school year the K-12 campus of the former Lake View district remained open, the Superintendent of Barton-Lexa apparently notified parents that "[b]eginning with the 2005-06 school year most likely the Lakeview [sic] campus will be closed and all students will come to the Barton campus." See Exhibit 6 to Motion for Preliminary Injunction (Letter from Superintendent Kirkland).

In early April, the Superintendent evidently notified personnel, pursuant to the Arkansas Teacher Fair Dismissal Act, that he would recommend that certain contracts not be renewed for the 2005-06 school year due to the anticipated closure of the former Lake View K-12 campus. See Exhibit 5 to Motion for Preliminary Injunction.[1] On April 12, 2005, the Barton-Lexa School Board voted to close the former Lake View campus, to move those students who might have attended the Lake View campus to the Barton campus for the 2005-2006 school year, and to transfer ownership of the Lake View campus to the city of Lake View if such was permitted by law.[2]

Two months after the Barton-Lexa Board voted to close the former Lake View campus, on June 13, 2005, plaintiffs filed the present motion for a preliminary injunction. Although the opening paragraph of the motion suggest that plaintiffs seek an order "enjoining the defendants . . . in furtherance of the execution and implementation of Act 50 and Act 60," it is plain from the conclusion of their brief that in reality what plaintiffs appear to seek is, among other things, an order directing the new Barton-Lexa School District and its officials and board members to maintain, staff, and operate the former Lake View campus during the upcoming school year.

To obtain preliminary injunctive relief, plaintiffs would ordinarily bear a heavy burden of establishing that "the balance of equities so favors [them] that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). Here, however, plaintiffs do not

---

[1] The plaintiffs, on information and belief, allege that all but three of the staff from the former Lake View campus were terminated. See Affidavit of Henrietta J. Wilson and Linell Lewis, ¶ 4.

[2] One of the named plaintiffs in this action, Ms. Henrietta Wilson, appears to be a member of the Barton-Lexa School Board. According to the minutes, Ms. Wilson was absent from the April 12, 2005 regular board meeting at which the local Board decided to close the Lake View campus. See Exhibit 4 to Motion for Preliminary Injunction.

seek to maintain the status quo; in fact, they want the Court to upset the status quo. The complaint in this action was filed *after* the State Board consolidated the former Lake View school district into the Barton-Lexa district and created the new school district and board; the instant motion for preliminary injunctive relief was not filed until two months *after* the Barton-Lexa school board voted to close the Lake View K-12 campus buildings and to send children that might have attended the Lake View campus to attend schools elsewhere in the district during the upcoming year; and the instant motion was filed two months *after* employees were evidently notified that their contracts would not be renewed for the next year due to the closing of the Lake View campus. Plaintiffs thus have a higher than usual burden to satisfy, not only because they seek to upset (instead of maintain) the status quo, but also because the injunctive relief they seek would give the plaintiffs (at least temporarily) the ultimate relief they seek in this case. *See Rathmann Group v. Tanenbaum*, 899 F.2d 787, 790 (8th Cir. 1989).[3]

As an initial matter, the motion should be denied because plaintiffs seek relief that directly impacts others who should be, but are not, parties to this case. The only named defendants in this action are the Governor, the Director (now Commissioner) of the Arkansas Department of Education, the members of the State Board of Education (all in their "official" capacities only), and the State of Arkansas. Neither the new Barton-Lexa School District, its superintendent, nor any of its board members are named as defendants in this action. Yet the relief plaintiffs seek in the motion – specifically, an order rescinding decisions made by Barton-

---

[3] Plaintiffs' delay in bringing this motion is sufficient, by itself, to justify denying it. Preliminary injunctions are ultimately an equitable remedy, and equity does not favor one who sleeps on her rights. Unexplained delay in bringing a motion for preliminary injunction "may indicate the absence of the kind of irreparable harm required to support a preliminary injunction," *Citibank N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985), and delay "may be fatal to a claim of irreparable harm and is always an important factor in determining the suitability of extraordinary relief . . . ." *Flexible Technologies, Inc. v. World Tubing Corp.*, 910 F.Supp. 109, 113 (E.D.N.Y. 1996).

Lexa's school officials and Board concerning the closing of the former Lake View campus and the employees who formerly worked on the Lake View campus – is relief that directly impacts persons and entities that are not parties to this case. Plaintiffs appear to be operating under the assumption that the Barton-Lexa Board and/or its Superintendent are "agents" of the State, but quite the contrary is true – school districts in Arkansas are semi-autonomous political subdivisions, and thus do not share the State's sovereign immunity. See, e.g., *Delta Special School District No. 5 v. State Board of Education*, 745 F.2d 532 (8th Cir. 1984); *Crenshaw v. Eudora School District*, ___ Ark. ___, ___ S.W.3d ___, (Ar. S. Ct.) (Slip. Op. May 12, 2005). The new Barton-Lexa district and its Superintendent and Board are thus necessary parties under Fed. R. Civ. P. 19(a)(1) and 19(a)(2)(i). For this reason alone, plaintiffs' motion for preliminary injunction should be denied.

However, even if plaintiffs had joined all proper parties to this case in light of the relief they seek and, even if plaintiffs had filed their request for preliminary injunctive relief *prior to* the actions by the Barton-Lexa district rather than two months after the action, the plaintiffs' motion is nonetheless without merit. Under the *Dataphase* standard, the Court must consider: (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction would inflict on other litigants; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Id.* at 114. Considering each of these factors, individually and collectively, mandates that the plaintiffs' motion be denied.

First, the plaintiffs have not demonstrated that they will suffer irreparable harm. "[T]he absence of a finding of irreparable injury is alone sufficient ground" to deny a preliminary injunction. *Dataphase, supra*, 640 F.2d at 114 fn.9; *see also Harris v. United States*, 745 F.2d 535 (8th Cir. 1984); *Roberts v. Van Buren Public Schools*, 731 F.2d 523, 526 (8th Cir. 1984)

4

("We recognized that in all cases the movant is required to show the threat of irreparable harm . . . ."); *Bandag, Inc. v. Jack's Tire & Oil*, 190 F.3d 924, 936 (8th Cir. 1999) ("[T]o warrant a preliminary injunction, the moving party must demonstrate a sufficient threat of irreparable harm."). "In isolation, of course, the likelihood that plaintiff ultimately will prevail is meaningless . . ." *Glenwood Bridge, Inc. v. City of Minneapolis,* 940 F.2d 367, 371 (8th Cir. 1991)(*quoting Dataphase*, 640 F.2d at 113 )(internal quotes omitted). "Thus, we have held that the movant's failure to sustain its burden of proving irreparable harm ends the inquiry and the denial of injunctive relief is warranted." *Id.* (cites and internal quotes omitted).

It appears that plaintiffs' claim of "irreparable harm" is based chiefly upon a conclusory (and, incorrect) contention that they have a "right" to have a separate and autonomous school district encompassing their community (and their community only) and a specific school campus located in their community. See Brief in Support of Motion for Preliminary Injunction, pp. 6-7. However, as is explained more fully in defendants' pending motion to dismiss, it has long been recognized that there is no federal constitutional or statutory "right" to maintain "local control" of school districts or to maintain or preserve the identity of a school district or a political subdivision. *See, e.g., Kies v. Lowery*, 199 U.S. 233 (1905) (citing *Laramie County v. Albany County*, 92 U.S. 307 (1875)); *Mirrione v. Anderson*, 717 F.2d 743, 744, 746 (2d Cir. 1983) ("[N]either federal statutes nor the Constitution assures any voter that the portion of the community in which he lives will not be separated from the rest of his community and joined with neighboring areas in the formation of an election district. . . .[W]e have found no case that would make the observance of town lines or boundaries of unofficial communities a mandatory consideration under either the Voting Rights Act or the Constitution."). Indeed, the Supreme Court has long recognized "the extraordinarily wide latitude that States have in creating various

5

types of political subdivisions and conferring authority upon them." *Holt Civic Club v. Tuscaloosa*, 439 U.S. 60, 71 (1978).

Consideration of the second factor – balancing the plaintiffs' alleged injury and the injury that granting the injunction would inflict on other litigants – also mandates that the motion be denied. There is no contention that the plaintiffs' children will not be allowed to attend a free, public school next school year within the Barton-Lexa district if they so choose, and while plaintiffs appear to prefer that their children attend the former Lake View campus, there is no evidence (other than mere allegations of counsel) that their children will suffer any comparative harm or otherwise have their educational needs ignored if they attend school elsewhere in the district. On the other hand, should the Court grant the relief the plaintiffs seek, the Barton-Lexa Board and administration will have to quickly plan to reopen and restaff a school campus it previously decided to close, if such a feat is even possible, after it has already notified employees of that former campus as to whether they will be employed for the next school year, and if so, in which schools. The more extreme form of relief plaintiffs seek – the temporary "reestablishment" of the former Lake View School District (presumably including also the "reestablishment" of its former Board) – would appear to invite even greater chaos and confusion. Clearly, any "balancing" militates conclusively in favor of denying the plaintiffs' motion.

As to the third factor -- probability that the movants will succeed on the merits -- the defendants have already addressed and briefed these issues in connection with their pending motion to dismiss and brief in support of that motion, which are still pending before the Court. The defendants will not repeat those arguments here, but incorporate them by reference. Plainly, there is no merit to this lawsuit. While plaintiffs may desire a school district encompassing their

6

own "community" (and their own "community" alone) and may desire their own small educational campus in their own community, there is no federal constitutional or statutory entitlement to such.

Finally, it is not in the public interest to grant plaintiffs any of the relief they seek. As noted, the State's authority and wide latitude to create or consolidate political subdivisions and confer authority upon them has been well-recognized. The former Lake View district ceased to exist more than one year ago, and educational officials of the new Barton-Lexa district have clearly already made plans for the upcoming school year. Surely no one can reasonably contend that forcing the district to "reopen" a campus it already decided to close, try to rehire staff that has already been told that they will need to seek employment elsewhere or hire new staff to replace them, etc., would serve the public interest, especially in the absence of any proof that the plaintiffs' children (and others who live in the geographic area that comprised the former Lake View district) cannot or will not otherwise receive a free public education at other campuses in Barton-Lexa.

For the foregoing reasons, defendants respectfully request that plaintiffs' motion for preliminary injunction be denied.

        Respectfully submitted,

        MIKE BEEBE
        ATTORNEY GENERAL

By: /s/ Colette D. Honorable, Assistant Attorney General
     Bar Number 96016
     Timothy G. Gauger, Senior Assistant Attorney General
     Bar Number 95091
     Attorneys for Defendants
     Arkansas Attorney General's Office
     323 Center Street, Suite 1100
     Little Rock, AR 72201
     E-mail: colette.honorable@arkansasag.gov
     E-mail: timothy.gauger@arkansasag.gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to the following:

J.L. Wilson    attorneyjlwilson@cox-internet.com

     /s/ Colette D. Honorable, Assistant Attorney General
     Bar Number 96016
     Attorney for Defendants
     Arkansas Attorney General's Office
     323 Center Street, Suite 1100
     Little Rock, AR 72201
     E-mail: colette.honorable@arkansasag.gov