IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

FRIENDS OF THE LAKEVIEW SCHOOL DISTRICT
INCORPORATION NO. 25 OF PHILLIPS COUNTY, ET AL.                    PLAINTIFFS

v.                          No. 2:04CV00184 GH

MIKE HUCKABEE, IN HIS OFFICIAL CAPACITY,
AS GOVERNOR OF THE STATE OF ARKANSAS, ET AL.                      DEFENDANTS

**ORDER**

On October 25th, plaintiffs filed a complaint for declaratory judgment, injunctive relief, remedial and monetary relief and all other proper dispositions. They state that they are all residents of the Lakeview School District No. 25 of Phillips County ("District") and are either (a) taxpayers without children or wards actually going to school in the District; (b) taxpayers with children or wards attending school in the District; (c) patrons of the District; (d) parents of children attending the District; or (e) duly elected board members of the District. For their causes of action, plaintiff assert that Act 60 of the Second Extraordinary Session of the Arkansas General Assembly of 2003 violates the 1964 Civil Right Act and the equal protection and due process clause of the Fourteenth Amendment of the United States Constitution; voting rights violation; Act 60 is unconstitutionally vague and overboard; Act 60 violates the constitutional prohibition against illegal exaction and taxation without representation; Act 60 deprives plaintiffs of equal protection under federal law; specific violation of Title VI of the Civil Right Act of 1964; Act 59 and Act 60 unconstitutionally denied them prevailing party status; Act 59 is unconstitutional per se and in its implementation;

-1-

injunctive relief to permanently enjoin enforcement of Act 60; declaration that Article 14 of the Arkansas Constitution, Amendment 40, Amendment 59 and Amendment 74 are unconstitutional; and violation of the separation of powers' doctrine.  Among their prayer for relief, they ask that the present system of public funding for schools be declared unconstitutional; recompense the plaintiffs and the District an amount of funding that would equate to the average funding level of white school districts/students without a statute of limitations from 1938; find that the District property is the private asset of the District and not force consolidation or seizure absent due process; find Act 59 and Act 60 unconstitutional; institute studies regarding educational needs; and stay any further execution of Act 60.

Defendants filed a motion on December 15th to dismiss asserting that the claims based on the Arkansas constitution and laws are barred by sovereign immunity; the §1983 claims against the state and the Governor are barred by sovereign immunity; the §1983 claims against the Governor present no justiciable case or controversy; lack of standing to assert violations of the Voting Rights Act; complaint fails to state a claim upon which relief can be granted; and lack of subject matter jurisdiction under the Rooker-Feldman doctrine or, in the alternative, barred by res judicata.

On March 15th, plaintiff responded the Eleventh Amendment does not bar declaratory and injunctive relief and the compensation requested is ancillary to enforcement that relief; §1983 claims can be brought against state officials in their official capacity for prospective injunctive relief; the Governor is the executive branch through the Department of Education authorized by statute to implement Act 60; immunity has been waived by the state's acceptance of federal funds under Title VI; they have standing under the Voting Rights Act by being within the zone of interest due to having fewer opportunities to elect candidates of their choice; there has been a waiver of sovereign

immunity; and <u>Rooker-Feldman</u> does not apply as the state courts have not reached a decision on the merits as to Act 59 and Act 60, voting rights or taking of property.

Defendants filed a reply on March 31st that prospective injunctive relief is permitted in only very limited circumstances and defendants have not waived their Eleventh Amendment immunity; a state is not a person under §1983, damages are being sought, and Title VI abrogation of immunity does not extend to §1983 actions; the Governor has no direct authority over the execution or enforcement of school laws and so there is no special relation to Act 60 and no actual controversy with him; this Court recently recognized that an allegation of diminished influence in local school board matters as a result of consolidation is not sufficient to place a party in the zone of protected interests under the Voting Rights Act; there is no basis for plaintiffs to litigate the rights of the District; and plaintiffs were afforded multiple opportunities to litigate their claims and did so.

On June 13th, plaintiffs filed a motion for preliminary injunction to prevent further execution and implementation of Act 59 and Act 60 by requiring the State of Arkansas to fully finance the Lakeview School system for the year 2005-06 at the level of funding appropriate to constitutional standards; immediately rescind the non renewal of staff contracts; allow the District to operate independent of the Barton-Lexa School District ("Barton-Lexa" or "Barton") during the interim of the lawsuit; reinstate the authority of the elected District which was in place prior to the insertion of Act 60; and stay the application of any and all other laws that may apply to render the District incapable of operating on the same basis as any other active school districts within the state. They state that they objected to the closing of the District at a hearing conducted on May 17, 2004, but the District was consolidated with the Barton-Lexa School District, the school campus of which is 15 plus miles away, where the students are overwhelmingly majority white and almost completely

Caucasian in its staffing and administration with the emphasis being Eurocentric and only one African-American board member out of seven.

Plaintiffs assert irreparable harm to their constitutional rights by the closing of the school as it will eliminate from their control and direction the educational guidance available through the maintenance of the District; the children's self-esteem, ethic pride, psychological balance and ability to receive an education will be destroyed; and money damages cannot compensate for the closing of the District in their claim that they are entitled to uninterrupted maintenance of that facility, even a short period of closure would destroy continuity of the faculty, staff and established teaching patterns and educational goals and damage to the physical structure.

As to likelihood of success, plaintiffs contend there is a very high likelihood of success referring to their arguments here and the attached exhibits and pointing out that on the issue of inequity of the taxes paid by Lake View as opposed to Barton-Lexa there is no argument that the imbalance is unconstitutional just as there are no serious contention that the voting rights have been seriously diluted by Act 60.  They continue that a likelihood of success as to lack of due process in the District's property being confiscated and the administration of Act 60 violates equal protection.

Addressing the balancing of equities, plaintiffs argue there are no equities in allowing defendants to close the District and take their property without due process, allow white voters to maintain dominance over the voters in the District, required the people of the District to pay more taxes within the consolidated district, requiring the District's students to travel long distance, to allow the destruction of the African-American staff at the District and the transfer of students to basically a foreign teaching staff..  They assert that they are being punished for prevailing in the state lawsuits as to financial equity and adequacy.

As to the factor of public interest, they argue that there is no public interest in enforcing state laws on a totally racial discriminatory basis.

Attached to the brief is an affidavit by Henrietta J. Wilson and Linell Lewis approving the factual allegations in the complaint and continuing that based upon the best information that all the staff of the District except three staffers have been fired due to the consolidation, that the District school campus is to be closed pursuant to the April 12th Barton-Lexa board minutes; the curriculum will remain exclusive of African American academic subject matter; each child from the Lake View community who attended Barton-Lexa in the 2004-05 school year suffered academic, social and disciplinary problems which affected their educational achievements; as a result of the September 2004 school board election, Lake View citizens have paid a higher rate of taxes than the citizens of the Barton-Lexa District 2003-2005; the consolidation eliminated representation in the school board as a practical matter; and that under Act 60 the state defendants are again empowered to select who would represent the District.  Also as exhibits are the real and personal taxation chart for Phillips County school millages 2004-2005; the order establishing the interim board, a listing of chartered schools; minutes of the Barton-Lexa school district of April 12, 2005; exemplars of non-renewal letters to District staff; letter from the Barton-Lexa Superintendent after consolidation that in 2004-05 Lake View school would remain at Lake View with only those students who want to attend Barton would come, but beginning with 2005-06 most likely the Lake View campus will be closed with all students coming to the Barton campus and that the racial make-up would be approximately 61.5% white and 38.5% black; a hate letter received by the District after consolidation; the procedure for consolidation; a copy of the Arkansas Attorney General opinion via the District's consolidation; a memo allegedly indicating bias by the state school board members to certain small

school districts; order of consolidation of the District; and examples of election returns illustrating block voting.

Defendants responded on July 11th that plaintiffs are not wanting to maintain the status quo, but instead to upset the status quo as this complaint was filed after the state board consolidated the District into the Barton-Lexa district, the motion was not filed until two months after the Barton-Lexa board voted to close the District's campus buildings and after employees were notified that their contracts would not be renewed so that the relief they are seeking is the ultimate relief sought by the lawsuit itself. They contend that the Barton-Lexa school district and its officials should be named as defendants since a preliminary injunction would rescind their decisions.

Defendants argue that plaintiffs have not demonstrated irreparable harm as their contention that they have a right to a separate school district and a specific campus is not supported by the law as discussed in the motion to dismiss. In balancing the alleged injury with the injury resulting from an injunction, while plaintiffs' children will not be attending the campus of their choosing, the granting of relief would result in the Barton-Lexa board and administration having to quickly reopen and restaff a campus when the employees have already been notified as to whether they would be employed and what campus and the reestablishment of the District would create greater chaos and confusion.

Defendants incorporate their arguments contained in the motion to dismiss as to the factor of probability that plaintiffs will succeed on the merits. Finally, they argue that it is not in the public interest to grant relief as the District ceased to exist more than one year ago and the new district has already made plans for the upcoming school year.

On July 26th, plaintiffs filed a reply that defendants have not submitted counter exhibits nor that there were promises that the campus would not be closed. They state that the Barton-Lexa district only has the power to close the campus because of state authority and action and the promise of non-closing came in 2005 after the filing of the lawsuit. Plaintiffs contend that they are requesting the independent operation of the campus be maintained so continuity would not be destroyed and the students, parents and taxpayers suffer irreparable harm. They state they had no reason to file a lawsuit until consolidation was ordered on May 17, 2004 over the District's protest and Barton-Lexa is not a necessary party since it has no interest to protect separate from defendants and it was one of the school districts that presently petitioned the Arkansas Supreme Court.

Plaintiffs argue that closing down one through twelfth grade at the campus, transporting students, ending all local tax support, causing deterioration of the physical structure, maintaining an unequal tax system, and immeasurable damage to the voting rights demonstrate irreparable harm. They continue that there is nothing to prevent the Court from deciding the ultimate issue in the context of a preliminary injunction.

In its August 12th order scheduling the hearing on the motion for preliminary injunction, the Court set out the following excerpt from the June 9th opinion of the Arkansas Supreme Court in <u>Lake View School Dist. No. 25 of Phillips County, Arkansas v. Huckabee</u>, ____S.W.3d _____, 2005 WL 1358308 (2005) that stated:

> On May 5, 2005, this court issued a per curiam order setting the various motions to recall the mandate and reappoint the masters for oral argument. Forty-nine school districts were represented as either movants for the recall of the mandate or movants for intervention or as amici curiae. We asked that the parties focus their attention on these issues in rebriefing and at oral argument:
>
> (1) this court's jurisdiction to hear the instant motions;

>   (2) whether the General Assembly at its 2005 regular session retreated from its prior actions to comply with this court's directives in Lake View Sch. Dist. No. 25 v. Huckabee, 351 Ark. 31, 91 S.W.3d 472 (2002), particularly with respect to the General Assembly's actions or inactions in relation to Act 57 and Act 108 of the Second Extraordinary Session of 2003;
>   (3) whether the foundation-funding levels for the next biennium assure a continual level of adequate funding for Arkansas students; and
>   (4) whether the General Assembly's commitment to facilities funding meets the adequacy criterion.

Oral argument was then held on May 19, 2005.

We first conclude that this court has jurisdiction to recall its mandate and appoint masters to make findings of fact.  See Lake View Sch. Dist. No. 25 v. Huckabee, 355 Ark. 617, 142 S.W.3d 643 (2004) (per curiam ).  See also Ark. Const. amend. 80, § 2(E).

We further made it radiantly clear in our supplemental opinion handed down on June 18, 2004, that although we were releasing jurisdiction of the case, we reserved the right to exercise our power at any time to assure that a constitutional system of education would be attained:

>   ... The resolve of this court is clear.  We will not waver in our commitment to the goal of an adequate and substantially equal education for all Arkansas students; nor will we waver from the constitutional requirement that our State is to "ever maintain a general, suitable, and efficient system of free public schools[.]"  Make no mistake, this court will exercise the power and authority of the judiciary at any time to assure that the students of our State will not fall short of the goal set forth by this court.  We will assure its attainment.

Lake View Sch. Dist. No. 25 v. Huckabee, --- Ark. ----, ----, --- S.W.3d ----, ---- (June 18, 2004) (emphasis added).

The allegations made by the movants in this case are of the most serious kind.  The core assertions are that the General Assembly reneged on its legislative commitments and failed to comply with the landmark legislation passed during the Second Extraordinary Session in 2004.  We are quick to add that we do not have adequate facts before this court to determine whether this is so.  We merely underscore the seriousness of the allegations, but we further emphasize that they are only allegations.

The response of the State of Arkansas, both in its briefs and at oral argument, is first to deny any backtracking on the part of the General Assembly, but, secondly, to urge that even if there has been backtracking, a new case must be filed in circuit court, and litigation must begin anew.  We are disinclined to agree with the State.  This court's determination that Arkansas' public school funding system does not pass constitutional muster dates back

twenty-two years. See DuPree v. Alma Sch. Dist. No. 30, 279 Ark. 340, 651 S.W.2d 90 (1983). Resolution of the issue has moved at glacier speed. There is no question in our minds that our failure to address the issues raised in the current motions with dispatch by using experienced Masters will only occasion additional delay. This we cannot sanction.

In our opinion handed down on June 18, 2004, we wrote about the laudable steps taken by the General Assembly to chart a constitutional course. This court is committed to assuring that that course remains fixed and true.

We, therefore, recall our mandate in this case forthwith and reappoint Bradley D. Jesson, former Chief Justice of the Arkansas Supreme Court, and David Newbern, a former Justice of the Arkansas Supreme Court. The Masters shall have the same powers and authority as set forth in Lake View Sch. Dist. No. 25 v. Huckabee, 356 Ark. 1, 144 S.W.3d 741 (2004) (per curiam). The Masters are authorized to examine and evaluate the issues listed in this opinion, but also any other issue they deem relevant to constitutional compliance.

We direct that the Masters furnish this court with their report on or before September 1, 2005, unless the Masters request additional time.[1]

After quoting from the June 9th opinion, this Court asked the parties to address the impact of the recent action by the Arkansas Supreme Court in withdrawing its 2004 mandate and reappointing Masters on the claims raised by this case at the August 22nd hearing including the matter of abstention.

A hearing was held on August 22nd on the plaintiffs' motion for preliminary injunction at which time the Court received testimony from four witnesses as well as argument of counsel. The Court took the matter under advisement pending receipt of certain exhibits to be provided by counsel. As the Court received the minutes of the State Board's May 17, 2004 minutes as well as the transcript of that meeting on August 23rd, the Court now issues this decision.[2]

---

[1] By order filed on August 3rd, the time for the Masters to furnish their report was extended to October 1, 2005 by the Arkansas Supreme Court.

[2] A review of the May 17, 2004 hearing transcript reveals that the members of the State Board were deliberative in their decision to consolidate the Lakeview District with the Barton-Lexa District. Neither counsel has been able to locate a copy of the desegregation order

At the start of the hearing, counsel addressed the issue of abstention. Plaintiffs' counsel stated that both counsel "had agreed and stipulated that this issue presently before the Court is not a matter that can be taken up by the Arkansas Supreme Court, that it is not a matter that has ever been litigated in any action below that is to be considered by the Arkansas Supreme Court in its recall and that this matter is of first impression to this Court and this Court only and that this matter is right for this Court's consideration" as there had never been an issue relating to consolidation in the state proceeding and the Arkansas Supreme Court has not taken into consideration the issue of consolidation or the unconstitutionality of Act 60. He continued that "[a]s a matter of fact in the latest recall the Arkansas Supreme Court specified not only in its order, but in subsequent dictates to counsel the restricted area of its concern and the matter before this Court is not included." Plaintiffs' counsel further argued that there is a very limited area in which the Arkansas Supreme Court can take up original jurisdiction of issues and the question of school funding is not one of them.

Defendants' counsel agreed with the ultimate conclusion of plaintiffs' counsel, but differed with the details. He stated that it was incorrect that the issue of Acts 59 and 60 was not before the Special Masters when they were appointed after the legislative session in early 2004 and that the Masters had indeed been urged to find Act 60 unconstitutional, but "the Supreme Court when it relinquished jurisdiction pretty much [said] it wasn't going to oversee that area; that was something that was in the purview of the general assembly."

He continued:

---

involving Brinkley referred to by plaintiff's counsel that the Court requested.

>But with regard to Act 60 there are a couple things that have changed somewhat. Number one because the Lakeview school district was dissolved it no longer exists, the Special Masters and court have treated the Barton-Lexa school district into session Lakeview was consolidated as the substitute class representative as the successor in interest if you will to the Lakeview school district and no party has yet before the Special Masters made any sort of challenge to Act 60.
>
>And really in a sense, Your Honor, as I understand the reappointment of the Masters that's on going right now the primary focus was to be an evaluation of the actions that the general assembly took in its most session. And of course there was no action on school consolidation during the most recent session. So if Your Honor is concerned about interfering with what the masters are looking at right now I agree with Mr. Wilson that Act 60 is not on the table in those state court proceedings. Now, I may be surprised and sometime between now and next week when we start hearings somebody might raise it but nobody has to date.

In the August 12th order, the Court made reference to the case of Aaron v. Target Corp., 357 F.3d 768 (8th Cir. 2004) as it involved issues of preliminary injunction and abstention. The appellate court stated, at 774-778, the following:

>The threshold question in this case is whether the district court abused its discretion by declining to abstain and instead proceeding to enjoin the parties from going forward with the eminent domain action. Under Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), federal courts should abstain from exercising jurisdiction in cases where equitable relief would interfere with pending state proceedings in a way that offends principles of comity and federalism. Accord Night Clubs, Inc. v. City of Fort Smith, 163 F.3d 475 (8th Cir. 1998). The motivating force behind Younger abstention is the promotion of comity between state and federal judicial bodies. See Cedar Rapids Cellular, 280 F.3d at 881. The Younger doctrine was originally applied to state criminal proceedings, see, e.g., Hicks v. Miranda, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975), and later extended to civil cases. See, e.g., Moore v. Sims, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (child abuse litigation); Trainor v. Hernandez, 431 U.S. 434, 444, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (welfare fraud action); Huffman v. Pursue, Ltd., 420 U.S. 592, 594, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (obscenity regulation).
>
>In Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), the Supreme Court identified several factors that should lead to abstention under Younger: (1) the existence of an ongoing state judicial proceeding, (2) which implicates important state interests, and (3) which provides an adequate opportunity to raise constitutional challenges. See also Silverman v. Silverman, 267 F.3d 788, 792 (8th Cir. 2001).

Whether there is an ongoing state judicial proceeding that would be disrupted by the federal action is the first Middlesex inquiry. See Alleghany Corp. v. McCartney, 896 F.2d 1138, 1143 (8th Cir. 1990). Permitting issues before a state court to be litigated in a federal forum instead could be "quite costly" to the comity and federalism interests which Younger seeks to protect. Huffman, 420 U.S. at 605-06, 95 S.Ct. 1200. See also Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 11, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987); Yamaha Motor Corp. v. Riney, 21 F.3d 793, 797-98 (8th Cir. 1994).

\*\*\*\*

The second Middlesex requirement is that the ongoing state proceeding involve an important state interest. Eminent domain proceedings have long been recognized as an important state interest. See Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 28, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) (eminent domain is "intimately involved with state prerogative"). See also Edwards v. Arkansas Power & Light Co., 683 F.2d 1149, 1156 (8th Cir. 1982) (important state interests in eminent domain proceedings make abstention particularly appropriate). There is no dispute here that condemnation proceedings meet this test, and the district court properly so held.

The third Middlesex factor is whether the state proceedings are adequate. Appellants argue that the Missouri eminent domain proceedings are adequate because they provide sufficient discovery rights and permit the raising of all claims plaintiffs assert in this federal action. The property owners disagree and argue that discovery is limited in the state case in which they would be unable to raise all of their issues, especially the claim that the private use taking was unconstitutional.

Even if the Middlesex factors are met, federal courts should not abstain under Younger if " 'bad faith, harassment, or some extraordinary circumstance ... would make abstention inappropriate.' " Night Clubs, Inc., 163 F.3d at 479 (quoting Middlesex, 457 U.S. at 435, 102 S.Ct. 2515).

\*\*\*\*

While the Supreme Court has not ruled out use of the bad faith exception in civil cases, see Huffman, 420 U.S. at 611, 95 S.Ct. 1200, it has never directly applied the exception in such a case, and we have only recognized it in the criminal context. See Lewellen v. Raff, 843 F.2d 1103, 1109-10 (8th Cir. 1988). Such an exception must be construed narrowly and only invoked in "extraordinary circumstances." Younger, 401 U.S. at 53-54, 91 S.Ct. 746.

During the August 22nd hearing, the Court expressed its concerns – given the requested relief for the Lakeview campus to be reopened – whether the Barton school district would be a necessary party. Plaintiffs argued that what they were seeking was for the Court to order the state to reopen

-12-

the Lakeview campus and that Barton was merely a puppet of the state without any authority to do anything. Defendants countered that Barton was needed as a party since there was only a one-year period under Act 60 in which a consolidated school could not be closed, but that after the expiration of that period, it was up to the local school board to decide whether a particular school would be kept opened or would be closed. They continued that the decision of the Barton school board was implicated since the board voted to close the campus and would be the entity to have to find teachers, put equipment backs in the building that was removed to Barton and try to get the Lakeview campus up and running again.

The Court notes that Ark. Code Ann. §6-13-620 (Supp. 2005) provides that the board of directors for each school district in the state has "the care and custody of the schoolhouse, grounds, and other property belonging to the district" and the power and duty to purchase, rent and sell schoolhouses and sites; employ teachers and other necessary employees, and buy necessary supplies for the efficient operation of the schools. Ark. Code Ann. §6-21-108 (Supp. 2005) specifically empowers a school district to acquire, hold and donate real estate.

In determining whether to grant a preliminary injunction or a temporary restraining order under Civil Procedure Rule 65, the Court must consider (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest. <u>Dataphase Systems, Inc. v. C L Systems, Inc.</u>, 640 F.2d 109, 114 (8th Cir. 1981).

Although both counsel argued that the current proceedings before the Arkansas Supreme Court do not involve the issues before this Court, the Court is convinced that the June 9th order recalling the mandate, reappointing the Special Masters and authorizing them "to examine and

evaluate the issues listed in this opinion, but also any other issue they deem relevant to constitutional compliance" does implicate at least some of the issues here.[3]  As stated by the Supreme Court of the United States in Moore v. Sims,  442 U.S. 415, 426, 99 S.Ct. 2371, 2379 FN 10 (1979):

> Likewise, there is little in our case law or sound judicial administration to commend the suggestion that Younger should have been invoked with respect to some of the claims in this case and others should have been left to the federal forum.  Post, at 2387-2388.  Given the interrelated nature of the claims, such a bifurcation would result in the duplicative litigation and lack of state-court interpretation of an integrated statutory framework that this Court, in Trainor v. Hernandez, supra, 431 U.S., at 445, 97 S.Ct., at 1919, identified as central concerns underlying the Younger doctrine.

There is certainly an ongoing state judicial proceeding before the Arkansas Supreme Court. That litigation, which has continued in some form since1992, clearly implicates important state interests of funding for public education.  The Court is not persuaded, at this point, that forum does not provide an adequate opportunity to raise constitutional challenges given the broad mandate of the Special Masters and the clear commitment of the Arkansas Supreme Court to constitutional compliance.

Inasmuch as the Court is persuaded that the issues asserted by plaintiffs in their request for preliminary injunction are interrelated, a bifurcation of the issues would result in duplicative litigation as well as depriving the Arkansas Supreme Court of the opportunity to deal with important state interests.  Accordingly, the Court invokes the Younger doctrine and abstains at this time.  It is suggested that plaintiffs petition the Arkansas Supreme Court to consider their claims in that context.

---

[3]The Court notes that the Arkansas Supreme Court declined to agree with the positions raised by the state.

Moreover, even when the Court addresses the merits of plaintiffs' motion for preliminary injunction, the Court is unable to find that plaintiffs are entitled to the relief they seek. The Court is not persuaded that plaintiffs will indeed suffer <u>irreparable</u> harm. While the Court acknowledges that plaintiffs want the District's campus to remain open, the Court cannot say that irreparable harm will occur if the campus remains closed. The students have the opportunity to attend school albeit not the choice of some. Indeed, the hearing testimony shows that the students have even more academic units available at the Barton campus. Moreover, the Court is persuaded that the question of success on the merits in this forum does not weigh in plaintiffs' favor. The Court has already expressed its concern on the impact of the current proceedings involving the Arkansas Supreme Court, defendants have raised several issues in the motion to dismiss that require serious consideration, and doubt is cast as to success in light of the disposition of some of the same issues as explained in the October 28, 2004 order in <u>Ball v. State of Arkansas</u>, 4:04CV00547 GH. In addition, the Court is persuaded that Barton is a necessary party to obtaining the complete relief sought by plaintiffs. The hearing testimony establishes that Barton, as a result of the consolidation, now owns the Lakeview campus property and the reopening of the Lakeview campus would clearly affect its interests as the owner of the property, its hiring of some of the former Lakeview campus teachers, its budget, and it having transferred equipment from the Lakeview campus. The balance of equities and the public interest also do not weigh in favor of trying to reopen, restaff and reassign students after the opening of the school year and while the Arkansas Supreme Court is actively dealing with the constitutional compliance issues.

Accordingly, the plaintiffs' June 13th motion (#29) for preliminary injunction is hereby denied and the Court is abstaining from further action in this case pending completion of the

proceedings before the Arkansas Supreme Court. Thus, the case is removed from the September 19th trial calendar.

IT IS SO ORDERED this 26th day of August, 2005.

_____
UNITED STATES DISTRICT JUDGE