IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

FRIENDS OF THE LAKEVIEW SCHOOL DISTRICT
INCORPORATION NO. 25 OF PHILLIPS COUNTY, ET AL.                                    PLAINTIFFS

v.                                  No. 2:04CV00184 GH

MIKE HUCKABEE, IN HIS OFFICIAL CAPACITY,
AS GOVERNOR OF THE STATE OF ARKANSAS, ET AL.                                    DEFENDANTS

**ORDER**

The Court, by order filed on August 26th, denied plaintiffs' motion for preliminary injunction, announced that it was abstaining from further action in this case pending completion of the proceedings before the Arkansas Supreme Court, and removed the case from the September 19th trial calendar. By order filed on September 26th, the Court administratively terminated this action without prejudice pending the conclusion of the ongoing proceedings before the Arkansas Supreme Court. The order provided that "[o]nce those state proceedings have concluded, plaintiffs will have 30 days thereafter to file a motion to reopen this case" and that the Court retained jurisdiction in this matter.

On January 17th, plaintiffs filed a motion to place the case back on the active docket in light of the December 15th decision by the Arkansas Supreme Court which they state made no adjudication regarding Acts 59 and 60 which are the essence of this lawsuit and also submitted an

amended complaint to the Clerk's office for filing as well as a motion to substitute exhibits with the filing of the amended complaint.[1]

The defendants responded on January 31st in opposition. They recount that the former Lake View School District sought and was granted permission in the state litigation to proceed as a class action with the plaintiff class to include "all public school districts in the State of Arkansas; all students and parents of students in all public school districts in the State of Arkansas; all members of the Board of Directors of all public school districts in the State of Arkansas; and all taxpayers, regardless of residence or domicile, who have paid taxes which were levied for the purpose of supporting public schools in the State of Arkansas." Defendants continue that, in response to that litigation, the Arkansas General Assembly passed Acts 59 and 60 in 2003, which resulted in consolidation of Lake View with the Barton-Lexa School District to create a new Barton-Lexa School District effective July 1, 2004, and establishing the funding formula for public school districts for the 2004-2005 fiscal year which ended June 30, 2005.

Defendants state that the complaint was filed on October 25, 2004, well after the former Lake View School District ceased to exist and then filed a motion for preliminary injunction on June 13, 2005, seeking the reopening of the former Lake View campus that had been closed after the completion of the 2004-2005 school year. They further recount that the Court held a hearing on the motion on August 22nd and issued an order on August 26th denying the motion for preliminary injunction. Defendants also relate the fact that a separate order was filed on September 26th administratively terminating the case without prejudice "pending the conclusion of the ongoing

---

[1]The proposed amended complaint and the motion to substitute exhibits were not filed pending a ruling on the motion to reopen the case.

proceedings before the Arkansas Supreme Court" in the state litigation and providing that "[o]nce those state proceedings have concluded, plaintiffs will have 30 days thereafter to file a motion to reopen this case."

While defendants note that the Arkansas Supreme Court issued its most recent opinion in the state litigation on December 15th, that court decided to stay the issuance of its mandate thereby retaining jurisdiction over the litigation until December 1, 2006. Defendants argue that the plaintiffs' current motion is premature since the proceedings before the Arkansas Supreme Court have not yet concluded because the issuance of the mandate has been stayed until December 1, 2006.

On January 30th, plaintiffs filed a motion to disqualify the undersigned in which they allege that the Court failed to act on any motions or any request for relief by either party between the original filing of the complaint on October 25, 2004 and August 22, 2005; that the Court made racially derogatory statements and attacking plaintiffs, prejudged the facts especially as to the question of abstention which the parties agreed was not an issue, ignored the allegations in the complaint and preliminary injunction motion even though the state defendants placed little resistance to those allegations and ignored the proof presented even though the state defendants did not present "proof-for-proof," insinuated the abstention doctrine and that Barton-Lexa School District was a necessary party, and rejected testimony of the African-American Superintendent while not challenging the white Superintendent; and so as a result of the prejudice demonstrated, the undersigned should disqualify from this case and any case where the plaintiffs' attorney or plaintiffs appear.

Although filed later, the motion to disqualify must be addressed first and the applicable legal standards governing such a recusal request are reflected below.

In <u>Von Kahl v. United States</u>, 242 F.3d 783, 793 (8th Cir. 2001), the appellate court stated:

> With respect to his claim of judicial bias, the Supreme Court has made clear that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." <u>Liteky v. United States</u>, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).

See also, <u>Moran v. Clarke</u>, 296 F.3d 638, 649 (8th Cir. 2002)

The Eighth Circuit addressed the issue of whether a reassignment to a different judge was warranted upon remand in <u>White v. Luebbers</u>, 307 F.3d 722, 730 (8th Cir. 2002), as follows:

> Finally, petitioner asks that, if there is to be a remand, we direct the assignment of this case to another judge of the District Court. This argument is based upon a preliminary order of the District Court entered after our remand. The order stated that the Court had reached a "preliminary view" as to the meaning of our mandate. This preliminary view was consistent with the view ultimately taken by the District Court, that is, that our opinion on the first appeal opened up for consideration on the merits on remand only those issues asserted in the second amended post-conviction motion. The Court's preliminary order invited the parties to express their views on the matter, in light of the Court's stated initial inclination.
>
>   ****
>
> The Supreme Court's opinion in <u>Liteky v. United States</u>, 510 U.S. 540 (1994), is dispositive of this point. So long as the court's expressed views come from the record of the case itself, or from representations properly made by the parties or their lawyers, nothing improper has occurred. "Not *all* unfavorable disposition towards an individual (or his case) is properly described by [the] terms" bias or prejudice. <u>Id</u>. at 550 (emphasis in original).

In <u>Jones v. Luebbers</u>, 359 F.3d 1005, 1013-1014 (8th Cir. 2004), the appellate court addressed the issue of recusal as follows:

> In the context of contempt proceedings, which often follow heated arguments and hostile comments, tempers understandably flare. Accordingly, allegations of personal bias are not uncommon in such proceedings. See <u>Ungar v. Sarafite</u>, 376 U.S. 575, 583-84, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964); <u>Murchison</u>, 349 U.S. at 136-38; <u>Offutt v. United States</u>, 348 U.S. 11, 17, 75 S.Ct. 11, 99 L.Ed. 11 (1954). Where such allegations arise from contemptuous behavior in closed proceedings that evade outside review, the appearance of impartiality is great, application of the rule is simple, and due process may require disqualification. In <u>Murchison</u>, 349 U.S. at 136-38, the Court faced allegations of bias arising from Michigan's

one-person grand jury procedure. In that case, the Court held that where a judge "was at the same time complainant, indicter, and prosecutor" the judge could not later preside over a contempt proceeding regarding one of the grand jury witnesses. Id. at 135. The Court said, "[h]aving been a part of that process a judge cannot be, in the very nature of things, wholly disinterested in the conviction or acquittal of those accused." Id. at 137.

By contrast, application of the rule is not as simple where the alleged bias is personal and the case involves no closed proceedings or alleged procedural infirmities. In such cases, the general rule that the Court articulated in Murchison and Tumey does not require disqualification unless the potential for bias is sufficiently great to tempt an "average man serving as a judge" to stray from impartiality. Id. The test for determining whether a potential for bias rises to this level is an objective inquiry:

> The test in determining if a judge's bias should be presumed in a particular case is whether, realistically considering psychological tendencies and human weaknesses, the judge would be unable to hold the proper balance between the state and the accused. In making this inquiry we, of course, presume the honesty and integrity of those serving as judges.

Dyas v. Lockhart, 705 F.2d 993, 996-97 (8th Cir. 1983) (citing Tumey, 273 U.S. at 532; Withrow v. Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); and Taylor v. Hayes, 418 U.S. 488, 501, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974)). In applying this test, the Court explained that we are not to hold judges to a superhuman standard that would allow no expressions of emotion, and that we are to presume the ability of judges to rule impartially notwithstanding personal attacks and challenges to their authority. Liteky v. United States, 510 U.S. 540, 555-56, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994); Ungar v. Sarafite, 376 U.S. 575, 583-84, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964). However, disqualification may be proper where "[t]he record discloses not a rare flareup, not a show of evanescent irritation – a modicum of quick temper that must be allowed even judges ... [but] that instead of representing the impersonal authority of law, the trial judge permitted himself to become personally embroiled with the petitioner." Offut, 348 U.S. at 17 (finding a reduction in an attorney's contempt sanction necessary where the judge presiding at the contempt hearing had become personally embroiled and displayed excessive, ongoing hostility towards the attorney during the attorney's representation of a client in an underlying trial).

In Ungar, for example, disqualification of a judge from a post-trial contempt proceeding was not necessary even though the judge had been the target of contemptuous remarks in the form of a personal attack. 376 U.S. at 583-84. There the Court said, "We cannot assume that judges are so irascible and sensitive that they cannot fairly and impartially deal with resistance to their authority or with highly charged arguments about the soundness of their decisions." Id. at 584. Later, in Liteky v. United States, 510 U.S. 540, 555-56, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994), the Court stated:

> Not establishing bias or partiality ... are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration – even a stern and short-tempered judge's ordinary efforts at courtroom administration – remain immune.

Id. (not addressing a due process challenge, but interpreting 28 U.S.C. § 455 (1974), the federal statute that governs the disqualification of federal judges). Accordingly, we must examine the allegations of bias in the present case in the context of these teachings and not presume that "a stern and short-tempered judge's ordinary efforts at courtroom administration" directed towards counsel are adequate grounds to find bias against a defendant.

Regarding alleged failures of the Court to act in this case, the complaint was filed on October 25, 2004. While the complaint did seek declaratory judgment and injunctive relief, importantly, plaintiffs also sought monetary relief. To the extent that plaintiffs are asserting that the Court should have taken immediate action on the portions of the complaint regarding declaratory and injunctive relief, Local Rule 7.2(e) provides:

> Pretrial motions for temporary restraining orders, motions for preliminary injunctions, and motions to dismiss, shall not be taken up and considered unless set forth in a separate pleading accompanied by a separate brief.

Here, plaintiffs did not file a motion for preliminary injunction until almost seven months later on June 13, 2005. The response to the preliminary injunction motion was filed on July 11th and the reply was filed on July 25th. By order filed on August 12th, the Court set a hearing on the preliminary injunction motion for August 22nd.

The record also reflects that the initial scheduling order was filed on December 6, 2004, the parties' Rule 26(f) report was filed on January 24, 2005, and the final scheduling order was filed on February 11, 2005 setting the trial for the week of September 19th. Defendants did file a motion to dismiss on December 15, 2004. Plaintiffs, after receiving three extensions, filed their response on

March 15, 2005. On March 31st, defendants filed their reply. It was less than three months later that plaintiffs filed their motion for preliminary injunction and the Court has already discussed the chronology involved there. After hearing evidence and arguments on August 22nd, the Court took the matter under submission pending receipt of certain exhibits to be provided by counsel and then filed an order on August 26th denying the motion for preliminary injunction and abstaining from further action pending the completion of the state proceedings. In light of the stay, the case was administratively terminated by September 26th order.

Thus, the record clearly reflects that plaintiffs' characterization that "the District Court failed to act on any motions or any request for relief by either the plaintiff or the defendant" is both incomplete and unwarranted.

The remainder of the recusal motion basically challenges the Court's handling of the hearing and its rulings. Among the inaccurate allegations are that defendants offered little resistance to the preliminary injunction motion – which was adamantly opposed in the July 11th response and at the hearing – and that the Court first raised the issue of whether the new Barton-Lexa district, its superintendent and board were necessary parties. To the argument that the Court improperly rejected the admissions of counsel concerning the pendency of state litigation, the United States Supreme Court has pointed out that "abstention may be raised by the court sua sponte." Bellotti v. Baird, 428 U.S. 132, 143 n. 10, 96 S.Ct. 2857, 2864 n. 10, 49 L.Ed.2d 844 (1976); see also Louisiana Power & Light v. Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959). Plaintiffs may disagree with the Court's factual and credibility findings and with its legal analysis that was unfavorable to plaintiffs; however, that is not grounds for recusal. The Court will not dignify the allegations regarding derogatory and discriminatory statements and negative body language by

discussing them at length; the Court is confident that a transcript of the August 22nd hearing will reflect that plaintiffs were permitted to fully and fairly present evidence and argument and that plaintiffs' portrayal of both the Court's demeanor and statements is erroneous.

In sum, the Court finds no legitimate basis for recusal in this case.

The Court next turns to the motion to reopen. Defendants have correctly pointed out that plaintiffs' motion is premature as the state proceedings have not concluded and will not do so until December 1, 2006.[2]

Accordingly, plaintiffs' January 17th motion (#47) to reopen case and plaintiffs' January 30th motion (#49) to disqualify are hereby denied.

IT IS SO ORDERED this 24th day of February, 2006.

                                                             /s/ George Howard, Jr.
                                              UNITED STATES DISTRICT JUDGE

---

[2] <u>Lake View School Dist. No. 25 of Phillips County v. Huckabee</u>, --- S.W.3d ----, 2005 WL 3436660 (Ark. 2005) ("We stay the issuance of our mandate until December 1, 2006, to allow the necessary time to correct the constitutional deficiencies.")